IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| EDEGENET, INC., *et al.*,[1] | ) Case No. 14-10066 ( ) |
| Debtors. | ) Joint Administration Requested |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING POST-PETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (D) GRANTING RELATED RELIEF**

Edgenet, Inc. and Edgenet Holding Corporation, the debtors and debtors-in-possession herein (collectively, the "*Debtors*"),[2] respectfully represent:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105, 361, 362, 363(c), 363(e), and 507 of title 11 of the United States Code, 11 U.S.C. §101 *et seq.*, as amended (the "*Bankruptcy Code*"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: Edgenet, Inc. (4977) and Edgenet Holding Corporation (4146). The Debtors' principal place of business is 8 Piedmont Center, 3525 Piedmont Road, Suite 420, Atlanta, GA 30305.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the Declaration of Juliet Reising (the "*First Day Declaration*"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), on January 14, 2014 (the "*Petition Date*"). Capitalized terms not defined herein shall have the meaning ascribed to them in the First Day Declaration.

Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2002, 4001 and 9014 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").

## Introduction

4. The Debtors and their advisors have worked to ensure that upon the commencement of these chapter 11 cases, the Debtors would have in hand a commitment — through use of Cash Collateral (as defined in Section 363(a) of the Bankruptcy Code) to have the necessary liquidity for operational purposes during their chapter 11 cases. With this background, the Debtors met with Liberty Partners Lenders, L.L.C. ("***Lender***") it pre-petition lender which holds a security interest in and to substantially all of its assets to reach an agreement for the Debtors to use their Cash Collateral in their chapter 11 cases so as to enable the Debtors to maximize the value of and sell their assets.

5. Lender has agreed to allow the Debtors to use its Cash Collateral in accordance with the terms and conditions of the proposed Interim Cash Collateral Order (A) Authorizing Post-Petition Use of Cash Collateral, (B) Granting Adequate Protection, (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (D) Granting Related Relief (the "***Interim Order***"), attached hereto as Exhibit A. Significantly, Lender is requiring the payment of certain out of pocket expenses as part of its adequate protection, as well as certain spending restrictions (tied to a budget) and replacement liens as adequate protection.

6. Regarding the Seller Notes (as set forth in the First Day Declaration), the Debtors propose as adequate protection, to provide to the Seller Notes replacement liens in the Cash Collateral, but only to the same extent, validity and priority as any lien held by the Seller Notes immediately prior to the Petition Date and only to the extent that it is not determined in this bankruptcy proceeding that the Seller Notes are unsecured. The Debtors' believe that providing

such replacement liens to the Seller Notes is sufficient adequate protection, as the Debtors believe that the UCC-1 filed by the Seller Notes on October 18, 2013, which perfected the Seller Notes limited security interest will be avoided as a preferential transfer, rendering the Seller Notes unsecured.[3] Towards that end, the Debtors will promptly file an adversary proceeding seeking such avoidance.

7. To implement its proposed sale process and continue to retain and inspire confidence in its business partners, access to liquidity is critical. The use of Cash Collateral will provide the liquidity that the Debtors believe is necessary to operations and to conclude a sale process on an expedited basis. In short, to ensure the Debtors have access to liquidity and inspire confidence in the marketplace in demonstrating the Debtors have the funding and financial support necessary to conclude a successful sale, the Debtors submit the Cash Collateral Agreement, as well as the granting of replacement liens as set forth herein is necessary and should be approved.

## Relief Requested

8. By this motion, the Debtors request entry of the Interim Order, a copy of which is attached hereto as **Exhibit A** and a final order (the "*Final Order*" and, together with the Interim Order, the "*Cash Collateral Orders*"), authorizing the Debtors to use Cash Collateral. More specifically, the Debtors seek an order:

 a. authorizing the Debtors' use of Cash Collateral, in accordance with the budget attached to the Interim Order;

 b. granting replacement liens to the Seller Notes as adequate protection of the Seller Notes' interest in Cash Collateral as well as to provide the adequate protection to Lender as set forth in the Interim Order;

---

[3] For a more detailed recitation of the basis for the Debtors' perspective see the First Day Declaration.

c.  waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h);

d.  waive any applicable stay, including under Bankruptcy Rule 6004, to provide for immediate effectiveness of the Interim Order; and

e.  pursuant to Bankruptcy Rule 4001, set a date for a hearing to consider entry of the Final Order by February 10, 2014.

**Provisions to be Highlighted Pursuant to Local Rule 4001-2(a)(i)**

9. The Interim Order includes certain provisions the Debtors are required to highlight pursuant to Local Rule 4001-2(a)(i). As discussed in detail herein, the Debtors believe these provisions are reasonable in light of the facts and circumstances of these chapter 11 cases and should be approved.

a.  **Local Rule 4001-2(a)(i)(B) – *Validity, perfection and Amount of Prepetition Obligations*,** Interim Order at ¶ 6(c). The Debtors agree and stipulate that the liens granted to Lender pre-petition constitute valid, binding, enforceable and perfected Liens. Additionally, the Debtors have waived, discharged and released any right they may have to challenge any of the indebtedness owed to Lender pre-petition or the security for those obligations.

b.  **Local Rule 4001-2(a)(i)(B) – *Committee Challenge Period*,** Interim Order at ¶ 25. All non-debtor parties in interest shall have until seventy-five (75) days following the entry of the Interim Order and any unsecured creditors' committee shall have sixty (60) days from the date of the formation of the Committee ("*Investigation Periods*") to investigate the validity, amount, perfection, priority and enforceability of the liens, claims and security interests held by Lender and the obligations arising under the Prepetition Loan Documents.

c.  **Local Rule 4001-2(a)(i)(D) – *Waiver of Section 506(c) Claims*,** Interim Order at ¶ 28. Subject to entry of the Final Order, with the exception of the Carve-Out, neither the, Cash Collateral or Prepetition Collateral shall be subject to surcharge, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of Lender, or a Termination Event will occur.

4

**Local Rule 4001-2(a)(i)(F) – *Treatment of Committee Professionals*,** Interim Order at ¶ 22. The Interim Order does not include Committee's professional fees in the Carve-out, however, they are included in the budget.

**Local Rule 4001-2(a)(i)(H)-*Waiver of 552(b) Claims***
***Consider Equities of the Case***
Interim Order at ¶ 28 provides that subject to entry of the Final Order, the "equities of the case" exception of 552(b) shall be deemed waived.

### Proposed Sale of Substantially All Assets

10. The Debtors intend to pursue a sale of substantially all of their assets pursuant to section 363 of the Bankruptcy Code. As set forth more fully in the First Day Declaration, due to liquidity concerns, the Debtors have determined in consultation with their advisors that the value of the Debtors' estates will be maximized through a sale of their assets. It is believed that a stalking horse will be identified soon so that the sale process can be initiated.

11. In the face of these Cases, the Debtors need to show an ability to demonstrate that that they have the means to continue operating as normal so that a sale can capture full enterprise value for the benefit of all constituencies. Absent an ability to demonstrate that the Debtors have the means to operate in the ordinary course and procure goods and services that are vital to ongoing business operations, vendors and suppliers may choose not to ship goods or provide service to the Debtors, resulting in disruption to the Debtors' operations.

12. Immediate access to the use of Cash Collateral will enable the Debtors to allay concerns of the Debtors' suppliers and customers and enable the Debtors to carry on with business as usual. Absent access to liquidity, the Debtors' ability to operate and ultimately sell their assets as a going concern will be jeopardized, all to the detriment of the Debtors' stakeholders. As a result, the Debtors have an immediate need to use Cash Collateral.

### Development of the Cash Collateral Budget

13. To best assess the Debtors' cash needs during these chapter 11 cases, the Debtors, with the assistance of their advisors, analyzed what is necessary to maintain their operations in chapter 11 and work toward a successful sale of their assets. The Debtors developed a cash flow forecast that considers the Debtors' ability to maintain customary payment terms with key suppliers.

### Supporting Authority

#### a. The Scope of the Carve-Out is Appropriate

14. The proposed Interim Order subjects the security interests of Lender to the Carve-Out. Similar carve-outs for professional fees have been found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee can retain assistance from counsel. *See Ames*, 115 B.R. at 40. The Cash Collateral Agreement does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers by restricting the services for which professionals may be paid in these cases. *See Ames*, 115 B.R. at 38 (observing that courts insist on carve-outs for professionals representing parties-in-interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). Additionally, the Carve-Out protects against administrative insolvency during the course of these chapter 11 cases by ensuring that assets remain for the payment of U.S. Trustee fees and professional fees of the Debtors and a committee of unsecured creditors, notwithstanding the liens and claims of Lender.

### b. The Payment of Certain Expenses of Liberty Lenders is Appropriate

### A. The Debtors' Proposed Grant of Adequate Protection to Use Cash Collateral is Appropriate

15. Pursuant to section 363(c) of the Bankruptcy Code, the Debtors may only use cash collateral of a secured creditor subject to the consent of those parties or the grant of adequate protection. 11 U.S.C. § 363(c)(2).

16. What constitutes adequate protection is decided on a case-by-case basis and it can come in various forms, including payment of adequate protection fees, payment of interest, granting of replacement liens and administrative claims. *See In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("the determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case"); *see also In re Realty Southwest Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted); *see also In re Continental Airlines Inc.*, 154 B.R. 176, 180-181 (Bankr. D. Del. 1993).

17. In this case, access to the Cash Collateral is critical to the Debtors' ability to continue operations. As a result of such proposed priming, the Debtors intend to provide Lender and the Seller Notes with adequate protection, which with respect to the Seller Notes is limited to replacement liens as set forth above. With respect to Lender, the adequate protection includes: (i) replacement liens in the Cash Collateral, to the extent of the use of the Cash Collateral in which Lender holds a security interest; (ii) for the extent of any diminution in value of their

interests in the pre-petition security interests, superpriority administrative claims; and (ii) the payment of their counsels' fees on a monthly basis.

18. The Debtors believe that the proposed adequate protection is necessary and appropriate to ensure that the Debtors can continue to use Cash Collateral and access necessary liquidity. Accordingly, the adequate protection proposed herein and in the Cash Collateral Orders is fair and reasonable and is sufficient to satisfy the requirements of sections 363(c) and of the Bankruptcy Code. *See* 11 U.S.C. §§ 363(c).

**B.   Approval of the Cash Collateral Agreement on an Interim Basis is Necessary to Prevent Immediate and Irreparable Harm.**

19. Bankruptcy Rule 4001(b)(2) governs the procedures for obtaining authorization to use cash collateral, and it states:

> The court may commence a final hearing on as motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. Proc. 4001(b)(2).

20. In examining requests for interim relief under the immediate and irreparable harm standard, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., Ames Dep't Stores*, 115 B.R. at 36; *Simasko*, 47 B.R. at 449.

21. Immediate and irreparable harm would result if the relief requested herein is not granted on an interim basis. As described in detail herein, the Debtors have an immediate need to obtain access to cash. The Debtors' relationships with their employees, customers and suppliers are paramount to the Debtors' success. The Debtors must be able to communicate to their key stakeholders that they will continue to operate in the ordinary course, satisfy any

critical payment obligations and continually satisfy other general working capital and operational needs, and that necessitates access to capital.

22. Accordingly, the Debtors believe that absent access to liquidity through the use of Cash Collateral, the Debtors' vendors may cease to provide goods and services to the Debtors, which would be crippling to the Debtors' businesses. Thus, availability of sufficient liquidity — and the ability to message to key stakeholders that the liquidity is available — is imperative to preserve and maintain the value of the Debtors' estates.

C. **Modification of the Automatic Stay Provided Under Section 362 of the Bankruptcy Code is Appropriate Under the Circumstances.**

23. The Interim Order proposes that the automatic stay imposed under section 362(a) of the Bankruptcy Code be lifted to allow Lender to file the Interim Order or such financing statements or similar instruments or otherwise confirm perfection of such liens, and security interests. The Interim Order also proposes that upon the occurrence of a Termination Event (as defined in the Interim Order), on the third (3) business days following written notice to the Debtors, use of Cash Collateral automatically ceases.

24. Stay modification provisions of this sort are ordinary and usual features of debtor cash collateral use and, in the Debtors' business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated under the Cash Collateral Orders.

### Request For Final Hearing

25. Pursuant to Bankruptcy Rules 4001(b)(2) and Local Rule 4001-2(c), the Debtors requests that the Court set a date for the final hearing that is as soon as practicable, but in no event later than February 10, 2014, and fix the time and date prior to the final hearing for parties to file objections to this motion.

### Waiver of Bankruptcy Rules Regarding Notice and Stay of an Order

26. To implement the foregoing successfully, the debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

### Notice

27. The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Liberty Partners Lenders, L.L.C.; (d) to the Owners Representative regarding the Seller Notes as well as his counsel; (e) parties appearing on UCC searches performed by the Debtors; (f) the Debtors' landlords; (g) the Delaware Secretary of Treasury; (h) the Delaware State Attorney General; (i) the Office of the United States Attorney General for the State of Delaware; (j) the Internal Revenue Service; (k) the taxing authorities in which the debtors file returns; and (l) the Securities and Exchange Commission. In light of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice is necessary.

### No Prior Request

28. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the First Day Declaration and in the, the Debtors respectfully request entry of the Cash Collateral Orders, (a) authorizing the Debtors to use Cash Collateral, (b) granting the adequate protection to Liberty Partners Lenders, L.L.C. and the Seller Notes, (c) setting a date for a hearing to consider entry of the Final Order no later than February 10, 2014 and (d) granting such other and further relief as may be appropriate.

| Dated: January 14, 2014 | /s/ Raymond H. Lemisch |
| Wilmington, Delaware | Domenic E. Pacitti (DE Bar No. 3989) |
| | Raymond H. Lemisch (DE Bar No. 4204) |
| | **KLEHR HARRISON HARVEY** |
| | **BRANZBURG LLP** |
| | 919 N. Market Street, Suite 1000 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 426-1189 |
| | Facsimile: (302) 426-9193 |

- and -

Morton Branzburg (*pro hac vice* admission pending)
**KLEHR HARRISON HARVEY**
**BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-2700
Facsimile: (215) 568-6603

*Proposed Counsel to the Debtors and Debtors in Possession*