# Exhibit A

## Proposed Interim Order

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EDGENET, INC., *et al.*, [1] | ) | Case No. 14- 10066 ( ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

## INTERIM ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE ADEQUATE PROTECTION PARTIES, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"):[2]

(I) authorizing the Debtors, subject to and pursuant to the terms and conditions set forth in this Interim Order, to (a) use Cash Collateral (as defined herein), which Cash Collateral shall be used only in accordance with the Budget (as defined herein), which Budget shall be acceptable, to the extent required herein, to the Lender (as defined herein) and (b) provide adequate protection to the Lender under: (1) the 2008-A Senior Term Promissory Note, dated as of October 22, 2008 (as amended by the First Amendment thereto, dated as of January 25, 2010, the "2008-A Note"), by and between Edgenet, Inc. (the "Borrower") and Liberty Partners Lenders, L.L.C. (the "Lender"); (2) the 2008-B Senior Term Promissory Note, dated as of October 22, 2008 (as amended by the First Amendment thereto, dated as of January 25, 2010, the "2008-B

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Edgenet, Inc. (4977) and Edgenet Holding Corporation (4146). The address of the Debtors' corporate headquarters is 8 Piedmont Center, 3525 Piedmont Road, Suite 420, Atlanta, GA 30305.

[2] Capitalized terms used herein but not defined have the meanings ascribed to such terms in the Motion, or in the Declaration of Juliet Reising in Support of First Day Motions (the "***First Day Declaration***").

Note," and together with the 2008-A Note, collectively, the "2008 Notes"), by and between the Borrower and the Lender; (3) the 2010-A Senior Term Promissory Note, dated as of January 25, 2010 (as may be amended from time to time, the "2010-A Note"), by and between the Borrower and the Lender; (4) the 2010-B Senior Term Promissory Note, dated as of October 14, 2010 (as may be amended from time to time, the "2010-B Note," and together with the 2010-A Note, collectively, the "2010 Notes"), by and between the Borrower and the Lender; (5) the 2011 Senior Term Promissory Note, dated as of June 8, 2011 (as may be amended from time to time, the "2011 Note"), by and between the Borrower and the Lender; (6) the 2011-B Senior Term Promissory Note, dated as of October August 24, 2011 (as may be amended from time to time, the "2011-B Note," and together with the 2011 Note, collectively, the "2011 Notes," and together with the 2008 Notes and 2010 Notes, collectively, the "Notes"), on account of the Debtors' use of Cash Collateral and any diminution in value of the Lender's respective interests in the Prepetition Collateral (as defined herein) as of the Petition Date;

(II)     scheduling, pursuant to Bankruptcy Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order (a) authorizing the Debtors to use Cash Collateral; and (b) granting adequate protection to the Adequate Protection Parties (as defined herein);

(III)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of this Interim Order;

(IV)    scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") granting the relief requested in the Motion on a final basis pursuant to the final order (the "Final Order"); and

(V)    waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The Interim Hearing on this matter having been held by this Court on January [   ], 2014; and upon the record made by the Debtors at the Interim Hearing (including the First Day Declaration); and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

BASED ON THE RECORD OF THE HEARING, WITH APPEARANCES OF ALL INTERESTED PARTIES, THE DEBTORS' STIPULATIONS CONTAINED HEREIN AND THE MOTION, THE COURT HEREBY FINDS:[3]

1.    Jurisdiction and Venue.    Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2)(M).  This Court has core jurisdiction over the above-captioned chapter 11 cases commenced on January 14, 2014 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    Notice.    The Debtors have provided notice of the Motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service; (c) the

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Fed. R. Bankr. P. 7052.

Securities and Exchange Commission; (d) the creditors holding the twenty largest unsecured claims against the Debtors' estates; (e) landlords of the Debtors; (f) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attention: Ryan Blaine Bennett, Esq., and Justin R. Bernbrock, Esq., as counsel to the Lender; and (g) Ernie Wu, the Owners Representative regarding the Seller Notes (as defined herein) and Bone McAllester Norton PLLC, Nashville City Center, 511 Union Street, Suite 1600, Nashville, TN, 37219 Attn: John P. Branham, Esquire, his counsel. Under the circumstances, notice of the Interim Hearing and the relief requested in the Motion is due and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and 4001(d), and the Local Rules of the Bankruptcy Court for the District of Delaware. In light of the nature of the relief requested in the Motion, no other or further notice is necessary.

3. _Cash Collateral_. For purposes of this Interim Order "Cash Collateral" shall have the meaning ascribed by section 363(a) of the Bankruptcy Code.

4. _Findings Regarding the Use of Cash Collateral and Prepetition Collateral_. Good cause has been shown for the entry of this Interim Order. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). The Debtors have an immediate and critical need to use Cash Collateral in order to permit, among other things, the management and preservation of the Debtors' assets and properties, and the pursuit of a potential sale of certain of those assets (the "Proposed Sale") at an auction (the "Auction") pursuant to an order entered by the Court approving bid procedures (the "Bid Procedures") related thereto. Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed. The Debtors' use of Cash Collateral has been deemed sufficient to meet the Debtors' immediate postpetition liquidity needs, subject to the terms of this Interim Order and all other agreements, documents, notes, or instruments delivered pursuant hereto or thereto in connection herewith or therewith, including,

4

without limitation, a budget acceptable to the Lender in its sole discretion, attached as **Schedule 1** hereto, and as may be amended with the consent of the Lender, as necessary (including any variance as described herein, the "Budget"). The Budget has been thoroughly reviewed by the Debtors and their management. The Debtors represent that the Budget will allow the Debtors to preserve the value of their estates, conduct a sale process, and otherwise conduct their chapter 11 cases. The Budget is an integral part of this Interim Order and has been relied upon by the Lender in deciding to consent, or not otherwise object, to the entry of this Interim Order.

5.  Good Faith Finding. Based upon the record presented by the Debtors to this Court, the use of Cash Collateral has been negotiated in good faith and at arm's-length among the Debtors and the Lender, and use of Cash Collateral by the Debtors shall be deemed to have been extended, issued, or made, as the case may be, in "good faith."

6.  Debtors' Stipulations. With respect to the use and to the continued use of Cash Collateral and after consultation with their attorneys and financial advisors, but without prejudice to the investigation rights of any committee appointed in these chapter 11 cases, if any, the Debtors admit, stipulate, acknowledge, and agree as follows (collectively paragraphs (a) through (g) shall be referred to herein as the "Debtors' Stipulations"):

> (a)  Notes. Pursuant to the Notes, the Lender made loans and other financial accommodations to or for the benefit of the Debtors. In connection with the Notes, the Borrower and the Lender entered into certain Security Agreements, dated as of October 22, 2008, January 25, 2010, October 14, 2010, June 8, 2011, and August 24, 2011, in connection with the 2008 Notes, 2010 Notes, and 2011 Notes (collectively, the "Security Agreements"), under which the Lender received a security interest in all of the Debtors' assets, including, without limitation, accounts receivable, bank accounts, cash and cash equivalents, chattel paper, contract rights, copyrights, copyright applications, copyright licenses, deposit accounts, documents, equipment, fixtures, general intangibles, instruments, insurance proceeds and settlements, intellectual property, inventory, investment property, material contracts, payment intangibles, patent licenses, patents, tax refunds, trademark licenses, trademarks, software, supporting obligations, and other tangible and intangible personal property, or any proceeds or products thereof (collectively, the "Prepetition Collateral"), including, for the avoidance of doubt, any proceeds of the Prepetition Collateral. In addition, the Debtors and the Lender entered into certain additional guaranty, collateral, and ancillary documentation (such

documentation, together with the Notes and Security Agreements, the "Prepetition Loan Documents," and the obligations under the Prepetition Loan Documents being the "Prepetition Obligations").

(b)     Prepetition Obligations.   As of the Petition Date, the Debtors were unconditionally indebted and liable to the Lender, without defense, counterclaim, or offset of any kind, for all of the Prepetition Obligations, including the amounts provided by the Lender under the Notes in the aggregate principal amount of $53,297,069.00 plus accrued and unpaid interest and fees in accordance with the terms of the Prepetition Loan Documents;

(c)     Validity and Priority of Prepetition Liens, Claims, and Prepetition Obligations.   As security for the Prepetition Obligations, the Debtors granted to the Lender valid and perfected first-priority continuing liens on and security interests (the "Prepetition Liens") in the Prepetition Collateral, all as more fully set forth in the Prepetition Loan Documents.  For the avoidance of doubt, the Lender received perfected first priority liens in all proceeds of the Prepetition Collateral, including the funds and any other proceeds of the Prepetition Collateral in any of the Debtors' deposit accounts. Subject in all respects only to the Carve-Out and the Investigation Periods (both as defined herein):

(i)     the Prepetition Liens are valid, binding, enforceable, and perfected liens that have priority over any and all other security interests in the Prepetition Collateral;

(ii)    the   Prepetition   Liens   are   not   subject   to   avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(iii)   the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Prepetition Loan Documents; and

(iv)    no offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any of the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to avoidance, recharacterization, or subordination pursuant to the applicable provisions of Bankruptcy Code or applicable non-bankruptcy law and the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance   actions   arising   under   Chapter   5   of   the   Bankruptcy   Code ("Avoidance Actions") and any proceeds thereof, against the Lender that would in any way affect the validity, enforceability, and non-avoidability of the Lender's obligations owing under the Prepetition Loan Documents.

(d)     Release of Claims.   The Debtors hereby waive and release any and all claims, offsets, defenses, or counterclaims arising under the Prepetition Loan Documents against the Lender, or their officers, directors, employees, attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity.

(e)     Budget. The Debtors have in good faith provided the Budget. Without prior Court approval, after notice and a hearing, the Debtors agree not to incur any expenses postpetition other than expenses incurred in accordance with the Budget.

(f)     The Debtors' Stipulations shall be binding on the Debtors and any of their successors-in-interest and assigns (including without limitation a receiver, administrator, or trustee appointed in these chapter 11 cases or in any jurisdiction).

(g)     The Lender has indicated a willingness to agree and consent to permit the use of Cash Collateral by the Debtors subject to (i) the entry of this Interim Order and (ii) findings by the Court that such use of Cash Collateral is essential to the Debtors' estates, that the terms of such use of Cash Collateral was negotiated in good faith and at arm's-length, and that the Lender's liens, claims, and other protections granted pursuant to this Interim Order will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order.

7.     Based on the record presented to the Court at the Interim Hearing, and the Debtors' Stipulations contained herein, good, adequate, and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion, and entry of this Interim Order is in the best interests of the Debtors' estates and all parties in interest in these chapter 11 cases.

NOW, THEREFORE, IT IS HEREBY ORDERED:

8.     The Motion is GRANTED as provided for herein. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Interim Order shall constitute findings of fact and conclusions of law as of the date of entry of this Interim Order, and shall become effective immediately upon its entry.

9.     Except as otherwise provided herein, the Debtors shall maintain their pre-Petition Date cash management and accounts receivable collection system to the extent authorized by and subject to the terms of any order of this Court governing the Debtors' cash management system.[4]

10.     Subject to the terms and conditions set forth in this Interim Order, including, without limitation, the Adequate Protection Obligations provided herein, upon entry of this Interim Order, the Debtors are authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy

---

[4]     Contemporaneously with the filing of the Cash Collateral Motion, the Debtors filed a motion seeking authority to continue using said cash management system.

Code, to use the Cash Collateral as provided for in this Interim Order, in accordance with the Budget (with a variance per line item of 10% as well as a variance in the aggregate of 15%, with the right to carry forward or carry backward any unused amount in a line item to a preceding or following period, so long as the total amount expended for such line item during the entire period in the aggregate does not exceed the line item total in the budget by more than 10%) and in an amount not to exceed $5,000,000, from the date hereof but only to and through 5:00 p.m., prevailing Eastern time, on February 10, 2014, when authorization to use Cash Collateral as provided herein shall expire unless the Court has entered the Final Order, or as may be extended by further order of this Court (the "Expiration Date"). In no event shall the Debtors be authorized to use Cash Collateral pursuant to this Interim Order for any purposes other than the purposes set forth herein.

11. The Debtors have consented, under section 363(e) of the Bankruptcy Code, to adequate protection of the Lender's interest in the Prepetition Collateral, including Cash Collateral. As more completely set forth herein, the Debtors will provide the Lender with certain adequate protection, including (a) administrative claims as provided for herein; (b) solely to the extent of diminution in the value of the Prepetition Collateral, additional and replacement security interests and liens in and upon all real or personal assets of the Debtors' estates (the "Collateral"), including any Prepetition Collateral that would be Collateral if not for section 552(a) of the Bankruptcy Code; (c) the payment of the Professional Fees (as hereinafter defined); and (d) shall maintain, on a weekly basis, the Minimum Cash Balance (as defined herein) (items (a) through (d), collectively, the "Adequate Protection Obligations"). The Debtors shall each be jointly and severally liable for the Adequate Protection Obligations.

12. Accordingly, the Lender is hereby provided with the following forms of adequate protection, which constitute part of the Debtors' Adequate Protection Obligations:

8

(a)     <u>Adequate Protection Liens</u>. Solely to the extent of diminution in the value of the Prepetition Collateral (whether the reason for such diminution is as a result of or arises from, or is attributable to, the imposition of the automatic stay, the use of Cash Collateral, or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), if any, the Lender is hereby granted, effective and perfected as of the Petition Date and without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements, or other agreements, a valid and perfected replacement security interest in, and lien on, the Collateral (the "<u>Adequate Protection Liens</u>"), which Adequate Protection Liens shall be senior to any prepetition liens and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code. The Adequate Protection Liens shall be subject only to the Carve-Out and Investigation Periods (both as defined herein). The Adequate Protection Liens granted by this Interim Order: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Lender on the Petition Date; and (ii) are and shall be valid, perfected, enforceable, and effective as of the Petition Date without any further action by the Debtors or the Lender and without the necessity of the execution, filing, or recordation of any financing statements, security agreements, filings with the United States Patent and Trademark Office, mortgages or other documents, obtaining control agreements or other agreements over bank accounts or possession of stock certificates. Notwithstanding the foregoing, the Lender may, in its sole discretion, file such financing statements, mortgages (including ship mortgages), leasehold mortgages, notices of liens, and other similar documents, and is hereby granted relief from, including any Prepetition Collateral that would be Collateral, the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing

statements, mortgages, leasehold mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date.

(b)     Administrative Claim. The Lender is hereby granted in each of the Debtors' chapter 11 cases an allowed administrative claim (the "Administrative Claim") under Bankruptcy Code section 507(b) with respect to all Adequate Protection Obligations, to the extent that the Adequate Protection Liens do not adequately protect the diminution in the value of the Prepetition Collateral, which Adequate Protection Obligations and Administrative Claim shall be (i) payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof; and (ii) subject only to the Carve-Out.

(c)     Professional and Other Fees. The Debtors are authorized and directed to pay to the Lender on an ongoing basis any reasonable and documented fees, costs, and expenses reasonably incurred by or payable to the Lender, in accordance with the Prepetition Loan Documents, or to the applicable professional, as appropriate, the reasonable and documented professional fees and expenses (whether incurred before or after the Petition Date) of the Lender (collectively, the "Professional Fees"), including, without limitation, the fees and expenses of Kirkland & Ellis LLP and Pachulski Stang Zeihl & Jones LLP as counsel to the Lender, on a regular monthly basis during these chapter 11 cases. The Lender shall cause summary invoices evidencing the Professional Fees to be provided to the Debtors and the Office of the United States Trustee, Attn: Juliet Sarkessian, Esq. (the "UST"), who shall have five days to review such invoices before the Debtors may make payment of the Professional Fees and such payment shall be made within twenty days after receiving the invoices; provided, however, if the UST notifies the Debtors of an objection to the Professional Fees for a given period, then the Debtors shall only pay the undisputed amount of such fees. For the avoidance of doubt,

none of the Professional Fees shall be subject to approval by this Court, except upon objection of the UST, or required to be maintained in accordance with the U.S. Trustee Guidelines.

(d)     Maintenance of Cash Balance Amounts. Until the Expiration Date, as part of complying with the Budget, the Debtors, collectively, are required to and shall maintain, on a weekly basis a minimum cash balance in excess of the budgeted amounts set forth in the Budget of not less than eighty percent (80%) of the lowest weekly "ending cash" balance amount for each month as set forth in the Budget, but in any event such minimum cash balance shall not be less than $10,000,000 (the "Minimum Cash Balance").

13.     Unless and until the security interest asserted by certain holders of notes issued pursuant to certain Subordinated Promissory Notes, dated on or about September 21, 2004 (the "Seller Notes," and the holders of such Seller Notes, collectively, the "Seller Noteholders") is avoided, rendering them unsecured creditors, as adequate protection for the Seller Notes, solely to the extent of diminution in the value of the assets in which they held a security interest pre-petition (whether the reason for such diminution is as a result of or arises from, or is attributable to, the imposition of the automatic stay, the use of Cash Collateral, or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of such assets), if any, they shall be provided replacement liens in and to the Cash Collateral but only to the same extent, validity and priority as existed as of the Petition Date. To the extent that the security interest held by the Seller Notes is avoided rendering them unsecured, any adequate protection provided herein shall be null and void, *nunc pro tunc* to the Petition Date.

14.     Under the circumstances and given that the adequate protection described in this Interim Order is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Lender.

15.    This Interim Order shall constitute valid and binding obligations and rights of the Debtors, enforceable by and against the Debtors in accordance with these terms. No obligation, payment, transfer, or grant of security under this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable nonbankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

16.    For the term of this Interim Order, the Debtors waive any and all rights under sections 105 and 363 of the Bankruptcy Code or otherwise to seek the use of Cash Collateral of the Lender on any other terms except as expressly provided for herein or as consented to by the Lender. Until such time as all Prepetition Obligations are indefeasibly paid in full in cash, and other than with respect to any Carve-Out: (a) the Debtors shall not in any way prime or seek to prime the Prepetition Obligations, the Prepetition Liens, or the Adequate Protection Liens of the Lender with a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code; (b) the Adequate Protection Liens shall not be (i) subject or junior to any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, or (ii) subordinated to or made *pari passu* with any other lien, whether under section 364(d) of the Bankruptcy Code or otherwise; and (c) no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order with respect to the Adequate Protection Obligations shall be granted or allowed. Notwithstanding the foregoing, the Debtors are authorized to obtain any replacement financing that satisfies and pays the Prepetition Obligations in full in cash at the closing of such replacement financing.

17.    Pursuant to this Interim Order, the Adequate Protection Liens are, and are deemed to be, valid, enforceable, and perfected liens, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code (the "UCC"), or any other relevant law or regulation of and jurisdiction) no further notice, filing, possession, control, or other act shall be required to effect such perfection,

12

and all liens on any deposit accounts or securities accounts shall, pursuant to this Interim Order be, and they hereby are, deemed to confer "control" for purposes of section 8-106 of the UCC (or under any provision of the UCC as same may be amended or supplemented from time to time, or under the applicable laws of any relevant state) as in effect as of the date hereof in favor of the Lender. Each and every federal, state, and local government agency or department may accept the entry by this Court of this Interim Order as evidence of the validity, enforceability, and perfection on the Petition Date of the Adequate Protection Liens granted herein to the Lender.

18. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the use of Cash Collateral contemplated by this Interim Order, in the event that any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall affect the validity, enforceability, or priority of any lien or claim authorized or created hereby or thereby or any Adequate Protection Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment, or vacation, any Adequate Protection Obligations incurred and any claim or lien granted to the Lender hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the Adequate Protection Liens and priorities granted herein and therein, with respect to any such Adequate Protection Obligations.

19. Access to the Debtors.

(a) Upon reasonable prior notice, the Debtors shall permit representatives, agents, and/or employees of the Lender and its counsel to have reasonable access to their premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses and upon reasonable prior notice)

and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as they may reasonably request, all in accordance with, and pursuant to, the provisions of access in the Prepetition Loan Documents.

(b)     Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Lender contained in this Interim Order or the Prepetition Loan Documents, or otherwise available at law or in equity, and subject to the terms of the Prepetition Loan Documents, upon written notice to the landlord of any leased premises that a default has occurred and is continuing under the Prepetition Loan Documents, the Lender may, subject to any separate agreement by and between such landlord and the Prepetition Lenders, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Prepetition Collateral located thereon and shall be entitled to all of the applicable Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the Lender shall only pay rent and additional rent obligations of the Debtors that first arise after the Lender's written notice referenced above and that are payable during the period of such occupancy by the Lender, calculated on a per diem basis. The Lender shall provide the Debtors with a copy of the written notice referenced above at the same time such notice is delivered to any landlord. Other than the payment obligation contained in this paragraph, the Lender shall not be required to perform any of the Debtors' obligations under any lease as a condition to the rights afforded to the Lender in this paragraph. Furthermore subject to entry of a Final Order, any title, landlord's lien, right of distraint or levy, security interest, or other interest that any landlord or mortgagee may have in any Prepetition Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby

expressly subordinated to the liens of the Prepetition Lenders in such Prepetition Collateral.

20.     First Day Motions. The Debtors shall file certain "first day" motions with the Court in the form and substance reasonably satisfactory to the Lender, and such "first day" motions shall seek relief that is reasonably satisfactory to the Lender.

21.     Insurance. The Debtors shall maintain all necessary insurance, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtors are engaged, naming the Lender as loss payee with respect thereto to the extent required under the Prepetition Loan Documents.

22.     Carve-Out. For purposes hereof, the "Carve-Out" shall mean the sum of (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) fees and expenses of up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all fees, costs, and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Professional Persons") at any time before or on the first Business Day following delivery by the Lender of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (the "Pre-Trigger Date Fees"); and (iv) after the first Business Day following delivery by the Lender of the Carve-Out Trigger Notice (the "Trigger Date"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of all Professional Fees of Professional Persons retained by the Debtors in an aggregate amount not to exceed $250,000 incurred on and

15

after the Trigger Date (the amount set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"); provided that nothing herein shall be construed to impair the ability of any party to object to the reasonable fees, expenses, reimbursement or compensation described in clauses (iii) or (iv) above. On the day on which a Carve-Out Trigger Notice is given to the Debtors, such Carve-Out Trigger Notice also shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an aggregate amount equal to the accrued and unpaid Pre-Trigger Date Fees, and the Debtors shall deposit and hold any such amounts in a segregated account in trust (the "Carve-Out Reserve"). After the Carve-Out Reserve has been fully funded, the Debtors may escrow additional monies in an amount not to exceed the amount of projected Professional Fees reasonably and in good faith anticipated by the Debtors to be incurred by the Debtors for the immediately succeeding 30-day period ("Additional Reserved Funds"), and such Additional Reserved Funds (x) shall not be available to the Lender for application to the Obligations, (y) shall reduce on a dollar-for-dollar basis the Post-Carve Out Trigger Notice Cap, and (z) shall be held in trust exclusively for payment of the Professional Fees. Notwithstanding the foregoing, (x) the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Adequate Protection Parties, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the Prepetition Loan Documents in favor of the Lender (whether in such capacity of otherwise), including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable nonbankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the Lender hereunder; (c) attempts to prevent, hinder or otherwise delay any of the Lender's assertion, enforcement or realization upon any

Collateral in accordance with the Prepetition Loan Documents and this Interim Order; or (d) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court and (y) so long as the Carve-Out Trigger Notice shall not have been delivered, the Carve-Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court. For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the Lender to the Debtors, the Debtors' counsel and their co-counsel, and the United States Trustee delivered upon the occurrence and during the continuance of a Termination Event, stating that the Post-Carve Out Trigger Notice Cap has been invoked. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Prepetition Loan Documents, the Carve-Out shall be senior to all liens and claims securing the Prepetition Obligations and the Adequate Protection Liens and any and all other forms of adequate protection, liens, or claims securing the Prepetition Obligations. Further, for the avoidance of doubt and notwithstanding anything herein to the contrary, following a Termination Event, the Lender shall not sweep or foreclose on cash (including cash received as a result of the sale of any assets) of the Debtors until the Carve-Out Reserve has been fully funded, but shall have a first priority, fully perfected, non avoidable security interest in any residual interest in the Carve-Out Reserve, with any excess paid to the Lender for application in accordance with the Prepetition Loan Documents.

23.    Termination. In the absence of a further order of this Court, and notwithstanding anything herein to the contrary, the Debtors shall no longer be authorized pursuant to this Interim Order to use Cash Collateral without the written consent of the Lender after the earliest to occur of (i) the Expiration Date, and (ii) the third Business Day following the receipt by the Debtors of a termination notice setting forth the Lender's intent to exercise its rights under this Paragraph 22, following the occurrence, and during the continuation, of any of the following events (the

earliest such date being referred to herein as the "Termination Date," and each of the following events, a "Termination Event"):

(a)     the Debtors' failure to comply with any of the terms or provisions of this Interim Order, including but not limited to (i) failure to maintain the Minimum Cash Balance as provided for by Paragraph 12(d) hereof, or (ii) failure to make the adequate protection payments set forth in Paragraph 12(c) hereof, in each case, as required by this Interim Order;

(b)     the Debtors' failure to maintain security, consistent with the their security measures prior to the Petition Date, at their facilities sufficient to secure the Prepetition Collateral in the Lender's reasonable judgment;

(c)     the Debtors' failure to file a complaint against certain of the Seller Noteholders pursuant to section 547 of the Bankruptcy Code within thirty days of the Petition Date; provided, that such complaint shall be reasonably acceptable to the Lender;

(d)     the occurrence of any of the following:

(i)     the failure of the Bankruptcy Court to enter the an order approving the Bid Procedures within forty-five days after the Petition Date;

(ii)    the failure of the Auction to occur, in accordance with the Bid Procedures, within ninety days after the Petition Date; and

(iii)   the failure of the Bankruptcy Court to enter an order approving the Proposed Sale within five business day after the Auction;

(e)     any stay, reversal, vacatur, or rescission of the terms of this Interim Order, or any other modification of the terms of this Interim Order that is not consented to by the Lender;

(f)     entry of an order by this Court or any other Court having jurisdiction over these chapter 11 cases approving any postpetition financing that (i) grants liens, claims,

18

or interests that are senior to, or *pari passu* with, the Prepetition Liens, the Adequate Protection Liens, or the Administrative Claim, and (ii) is not consented to by the Lender;

(g)     entry of an order by this Court subordinating or recharacterizing in any way the Prepetition Liens and Prepetition Obligations of the Lender;

(h)     the Debtors' failure to comply with the Budget including the variance as allowed (as provided for herein) for any period of time without the consent of the Lender or the Budget expires;

(i)     entry of an order by this Court dismissing any of these chapter 11 cases or converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code;

(j)     entry of an order by this Court or any other Court having jurisdiction over these chapter 11 cases granting relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of the Debtors that are Prepetition Collateral;

(k)     subsequent to entry of the Final Order granting a section 506(c) waiver, entry of an order under section 506(c) of the Bankruptcy Code surcharging the Prepetition Collateral;

(l)     the appointment of a trustee or the appointment of an examiner with enlarged powers in any of these chapter 11 cases unless such appointment is approved by the Lender;

(m)     any of the Adequate Protection Liens, or any other claims granted to the Lender pursuant to this Interim Order shall cease to be valid, binding, and perfected, first-priority liens as and to the extent provided in this Interim Order;

(n)     the Debtors' exclusive right to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code shall have terminated;

(o)    any Debtor shall have sought dismissal of its chapter 11 case or an order dismissing one or more of the Debtors' chapter 11 cases shall have been entered; or

(p)    any of the Debtors file a pleading seeking, or otherwise consenting to, the matters set forth in clauses (e) through (n) above; provided, however, it shall not constitute a Termination Event for the Debtors to file a motion proposing to repay the Prepetition Obligations in cash in full.

24.    The Debtors are authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages, and financing statements), and shall pay all fees and expenses provided for herein or that may be required or necessary for the Debtors' performance under this Interim Order.

25.    Investigation Period. Notwithstanding anything herein to the contrary, but subject to Paragraph 22 of this Interim Order, (a) any party in interest shall have seventy-five days following the entry of this Interim Order and (b) any unsecured creditors committee appointed in these chapter 11 cases shall have sixty days from the date of formation of such committee (the time periods in parts (a) and (b), collectively, the "Investigation Periods") to investigate the validity, amount, perfection, priority and enforceability of the liens, claims and security interests held by the Lender and the obligations arising under the Prepetition Loan Documents.

26.    Modified Adequate Protection; Further Use of Cash Collateral. Nothing in this Interim Order waives any rights of the Lender to request at any time that the Court provide additional or further protection of their interests in the Prepetition Collateral (including Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided for herein proves to be inadequate, and nothing in this Interim Order prevents the Debtors from objecting to, or otherwise contesting, such request. Notwithstanding any provision of this Interim Order, the following rights are expressly preserved: (i) the Debtors'

right to seek Court authority to use Cash Collateral or to obtain debtor in possession financing, the proceeds of which would pay in full in cash the Prepetition Obligations, pursuant to further order of the Court upon the expiration of this Interim Order, a Final Order, or subsequent to the occurrence of a Termination Event, and (ii) the Lender's right to file objections to the use of, or otherwise protect its security interest in, Cash Collateral. In the event the Lender has received amounts sufficient to satisfy and repay the Prepetition Obligations under the Notes in full in cash, and any related fees, expenses, and charges to satisfy the Prepetition Obligations, then the Debtors may seek to revise or modify the grant of any adequate protection provided to the Lender (including, but not limited to, the budget requirements contained in this Interim Order) going forward with respect to any remaining Prepetition Obligations, including any other contingent or unliquidated obligations that have not been paid or satisfied under the Notes.

27. The provisions of this Interim Order, including the grant of claims and Adequate Protection Liens to or for the benefit of the Lender, and any actions taken pursuant hereto shall survive the entry of any order converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code.

28. Section 506(c) and 552(b) Waivers. Effective upon and subject to the entry of the Final Order, without the prior written consent of the Lender, which consent shall not be implied from any action, inaction, or acquiescence by the Lender, no costs or expenses of administration that have been or may be incurred in these chapter 11 cases at any time shall be charged against the Lender or any of its claims pursuant to sections 105, 506(c), or 552 of the Bankruptcy Code, or otherwise, nor shall such costs or expenses be charged against the Prepetition Collateral unless and until all Prepetition Obligations have been indefeasibly paid in full and in cash (if approved by the Court). The "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived. Further, the Lender shall not be subject to the

equitable doctrine of "marshalling" or any similar doctrine with respect to any of the Prepetition Collateral.

29. <u>Survival; Successors and Assigns</u>. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender and the Debtors and their respective successors and assigns (including, to the extent permitted by applicable law, any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estate or as a legal representative of the Debtors or with respect to the property of the estates of the Debtors). If an order dismissing any of these chapter 11 cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Administrative Claim, Adequate Protection Liens, and any other replacement security interests and liens and other protections afforded or granted to the Lender pursuant to this Interim Order as of the date of such dismissal shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations in respect thereof shall have been paid and satisfied in full (and that such Administrative Claim and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such Administrative Claim and Adequate Protection Liens. Notwithstanding any reversal, stay, modification, or vacation of this Interim Order, any use of Cash Collateral prior to such reversal, stay, modification, or vacation shall be governed in all respects by the original provisions of this Interim Order (as applicable), and the Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein with respect to such use to the maximum extent permitted by law until all of the Prepetition Obligations have been indefeasibly paid in full in cash and discharged.

22

30.     The entry of this Interim Order is without prejudice to the Lender's ability to seek the appointment of a trustee or examiner in these chapter 11 cases, moving to dismiss the cases or convert the cases to chapter 7 liquidation proceedings, to seek relief from the automatic stay or oppose continued use of Cash Collateral by the Debtors, and is also without prejudice to the Debtors from opposing or otherwise defending against such actions initiated by the Lender.

31.     Limitations on Use of Cash Collateral. The Debtors shall use the Cash Collateral solely as provided in this Interim Order and in accordance with the Budget within any allowed variance (as provided for herein).

32.     Order Governs. In the event of any inconsistency between the provisions of this Interim Order and the Prepetition Loan Documents, the provisions of this Interim Order shall govern.

33.     Binding Effect. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender and its respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtors, whether in these chapter 11 cases or in the event of the conversion of any of the chapter 11 cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

34.     The provisions of this Interim Order, the Administrative Claim, the Adequate Protection Obligations, and any and all rights, remedies, privileges, and benefits in favor of the Lender provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062.

35.     Retention of Jurisdiction. The Court has retained and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: _____, 2014
      Wilmington, Delaware                _____
                                        UNITED STATES BANKRUPTCY JUDGE

# SCHEDULE 1:  BUDGET

**Exhibit 1 to Exhibit A**

**Cash Collateral Budget**

*Schedule 1: Budget*
*Edgenet, Inc.*
*Week beginning*
*Week number*

| | 1/15/2014 1 | 1/19/2014 2 | 1/26/2014 3 | 2/2/2014 4 | 2/9/2014 5 | TOTALS |
|---|---|---|---|---|---|---|
| **Total Receipts** | 60,173 | 60,173 | 78,458 | 60,173 | 138,937 | 397,914 |
| **Cash Disbursements** | | | | | | |
| Payroll and related | - | - | 499,266 | - | 403,600 | 902,866 |
| Other operating expenses | 14,000 | 133,850 | 361,198 | 166,850 | 51,250 | 727,148 |
| **Total Cash Disbursements** | 14,000 | 133,850 | 860,464 | 166,850 | 454,850 | 1,630,014 |
| **Cash Flow Before Bankruptcy Expenses** | 46,173 | (73,677) | (782,006) | (106,677) | (315,913) | (1,232,100) |
| Debtor Professionals | - | - | - | - | - | |
| Creditor Committee Counsel | | - | - | - | - | |
| Secured Creditor Counsel | | | - | - | | |
| US Trustee | | | | | | |
| **Total Bankruptcy Expenses** | - | - | - | - | - | - |
| **Cash Flow** | 46,173 | (73,677) | (782,006) | (106,677) | (315,913) | (1,232,100) |
| **Beginning Cash** | 11,754,786 | 11,800,959 | 11,727,282 | 10,945,276 | 10,838,599 | 11,754,786 |
| **Ending Cash** | 11,800,959 | 11,727,282 | 10,945,276 | 10,838,599 | 10,522,686 | 10,522,686 |

DRAFT