# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EDGENET, INC., *et al.*,[1] | Case No. 14-10066 (BLS) |
| Debtors. | Joint Administration Requested |
| | **Objection Deadline: February 4, 2014 at 4:00 p.m.**<br>**Hearing Date: February 11, 2014 at 11:00 a.m.** |
| | **Re: Docket Nos. 10, 42** |

## RESPONSE TO THE DEBTORS' MOTION SEEKING AN ORDER (A) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE ADEQUATE PROTECTION PARTIES, (C) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B), AND (D) GRANTING RELATED RELIEF

Mr. Ernest Wu, in his capacity as Owner's Representative pursuant to the Acquisition Agreement and Plan of Merger among Edgenet Holding Corporation, Edgenet Acquisition Corp., Edgenet, Inc. and Certain Owners of Edgenet, Inc. dated as of August 31, 2004 ("Mr. Wu"), hereby responds to the Debtors' Motion Seeking An Order (A) Authorizing Postpetition Use Of Cash Collateral, (B) Granting Adequate Protection To The Adequate Protection Parties, (C) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(B), And (D) Granting Related Reliefs (the "Cash Collateral Motion") [Docket No. 10]. For the following reasons, Mr. Wu respectfully requests that the relief sought in the Motion be limited as described below:

1. For purposes of these bankruptcy proceedings, Mr. Wu represents a group of holders of notes issued by the Debtor Edgenet, Inc, which collectively represent $18,350,000 in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Edgenet, Inc. (4977); Edgenet Holding Corporation (4146). The Debtors' main corporate address is 8 Piedmont Center, 3525 Piedmont Road, Suite 420, Atlanta, GA 30305.

claims against the Debtors (the "Note Holders"). The nature, validity and priority of the Note Holders' claims are disputed. However, it is undisputed that they currently hold a security interest in the Debtors' assets. In addition, it appears that there is insufficient interest among unsecured creditors to form a committee in this case. Thus, Mr. Wu represents an important and unique constituency in this case.

2.      Most of the Debtors' secured debt and equity interests are directly or indirectly concentrated in affiliated entities. Moreover, according to the First Day Declaration filed in this case, the vast amount of the debt owed to Liberty ($53 million out of $85 million) consists of principal amounts loaned to the Debtors since 2008. Accordingly, Mr. Wu has begun the process of investigating whether Liberty's claims may be equitably subordinated, reclassified, or otherwise adjusted, either in these bankruptcy proceedings or in another forum.

3.      In addition, the Debtors' have agreed with Liberty that this will be a sale case. In connection with the Cash Collateral Motion, Debtors have agreed to market their assets (in a process which apparently started pre-petition), get a bid procedure order within 45 days of the Petition Date, and get an order approving the sale of all or substantially all of the Debtors' assets within 90 days of the Petition Date. Mr. Wu does not oppose the proposed sale in this case. However, it appears extremely unlikely that the sale will fetch a price sufficient to pay even Liberty's asserted claim, let alone the claims of Note Holders and other creditors.

4.      Predictably, although Liberty is demanding a sale of the debtors' assets, Liberty's agreement to allow the Debtors to use cash collateral comes at a steep price. The Debtors have stipulated to the amount, validity and priority of Liberty's secured claim. Debtors have further agreed to pay Liberty's attorneys' fees and to sue the Note Holders in an attempt to avoid their

liens. And, as this Response is written, the Debtors have not filed their statements and schedules, so their financial picture is not entirely clear.

5.      Accordingly, Mr. Wu's goals with respect to the Cash Collateral Motion are two-fold: (a) to provide a means for the Debtors to efficiently sell their assets and (b) to protect his rights, and those of other Note Holders, to challenge the claims of Liberty, and if necessary bring claims against Liberty.

6.      The Interim Cash Collateral Order entered in this case was quite a bit different from the one filed with the Cash Collateral Motion. After comments from the Office of the United States Trustee and Mr. Wu's counsel, a number of provisions were altered. Mr. Wu's counsel understands that the Final Cash Collateral Order sought by the Debtors and Liberty will be based on the Interim Order rather than the original proposed order. Accordingly, Mr. Wu's comments are directed at specific provisions of the Interim Order, and he reserves the right to raise additional objections if and to the extent the Debtors seek different language in a Final Cash Collateral Order.

7.      Paragraph 19(a) of the Interim Cash Collateral Order provides Liberty, and only Liberty, access to locations and information in accordance Liberty's pre-petition loan documents. The Final Cash Collateral Order will allow the Debtors to use the Note Holders' cash collateral as well as that of Liberty, so the Owner's Representative should also have the same ability to seek information from the Debtors that he had prior to the Petition Date. The Subordinated Security Agreement between Edgenet, Inc. ("Debtor") and the Owners' Representative provided for a number of categories of information which Debtor was required to provide to the Owners' Representative. A copy of that Agreement is attached as Exhibit A. It calls for the Debtor to maintain and furnish to the Owners' Representative records concerning the Note Holders'

3

Collateral. (Section 8.) It provides inspection rights for the Owners' Representative and his agents. (Section 10.) Therefore, Mr. Wu requests that the Final Cash Collateral Order include language which preserves these rights for as long as the Note Holders' cash collateral is being used by the Debtors.

8.    Paragraph 19(b) of the proposed order is also problematic. This allows Liberty to enter onto the Debtors' leased premises and exercise all of the Debtors' rights and privileges as lessees. The trigger for this remedy is a default under the pre-petition loan documents, and the Debtors have conceded that such a default has already occurred. On information and belief, the Debtors do not own real property, they lease it. Mr. Wu has no idea whether the leases have any value, but, clearly, the ability of Liberty to come into the leased premises and take over could impair the Debtors' ability to get the highest, best price for their assets. Given all the other protections for Liberty in the Final Cash Collateral Order, there is no need for this provision. Mr. Wu respectfully requests that it be stricken from the Final Cash Collateral Order or, at the very least, that it be triggered only if the Debtors' default in their post-petition obligations.

9.    Mr. Wu also requests that the Court add language to paragraph 25 of the Final Cash Collateral which expressly states that the Court may extend the investigation periods described in that paragraph on a motion filed prior to the expiration of such a deadline and after notice is given to affected parties. As noted above, Mr. Wu has started his investigation, but to date informal discovery has yielded little information. While Mr. Wu has every intention of completing his investigation within the 75 day period specified in this paragraph, an extension might be appropriate.

10. Accordingly, for the foregoing reasons, Mr. Wu respectfully requests that the relief granted in any Final Cash Collateral Order be modified.

Dated: February 4, 2014
Wilmington, Delaware

CROSS & SIMON, LLC

Joseph Grey (No. 2358)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
Email: jgrey@crosslaw.com

*Counsel to Ernest Wu, in his capacity as Owner's Representative pursuant to the Acquisition Agreement and Plan of Merger among Edgenet Holding Corporation, Edgenet Acquisition Corp., Edgenet, Inc. and Certain Owners of Edgenet, Inc. dated as of August 31, 2004*