# EXHIBIT A

# EDGENET, INC.

## SUBORDINATED SECURITY AGREEMENT

THIS SUBORDINATED SECURITY AGREEMENT ("Agreement"), dated as of September , 2004 is made by EdgeNet, Inc, a Delaware corporation (the "Company"), Edgenet Holding Corporation, a Delaware corporation (the "Issuer"), and Timothy Choate, ("Owners Representative") on behalf of those stockholders and option holders of the Company listed on Exhibit A of the Acquisition Agreement and Plan of Merger dated as of August 31, 2004, ("Acquisition and Merger Agreement") and each of the stockholders and optionholders of the Company who execute a Joinder (as defined in the Acquisition and Merger Agreement) (collectively, the "Sellers").

Pursuant to the Acquisition and Merger Agreement, the Issuer has acquired all of the issued and outstanding stock of the Company, and as partial consideration therefor, the Issuer has executed and delivered to each Seller a Subordinated Promissory Note (as hereinafter defined) of even date herewith, the terms and conditions of which are incorporated herein by reference. The Owners Representative has been appointed as the agent of the Sellers pursuant to the Acquisition and Merger Agreement for purposes of entering into and exercising all rights and remedies of the Sellers under this Agreement.

The Issuer and the Company desire to secure the Issuer's obligations to the Sellers under the Subordinated Promissory Notes in the manner set forth herein.

NOW, THEREFORE, in consideration of the Secured Obligations (as hereinafter defined) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Company and the Issuer, and to induce Sellers to accept the Subordinated Promissory Notes, the parties hereto agree as follows:

1. Definitions. Capitalized terms not otherwise defined herein which are defined in the Subordinated Promissory Notes shall have the meanings set forth therein or which are defined in the UCC shall have the meanings set forth therein. In addition to any other terms defined elsewhere in this Agreement, the following terms shall have the following meanings:

"Accounts" shall mean all accounts as that term is defined in the UCC and all rights now existing and hereafter acquired to payment for goods sold or leased or for services rendered, whether or not earned by performance, together with (i) all security interests or other security held by or granted to secure such rights to payment, (ii) all other rights related thereto (including rights of stoppage in transit) and (iii) all rights in any of such sold or leased goods which are returned or repossessed.

"Collateral" shall mean all of the Company's right, title and interest in and to all annual licensing fees paid or payable to the Company pursuant to its software license agreements wth its customers now or hereafter created (the "Licensing Fees") (including, without limitation,

all of the Company's Accounts, Contract Rights, General Intangibles, and Proceeds with respect thereto).

"Contract Rights" shall mean any right to payment under a contract not yet earned by performance.

"Event of Default" shall mean any Event of Default as defined in the Subordinated Promissory Notes, or any breach by the Company of any warranty, covenant, agreement or term under this Agreement.

"General Intangibles" shall mean all general intangibles as that term is defined in the UCC and all intangible personal property of every kind and nature other than Accounts (including, without limitation, all Contract Rights, other rights to receive payments of money, choses in action, security interests, indemnification claims, judgments, tax refunds and tax refund claims, royalty and product rights, inventions, work in progress, patents, patent applications, trademarks, trademark applications, trade names, copyrights, copyright applications, permits, licenses, franchises, leasehold interests in real or personal property, rights to receive rentals of real or personal property or payments under letters of credit, insurance proceeds, know-how, trade secrets, other items of intellectual property and proprietary rights, goodwill (whether or not associated with any of the foregoing), computer software and guarantee claims).

"Proceeds" shall mean all proceeds (as that term is defined in the UCC) and any and all amounts or items of property received when any Collateral or proceeds thereof are sold, exchanged, collected or otherwise disposed of, both cash and non-cash, including proceeds of insurance, indemnity, warranty, guarantee or any annual license fees of the Company received by the Company paid or payable on or in connection with any Collateral.

"Receivables" shall mean all Accounts and Contract Rights.

"Secured Obligations" shall mean, collectively, (i) all liabilities, obligations and indebtedness (whether actual or contingent, whether owed jointly or severally, whether for the payment of money and, if for the payment of money, whether for principal, interest (including, without limitation, any interest accruing subsequent to the filing of a petition of bankruptcy at the rate provided for in the documentation with respect thereto, whether or not such interest is an allowed claim under applicable law), fees, expenses or otherwise) of the Issuer to the Seller now existing or hereafter incurred under the Subordinated Promissory Notes or this Agreement as the same may be amended, modified or supplemented from time to time, together with any and all extensions, renewals, refinancings or refundings thereof in whole or in part and (ii) all costs and expenses (including, without limitation, to the extent permitted by law, reasonable attorneys' fees and other legal expenses) incurred by Owner's Representative in the enforcement and collection of any of the liabilities, obligations and indebtedness referred to in clause (i) above.

"Subordinated Promissory Notes" shall mean the Subordinated Promissory Notes issued by the Issuer of even date herewith, in the aggregate original principal amount of Twenty Million Dollars ($20,000,000).

"UCC" shall mean the Uniform Commercial Code as in effect in any applicable jurisdiction.

9337895_5.DOC

- 2 -

2. <u>Grant of the Security Interest</u>. The Company hereby grants to and creates in favor of Owners Representative on behalf of the Sellers a continuing security interest and lien under the UCC and all other applicable laws in and to all of the Collateral as security for the full and timely payment, observance and performance of the Secured Obligations in accordance with the terms thereof and to induce the Sellers to extend credit to the Issuer under the Subordinated Promissory Notes.

3. <u>The Company's Continuing Obligations</u>. Notwithstanding any provision hereof to the contrary, (i) the Company shall remain liable under all contracts and agreements included in the Collateral and shall pay, perform and observe all of its liabilities and obligations thereunder, (ii) Owners Representative shall have no obligation to pay, perform or observe any of the Company's liabilities or obligations under such contracts and agreements as a result of exercising its rights under this Agreement or otherwise and (iii) Owners Representative's exercise of its rights under this Agreement or otherwise shall not release the Company from any of its liabilities or obligations under such contracts and agreements.

4. <u>Names, Addresses and Locations</u>.

(a) If the Company desires to change the jurisdction of its incorporation or organization or to establish a new location for its chief executive office or a new location for any offices, plants or facilities where any Collateral or any books or records relating to the Collateral may be kept or to establish a new name in which it may invoice account debtors, maintain records concerning the Collateral or otherwise conduct business, it shall first, with respect to each such new location or name, (i) give Owners Representative at least 30 days prior written notice of its intention to do so and provide Owners Representative with such information in connection therewith as Owners Representative may reasonably request and (ii) if financing statements are on file with respect to any Collateral, take such action, upon request of Owners Representative, as may be necessary to maintain at all times the perfection and priority of the security interests in the Collateral granted to Owners Representative on behalf of the Sellers hereunder.

5. <u>Filing Requirements; Other Financing Statements</u>. The Company represents and warrants that no financing statements describing any portion of the Collateral have been filed in any jurisdiction, except for (a) financing statements which have lapsed or have been terminated, (b) financing statements naming Owners Representative, as agent, as secured party and (c) financing statements naming Liberty Partners Lenders, LLC as secured party.

6. <u>Receivables; Right of Collection</u>.

(a) The Company represents and warrants that the names of the account debtors and contract obligors, the amounts owing, the due dates and other information with respect to all Receivables within the Collateral are and shall be correctly stated in all material respects in all records of the Company relating thereto and in all invoices and reports with respect thereto furnished to Owners Representative by the Company from time to time.

(b) Except as otherwise provided in this Agreement, the Company shall collect and enforce, at its expense, all amounts due or hereafter due with respect to all

9337895_5.DOC

- 3 -

Receivables within the Collateral in accordance with applicable law and commercially reasonable practices and procedures. Promptly upon request from Owners Representative, the Company shall deliver to Owners Representative duplicate copies of all invoices rendered to account debtors in respect of all Accounts within the Collateral.

7. Rights in Collateral. The Company represents, warrants and covenants that it has and shall have at all times indefeasible title to all Collateral. The Company represents and warrants that this Agreement creates a valid security interest in the Collateral which, upon filing of proper financing statements in the jurisdictions and the taking of all other steps regarding perfection specified on Schedule I attached hereto, shall constitute a valid first priority perfected lien on and security interest in the Collateral, subject only to liens which are accorded priority by statute. The Company represents and warrants that all Receivables within the Collateral are valid, binding and enforceable in accordance with their respective terms and that no party to any Receivable within the Collateral is in default with respect thereto, except to the extent of allowances for uncollectible accounts reflected on the financial statements of the Company in accordance with generally accepted accounting principles consistently applied.

8. Records. The Company shall at all times maintain accurate and complete records with respect to each item and category of the Collateral (including, without limitation, a record of all Proceeds) and shall furnish copies of such records to Owners Representative with reasonable promptness from time to time upon Owner's Representative's request.

9. Taxes and Charges. The Company shall pay and discharge all taxes, levies and other impositions levied on any Collateral, except only to the extent that such taxes, levies and other impositions shall not then be due or shall be contested in good faith by appropriate proceedings diligently conducted (provided that such reserves and other provisions as may be required by generally accepted accounting principles have been duly made and recorded on the Company's financial records).

10. Inspection. Owners Representative and its agents shall have the right at all reasonable times to inspect the Collateral and to examine and make extracts from any books and records of the Company pertaining to the Collateral owned by it or in its possession.

11. Preservation and Protection of Security Interest. The Company shall diligently preserve and protect Owners Representative's security interest in the Collateral and shall, at its expense, cause such security interest in the Collateral to be perfected and continue perfected so long as the Secured Obligations or any portion thereof are outstanding, and for such purposes, the Company shall from time to time at Owners Representative's request and at its expense file or record, or cause to be filed or recorded, such instruments, documents and notices (including, without limitation, financing statements and continuation statements) as Owners Representative may deem reasonably necessary from time to time to perfect and continue perfected such security interests. The Company shall do all such other acts and things and shall execute and deliver all such other instruments and documents (including, without limitation, further security agreements, pledge agreements, pledges, endorsements, assignments and notices) as Owners Representative may deem reasonably necessary from time to time to perfect and preserve the priority of Owners Representative's security interest in the Collateral, as a perfected security interest in the Collateral, prior to the rights of any other secured party or lien creditor,

except with respect to liens which are accorded priority by statute. The Company will at its expense, at any time and from time to time, promptly execute and deliver all further instruments and documents and take all further action that may be necessary or desirable or that Owners Representative may reasonably request in order to effect the purposes of this Agreement.

12. <u>Remedies on Default</u>. If any one or more of the Events of Default shall occur and be continuing or shall exist, Owners Representative (on behalf of the Sellers) may, upon reasonable notice, (i) to the full extent permitted by law, take possession and control of all or any part of the Collateral and Proceeds thereof and the books and records pertaining thereto, with or without judicial process, and (ii) proceed to exercise one or more of the rights and remedies accorded to a secured party by the UCC and otherwise by law or by the terms of the Subordinated Promissory Notes or this Agreement. Owners Representative's rights and remedies shall include without limitation the power to (i) sell all or any portion of the Collateral at public or private sale at such place and time and on such terms as Owners Representative may see fit (subject to the requirements of applicable law), (ii) prosecute claims and legal actions regarding Accounts, Contract Rights and General Intangibles, (iii) perform any agreement or contract which constitutes Collateral and (iv) sell, assign, license, sublicense or otherwise dispose of, all right, title and interest in and to any General Intangibles included in the Collateral (including, without limitation, assignments, recordings, registrations and applications therefor in the United States Patent and Trademark Office, the United States Copyright Office or any similar domestic or foreign office or agency) and for the purpose of recording, registering and filing of, or accomplishing any other formality with respect to, the foregoing, execute and deliver any and all agreements, documents, instruments of assignment or other papers necessary or advisable to effect such purpose. Without precluding any other methods of sale, the sale of Collateral shall be deemed to have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of secured lenders disposing of similar property, but in any event, Owners Representative may sell the Collateral on such terms as Owners Representative may choose without assuming any credit risk and without any obligation to advertise or give notice of any kind not expressly required under this Agreement, by the UCC or otherwise. All of the rights and remedies of Owners Representative under this Agreement shall be cumulative and not exclusive of other rights and remedies which it otherwise would have, whether under the Subordinated Promissory Notes, the UCC or otherwise. After the occurrence of an Event of Default, promptly upon the request of Owners Representative, the Company shall assemble so much of the Collateral (including, without limitation, all books and records relating thereto) in its possession as is capable of physical delivery and make the same available to Owners Representative at such locations designated by Owners Representative reasonably convenient to both parties and shall permit Owners Representative, or Owners Representative's representatives and agents, to enter any premises where all or any part of the Collateral, or the books and records relating thereto, or both, are located, to take possession of all or any part of the Collateral and to remove all or any part of the Collateral. The right of Owners Representative to have the Collateral assembled and made available to it is of the essence of this Agreement, and Owners Representative may, at its election, enforce such right by a bill in equity for injunctive relief for specific performance. Owners Representative shall not be under any obligation to marshal any assets in favor of the Company or any other Person or against or in payment of all or any of the Secured Obligations.

13. _License of General Intangibles_. For purposes of enabling Owners Representative to exercise its rights and remedies hereunder, at the Owners Representative's request following the occurrence of an Event of Default, the Company hereby grants to Owners Representative an irrevocable, nonexclusive license (exercisable without payment of any royalty or other compensation to the Company) to use, assign, license or sublicense any of the Company's General Intangibles, wherever the same may be located, including in such license reasonable access to all media in which any of the General Intangibles may be recorded or stored and to all computer programs used for the compilation or printout thereof; provided that Owners Representative shall comply with all reasonable quality control standards and trademark use requirements of the Company. No agreements hereafter acquired or agreed to or entered into by the Company shall prohibit, restrict or impair the rights granted to Owners Representative hereunder. Notwithstanding the foregoing, Owners Representative shall have no obligations or liabilities regarding any or all of the Company's General Intangibles by reason of, or arising out of, this Agreement.

14. _Application of Proceeds_. Any Collateral or Proceeds of the Collateral held, received or realized upon at any time by Owners Representative shall be applied as follows:

(a) First, to reimburse Owners Representative for expenses and fees incurred for which the Company or Issuer is obligated to pay Owners Representative (on behalf of the Sellers) under and in accordance with the Subordinated Promissory Notes and this Agreement (including, without limitation, reasonable attorneys' fees and other legal expenses);

(b) Second, the satisfaction of all other Secured Obligations; and

(c) Third, the balance, if any, to the Company or as otherwise required by law.

If the Proceeds of the Collateral together with the proceeds of any other collateral granted to Owners Representative by the Company to secure the Secured Obligations, and of any sales or other dispositions thereof, shall be insufficient to fully discharge and satisfy the Secured Obligations, the Issuer shall be liable for the deficiency, and if a surplus results after lawful application of such proceeds, the Company shall be entitled to any such surplus.

15. _Continuing Validity of Obligations_.

(a) The agreements and obligations of the Company and Issuer hereunder are continuing agreements and obligations and are absolute and unconditional irrespective of the genuineness, validity or enforceability of any of the Subordinated Promissory Notes or any other instrument or instruments now or hereafter evidencing the Secured Obligations, this Agreement or any other agreement or agreements now or hereafter entered into by Owners Representative, the Company and Issuer pursuant to which the Secured Obligations or any part thereof is issued or of any other circumstance which might otherwise constitute a legal or equitable discharge of such agreements and obligations other than payment in full of the Secured Obligations.

(b) Without limitation upon the foregoing, such agreements and obligations shall continue in full force and effect as long as the Secured Obligations or any part thereof remains outstanding and unpaid and shall remain in full force and effect without regard to and

shall not be released, discharged or in any way affected by (i) any renewal, refinancing or refunding of the Secured Obligations in whole or in part, (ii) any extension of the time of payment of any of the Subordinated Promissory Notes or other instrument or instruments now or hereafter evidencing the Secured Obligations or any part thereof, (iii) any compromise or settlement with respect to the Secured Obligations or any part thereof, or any forbearance or indulgence extended to the Company and Issuer, (iv) any amendment to or modification of the terms of any of the Subordinated Promissory Notes or other instrument or instruments now or hereafter evidencing the Secured Obligations or any other agreement or agreements now or hereafter entered into by Owners Representative and the Company pursuant to which the Secured Obligations or any part thereof is issued or secured, (v) any substitution, exchange or release of, or failure to preserve, perfect or protect, or other dealing in respect of, the Collateral or any other property or any security for the payment of the Secured Obligations or any part thereof, (vi) any bankruptcy, insolvency, arrangement, composition, assignment for the benefit of creditors or similar proceeding commenced by or against the Company and Issuer or (vii) any other matter or thing whatsoever whereby the agreements and obligations of the Company or the Issuer hereunder would or might otherwise be released or discharged other than payment in full of the Secured Obligations. The Company and Issuer hereby waives notice of the acceptance of this Agreement by Owners Representative.

(c) To the extent that the Company and Issuer makes a payment or payments to Owners' Representative (on behalf of the Sellers) or Owners Representative receives any payment or proceeds of the Collateral, which payment or proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to the Company and Issuer or a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause of action, then, to the extent of such payment or proceeds, the Secured Obligations or portion thereof intended to be satisfied and this Agreement shall be revived and continue in full force and effect, as if such payment or proceeds had not been received by such party.

16. Defeasance. Upon payment in full of the Secured Obligations, this Agreement shall terminate and be of no further force and effect (except for the provisions of Sections 15 and 18 hereof which shall survive), and in such event Owners Representative shall, at Issuer's expense and without recourse, representation or warranty, redeliver and reassign to the Company the Collateral and take all action necessary to terminate Owners Representative's security interest in the Collateral. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

17. Specific Performance. In addition to all other rights and remedies granted to Owners Representative in this Agreement and the Subordinated Promissory Notes, Owners Representative (on behalf of the Sellers) shall be entitled to specific performance and injunctive and other equitable relief, and the Company and Issuer waives any requirement for the securing or posting of any bond or other security in connection with the obtaining of any such specific performance and injunctive or other equitable relief.

18. Amendments, Waivers, Notices, etc.

(a) The provisions of this Agreement may be amended, modified and waived, but only with the written consent of the Issuer, the Company and the Owners Representative.

(b) All notices and other written communications hereunder shall be made as set forth in the Subordinated Promissory Notes, except that the addresses of EdgeNet, Inc. and the Owners Representative shall be as set for as in the signature page set forth thereto.

\* \* \* \*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**EDGENET HOLDING CORPORATION**

By: _____
Its: _____VP_____

Address:
c/o Liberty Partners
1370 Avenue of the Americas
New York, NY 10019-4602
Attention: President
Telecopy: (212) 649-6076


**EDGENET, INC.**

By: _____
Its: _____Chairman_____

Address:
6 Cadillac Drive
Suite 260
Brentwood, TN 37027
Attention: President
Telecopy:


**OWNERS REPRESENTATIVE**

_____
Timothy Choate

Address:
1811 Azure Way
Murfreesboro, TN 37128

9337895_5.DOC

## SCHEDULE I

A. <u>Filing Jurisdictions</u>:

    1.     States:     Delaware

    2.     Counties/Towns:     None

B. <u>Other Steps Needed to Perfect</u>:

None

C. <u>Permitted Lien Filings</u>:

Liens securing the Senior Revolving Note