# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EDGENET, INC., *et al.*,[1] | ) | Case No. 14-10066 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DEBTORS' MOTION FOR ORDER (A) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENT; (B) APPROVING, SUBJECT TO HIGHER OR BETTER OFFERS, SALE OF THE DEBTORS' ASSETS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE; (D) AUTHORIZING THE DEBTORS TO CONSUMMATE TRANSACTIONS RELATED TO THE ABOVE; AND (E) GRANTING OTHER RELIEF

Edgenet, Inc. and Edgenet Holding Corporation, the debtors and debtors-in-possession herein (collectively, the "***Debtors***"), hereby submit this motion (the "***Sale Motion***") pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended (the "***Bankruptcy Code***"), and rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (each a "***Bankruptcy Rule***" and collectively, the "***Bankruptcy Rules***"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), for an order substantially in the form attached hereto as **Exhibit A** (the "***Sale Order***") (a) authorizing and approving the Purchase Agreement (defined herein); (b) approving the sale of the Acquired Assets (as defined in paragraph 8 below) to PCF Number 2, Inc. (the "***Buyer***") pursuant to the Purchase Agreement (as defined in paragraph 7 below) or, as a whole to one bidder or in parts to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number are Edgenet, Inc. (4977) and Edgenet Holding Corporation (4146).

more than one bidder at an auction, pursuant to section 363 of the Bankruptcy Code; (c) approving the assumption and assignment of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code; (d) authorizing the Debtors to consummate the transactions related to the above; and (e) granting other relief. In support hereof, the Debtors respectfully represent as follows:

## JURISDICTION

1. On January 14, 2014 (the "*Petition Date*"), the Debtors each filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Cases*"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. No official committee of general unsecured creditors has been formed, but a committee consisting of allegedly secured note holders (the "*Committee*") was appointed in these cases by the Office of the United States Trustee on March 13, 2014.

3. This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2) (M), (N) and (O). Venue of the Debtors' Chapter 11 Cases and this Sale Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006 and 9014 and Local Rules 2002-1, 6004-1 and 9006-1.

## INTRODUCTION

4. Prior to the initiation of the Chapter 11 Cases, the Debtors were in the process of seeking a purchaser for their assets.

2

5. In order to fund operations in the Chapter 11 Cases, until such sale could be achieved, the Debtors obtained a final order authorizing their use of cash collateral [D.I.83] (the "*Cash Collateral Order*").

6. The right to use cash collateral under the Cash Collateral Order, however, is contingent on the Debtors moving forward expeditiously to locate a purchaser and then to sell their assets.

7. The Debtors, in consultation with their pre-petition secured lender, Liberty Partners Lenders, L.L.C. ("*Liberty Lenders*") and in the exercise of their considered business judgment, have determined that the best way to maximize value for the benefit of their estates and creditors is to attempt a sale of the Acquired Assets through one or more transactions. In this regard, on April 11, 2014 Debtors executed an Asset Purchase Agreement (the "*Purchase Agreement*") (attached hereto as **Exhibit B**) that contemplates a sale of the Acquired Assets to the Buyer and the Debtors' assumption and assignment to the Buyer of certain executory contracts and unexpired leases. The Debtors also seek to expose the Purchase Agreement and the Acquired Assets for competitive bidding through an Auction pursuant to certain sale procedures set forth therein and in the Debtors' Motion for an Order (A) Approving Sale Procedures and Bidding Protections in Connection with Sale of the Debtors' Assets Pursuant to Sections 363 and 365 of the Bankruptcy Code; (B) Scheduling an Auction and Hearing to Consider Approval of the Sale of the Debtors' Assets; (C) Approving Notice of Respective Dates, Times, and Places for Auction and for Hearing on Approval of Asset Purchase Agreement and Sale of the Debtors' Assets, and Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (D) Establishing Procedures for Noticing and Determining Cure Amounts; and (E) Granting other Relief, filed contemporaneously herewith.

## PROPOSED SALE OF THE ACQUIRED ASETS

**A.  Description of the Acquired Asets**

8.  The Acquired Assets to be sold to the Buyer (the "*Acquired Assets*")[2] at closing and subject to higher and better bids at Auction include, *inter alia*,

(a)  All accounts, notes and other receivables;

(b)  Leasehold and other interests in real property relating to the Business (as defined in the Purchase Agreement);

(c)  All Equipment (as defined in the Purchase Agreement);

(d)  All Debtors' owned Intellectual Property (as defined in the Purchase Agreement) except to the extent included in Excluded Acquired Asets (as defined in the Purchase Agreement);

(e)  All Business Records (as defined in the Purchase Agreement)personal property of Debtors (except for cash and certain deposits and certain causes of action); and

(f)  Certain executory contracts with customers, employees as well as executory contracts related to equipment, software and services as may be agreed to by the Buyer prior to the Closing.

**B.  The Debtors' Solicitation and Marketing Efforts**

9.  In February 2013, the Debtors retained JMP Securities LLC ("*JMP*") as their investment banker to assist the Debtors in exploring certain strategic alternatives, including the potential sale of the assets, in order to maximize the value of the assets.

10.  JMP assisted in the preparation of marketing materials intended for distribution to prospective buyers of the Debtors' assets including an executive summary, confidential

---

[2] Defined terms used in this Sale Motion which appear in the Purchase Agreement are intended to have the meanings ascribed to them in the Purchase Agreement. In the event of any inconsistency between the description of the Acquired Assets set forth herein and the description of the Acquired Assets set forth in the Purchase Agreement, the Purchase Agreement shall control.

information memorandum and the aggregation of key company documents and further analysis for an online data room. JMP worked with the Debtors to develop a list of suitable potential buyers to be contacted on a discreet and confidential basis, after approval by the Debtors. Beginning in August of 2013, JMP contacted in excess of 125 potential purchasers and/or merger partners which included both financial and strategic parties, soliciting expressions of interest in and to the Debtors and their assets.

11. Out of those entities contacted, approximately 45 showed sufficient interest that JMP forwarded to them nondisclosure agreements ("*NDA's*") which were executed. Thereafter, further information was provided to the interested parties that executed NDA's. At this point, JMP requested that all such entities provide non-binding bids for the Debtors' assets. Of the 40 or so entities executing NDA's, approximately eight submitted bids and several (along with one additional entity) received more detailed information. In addition, these nine entities conducted management meetings with the Debtors most senior management. Upon conclusion of the management meetings, JMP again asked for non-binding final bids for the assets and received four bids, all of which indicated an interest in all of the Debtors assets and two of which also indicated an interest in a subset of the Debtors' assets.

12. As of the Petition Date, the Debtors were in active discussions with two entities with respect to all of the Debtors' assets.

13. Following the Petition Date, the Debtors received additional expressions of interest regarding the purchase of their assets, from which an additional, approximately six NDA's were executed. Shortly thereafter, one of the entities with which the Debtors had been negotiating pre-petition dropped out of the process, but another entity which had previously

5

PHIL1 3548240v.2

expressed an interest in purchasing the assets reinitiated discussions with the Debtors with renewed interest.

14. From the inception of the sale process last year, through the first two months of the Chapter 11 Cases, JMP and/or the Debtors had been in contact with approximately 60 potential strategic buyers and 85 potential financial buyers.

15. After consultation with Liberty Lenders, and in the exercise of their considered business judgment, the Debtors selected the proposal of the Buyer pursuant to the Purchase Agreement as the highest and best offer for the Acquired Assets, subject to higher and better offers pursuant to the sale procedures (the "*Sale Procedures*") as defined in the Debtors' Motion for an Order (A) Approving Sale Procedures and Bidding Protections in Connection with the Sale of the Debtors' Assets Pursuant to Sections 363 and 365 of the Bankruptcy code; (B) Scheduling and Auction and Hearing to Consider Approval of the Sale of the Debtors' Assets; (C) Approving Notice of Respective Dates, Times, and Places for Auction and for Hearing on Approval of Asset Purchase Agreement and Sale of the Debtors' Assets, and Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (D) Establishing Procedures for Noticing and Determining Cure Amounts; and (E) Granting Related Relief (the "*Sale Procedures Motion*").

16. The Debtors propose to sell the Acquired Assets (a) to the Buyer pursuant to the Purchase Agreement or (b) in whole or part, to the highest and best successful bidder(s) ("*Successful Bidder(s)*") at the Auction, as determined by the Debtors in accordance with the terms of the Sale Procedures Order and the Sale Procedures and in consultation with Liberty Lenders and the professionals for the Committee and as ultimately approved by the Bankruptcy Court.

17. As set forth in greater detail in the Purchase Agreement, the Debtors' estates will receive approximately $6.5 million less certain adjustments provided in the Purchase Agreement (being the cash consideration payable by the Buyer under the Purchase Agreement) for the Acquired Assets (the "*Purchase Price*"). Additionally, the Debtors will assume and assign to the Buyer the Assumed Contracts as set forth in the Purchase Agreement.

18. In connection with the assumption and assignment of the Assumed Contracts, it is necessary that any terms which attempt to improperly restrict such transfers are found void. The Assumed Contracts are valid and binding, in full force and effect, and enforceable in accordance with their terms. However, it is necessary that any provision in any Assumed Contract that purports to declare a breach or default as a result of a change of control in respect of the Debtors is unenforceable and that all Assumed Contracts remain in full force and effect. Therefore, the Debtors request a finding from that Court that no sections or provisions of any Assumed Contracts that purport to (i) prohibit, restrict, or condition the Debtors' assignment of an Assumed Contract, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor party to such Assumed Contract; (ii) authorize the dissolution of any partnership or determination, cancellation, or modification of any partnership interest or Assumed Contract based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; or (iii) provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts upon the occurrence of the conditions set forth in subsections (i) and (ii) above, shall have any force and effect with respect to the Successful Bidder and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code. The Debtors further

request that the non-debtor party to each Assumed Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Successful Bidder shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption and/or assignment thereof.

19. The Debtors also seek authorization to execute such documents and take all other actions as may be necessary to consummate the sale contemplated herein, including the release of any encumbrances of any kind against the Acquired Assets. If any person or entity that has filed financing statements or other documents or agreements evidencing liens, claims or encumbrances on the Acquired Assets which are not delivered to the Debtors prior to closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such liens, or other encumbrances which the person or entity has with respect to the Acquired Assets, the Debtors seek authorization to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Acquired Assets prior to closing. Any liens, encumbrances, interests, liabilities, obligations, claims, charges and interests of any kind asserted under laws, rules, regulations or governmental or court orders imposing a stamp, transfer tax or similar tax arising from the transfer of the Acquired Assets to the Successful Bidder shall be filed against the Debtors' estate and shall not be asserted against the Successful Bidder. The Debtors also seek, pursuant to sections 105(a) and 363 of the Bankruptcy Code, to enjoin all Persons and Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) from taking any action against the Successful Bidder to recover any claim which such Person or Governmental Unit has or may assert against the Debtors (as such claims exist immediately prior to the Closing). The Successful Bidder will not assume or otherwise become obligated for any

of the Debtors' liabilities other than as set forth in any agreement with the Successful Bidder. Consequently, all holders of liabilities retained by the Debtors should be enjoined from asserting or prosecuting any claim, encumbrance or cause of action against the Successful Bidder to recover on account of any liabilities other than those pursuant to a written agreement.

20. Similarly, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, all parties holding any claim, encumbrance or cause of action against the Debtors, its estate or its Acquired Assets, the Debtors' employees, former employees and members, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, including such officials maintaining any authority relating to environmental, labor and health and safety laws, and their respective successors or assigns, should be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind or the employment of any process or any act to collect, offset or recover such claim, encumbrance or cause of action against the Successful Bidder, or that seeks to impose liability upon the Successful Bidder or any affiliate, successor or assign thereof, or against the Acquired Assets or the Assumed Contracts, under the laws of the United States, any state, territory or possession thereof or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law, including, without limitation, any theory of successor or transferee liability or any liability for pre- or postpetition claim, encumbrance or cause of action against the Debtors by reason of the transfer of the Acquired Assets to the Successful Bidder, except as otherwise agreed. Such restriction should include, without limitation, pre- and postpetition claims, encumbrances or causes of action of any federal, state or local governmental entities, of any current or former employee for claims arising out of employment and termination of employment (except as otherwise provided

in the Purchase Agreement), including, without limitation, claims for wages, bonuses, commissions, accrued vacation, severance, continuation of coverage under COBRA, or pension, welfare, fringe benefits or any other benefits of any kind including, without limitation, obligations in respect of retiree medical coverage or benefits.

21. Finally, it is necessary that the Successful Bidder not be obligated to (i) continue or maintain in effect, or assume any liability in respect of any employee pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or has any responsibility therefor, including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee pension plan or the termination of any such plan.

C. **Disclosures Required by Local Rule 6004-1**

22. The Purchase Agreement and/or the proposed Sale Order shall include the following provisions:

(a) a closing deadline of June 30, 2014;

(b) the Buyer's deposit of $500,000 into escrow (which has been completed). the Buyer will forfeit the deposit if the Debtors terminate the Purchase Agreement as a result of a breach by the Buyer of any covenant or agreement of the Buyer in the Purchase Agreement, or if any representation or warranty of the Buyer in the Purchase Agreement is untrue in any material respect, subject to certain cure rights set forth in the Purchase Agreement;

(c) preservation of, and access by the Debtors to, books and records of the Debtors transferred to the Buyer in connection with the sale;

(d) a finding and holding that the Buyer will not be subject to successor liability (other than with respect to the Assumed Liabilities) as may be permitted by applicable law;

(e) relief in the proposed Sale Order from the ten-day stay imposed by Bankruptcy Rule 6004(h) for the reasons set forth herein.

23. In addition to the foregoing, the Purchase Agreement does not require the Buyer to hire any specific employees of the Debtors.

**D. Necessity For Sale**

24. To date, no other options exist for the Debtors, other than to sell the Acquired Assets.

25. The Debtors presently face the possibility of continued financial deterioration. Thus, the Debtors have decided to pursue a sale of substantially all of their assets to the Buyer and believe that they must be permitted to conduct the process in the manner and on the timetable set forth herein and in the Sale Procedures.

26. As indicated above, the Debtors have marketed and solicited offers for the sale of all or any portion of their assets and have or will continue to do so. The Debtors believe the sale of the Acquired Assets to the Buyer, and exposing the Acquired Assets to Auction as part of this process, will maximize the value of the Acquired Assets.

**APPLICABLE AUTHORITY**

27. "Under Delaware law, the business judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Continuing Creditors' Committee of Star Telecomms., Inc. v. Edgecomb*, 385 F.Supp.2d 449, 462 (D. Del. 2004) (*quoting Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *see also Ad Hoc Committee of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F.Supp.2d 538, 555 n.111 (D. Del. 2008). Thus, this Court should grant the relief requested in this Motion if the

Debtors demonstrate a sound business justification therefor. *See In re Delaware Hudson Ry. Co.*, 124 B.R. 169, 179 (D. Del. 1991).

28. The Debtors have sound business justifications for selling the Acquired Assets at this time. Continued operations requires significant liquidity. While the Debtors currently have limited access to cash, the continuation of their business and preservation of their customer base will create value. Accordingly, the Debtors have determined that the best option for maximizing the value of their estates for the benefit of their creditors is through a sale of substantially all of their assets.

A. **Approval of the Sale is Warranted Under Section 363(b) of the Bankruptcy Code**

29. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). A debtor's sale or use of assets outside the ordinary course of business should be approved by the Bankruptcy Court if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g., In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991). Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions").

30. The Debtors have a sound business justification for selling the Acquired Assets at this time. Based on the results of their analysis of the Debtors' ongoing and future business

12

prospects, the Debtors' management and team of financial advisors have concluded that a sale of substantially all of their assets in accordance with the procedures set forth in the Sale Procedures is the best method to maximize recoveries to the estates. Maximization of asset value is a sound business purpose warranting authorization of any proposed Sale.

31. The sale of the Debtors' Acquired Assets will be subject to competing bids, enhancing the Debtors' ability to receive the highest or otherwise best value for the Acquired Assets. Consequently, the fairness and reasonableness of the consideration to be received by the Debtors will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

32. In addition, all creditors and parties in interest will receive adequate notice of the Sale Procedures and Sale Hearing. Such notice is reasonably calculated to provide timely and adequate notice to the Debtors' major creditor constituencies, those parties most interested in these Chapter 11 Cases, those parties potentially interested in bidding on the Acquired Assets and others whose interests are potentially implicated by a proposed Sale. Accordingly, consummating the Sale(s) as soon as possible is in the best interests of the Debtors and their creditors and parties in interest

**B.** **The Proposed Sale(s) Satisfy the Requirements of Section 363(f) for a Sale Free and Clear of Interests**

33. Section 363(f) of the Bankruptcy Code permits the Debtors to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet

one of the five conditions of section 363(f). The Debtors believe that they will be able to demonstrate that at the Sale Hearing that they have satisfied one or more of these conditions.

34. The Debtors believe that their secured lenders will consent to the sale free and clear under section 363(f)(2). Where that may not be the case, a sale free and clear can proceed pursuant to section 363(f)(4) where such security interest is in bona fide dispute[3] or pursuant to section 363(f)(5) of the Bankruptcy Code because the secured lenders' liens will attach to the proceeds of the sale and the Debtors will establish at the Sale Hearing that the secured lenders can be compelled to accept a monetary satisfaction of their claims.

35. The Debtors propose that any bona fide and allowed liens, claims, and encumbrances shall attach to the sale proceeds with the same force, validity, effect, priority and enforceability as such had in the Acquired Assets prior to such sale.

### C. A Successful Bidder Should be Entitled to the Protections of Section 363(m)

36. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Penn.*, 788 F.2d at 147.

37. The Purchase Agreement was negotiated at arm's-length, with all parties represented by their own counsel. The Buyer is not an insider of the Debtors and had no prior connection with the Debtors. Although it is possible that the Buyer may enter into a contract with one or more insiders of the Debtors (as set forth in section 1.04(e) of the Purchase Agreement), such contracts are for the purpose of obtaining specific consideration from such persons,

---

[3] The Debtors initiated a preference action against the Seller Notes seeking to avoid the filing of their UCC-1 financing statement and seeking to avoid their security interest.

14

reasonably equivalent to any amounts paid to such persons by the Buyer. While the Debtors engaged in discussions with other parties interested in acquiring certain of their assets, the Debtors submit that the Buyer's proposal as contained in the Purchase Agreement represents the highest and best offer for the Acquired Assets. The Debtors also submit that any additional agreements at Auction will only be executed if the Debtors' believe, in an exercise of their business judgment, that such proposal represents the competing bidder's highest and best offer of the Acquired Assets and upon this Court's approval. Additionally, the Debtors will adduce facts at the Sale Hearing on any objection demonstrating that any bidder who is deemed a Successful Bidder for all or any portion of the Acquired Assets has negotiated at arm's-length, with all parties represented by their own counsel.

38. Accordingly, the Sale Order will include a provision that the Purchaser or a third party Successful Bidder(s) for the Acquired Assets (as applicable), is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. The Debtors believe that providing any Successful Bidder(s) with such protection will ensure that the maximum price will be received by the Debtors for the Acquired Assets and closing of the same will occur promptly.

### D. The Assumption and Assignment of Executory Contracts and Unexpired Leases

39. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g., In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del 2003). If the debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See Group of Institutional Investors v.*

15

*Chicago M. St. P. & P.R.R. Co.*, 318 U.S. 523 (1943); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F. 2d 36, 39-40 (3d Cir. 1989). The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987). Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985). Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

40. Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. *See In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); *see also In re Headquarters Doge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting purpose of section 365(f) is to assist trustee in realizing the full value of the debtor's assets).

41. Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract...only if the trustee assumes such contract...and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes,*

16

PHIL1 3548240v.2

*Inc.),* 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *Accord In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtors has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

42. The Buyer has or will have, as of closing on the sale of the Acquired Assets, sufficient capital to close this sale. Upon closing, the Buyer will have financial resources that are more than sufficient to perform under the Assumed Contracts. Moreover, if necessary, the Debtors will adduce facts at the hearing on any objection demonstrating the financial wherewithal of the Buyer or any Successful Bidder, and their willingness and ability to perform under the contracts to be assumed and assigned to them. The Sale Hearing therefore will provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of any Successful Bidder to provide adequate assurance of future performance under the Assumed Contracts.

43. Furthermore, to the extent that any defaults exist under any Assumed Contract, the Buyer will cure any such default prior to such assumption and assignment. Moreover, the Debtors will adduce facts at the Sale Hearing demonstrating the financial wherewithal of the Successful Bidder(s), its experience in the industry, and its willingness and ability to perform under the contracts to be assumed and assigned to it.

### E. Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate

44. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property...is stayed until the expiration of 14 days after entry of the order, *unless the court orders otherwise.*" (emphasis added). Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease...is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise.*" (emphasis added). The Debtors request that any Sale Order be effective immediately by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

### NO PRIOR REQUEST

45. No prior request for the relief sought herein has been requested from this Court or any other court.

### NOTICE

46. Notice of this Sale Motion has been provided to the following parties: (a) the Office of the United States Trustee; (b) counsel to Liberty Lenders; (c) Counsel to the Committee; (d) all known parties asserting a lien or security interest in the Acquired Assets; (e) all counterparties to the Assumed Contracts; (f) all parties requesting notice under Bankruptcy Rule 2002; (g) the Internal Revenue Service; and (h) the United States Attorney.

PHIL1 3548240v.2

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested in this Sale Motion and grant the Debtors such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: April 11, 2014<br>Wilmington, Delaware | */s/ Raymond H. Lemisch* |

Domenic E. Pacitti (DE Bar No. 3989)
Raymond H. Lemisch (DE Bar No. 4204)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:  (302) 426-1189
Facsimile:   (302) 426-9193

and

Morton R. Branzburg (Admitted Pro Hac Vice)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Telephone:  (215) 569-2700
Facsimile:   (215) 568-6603

*Counsel to the Debtors and Debtors in Possession*