**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| EDGENET, INC., *et al.*,[1] | : | Case No. 14-10066 (BLS) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Hearing Date: July 10, 2014 at 12:00 noon |
| | : | Objection Deadline: June 27, 2014 at 4:00 p.m. |
| | : | |

**MOTION OF THE OFFICIAL COMMITTEE OF NOTEHOLDERS FOR AN ORDER
(A) PURSUANT TO SECTIONS 105(a) AND 1112(b) OF THE BANKRUPTCY CODE
CONVERTING THESE CASES TO CASES UNDER
CHAPTER 7 OF THE BANKRUPTCY CODE, (B) EXTENDING THE
INVESTIGATION DEADLINE, AND (C) GRANTING RELATED RELIEF**

The Official Committee of Noteholders (the "Committee") of Edgenet, Inc., et al.
(collectively, the "Debtors" or "Edgenet"), by and through its counsel, hereby moves (the
"Motion") for an order (i) pursuant to sections 105(a) and 1112(b) of the Bankruptcy Code,
converting these cases to cases under chapter 7 of the Bankruptcy Code, (ii) extending the
Investigation Deadline (defined herein), and (iii) granting related relief.    In support of the
Motion, the Committee respectfully represents as follows:

**PRELIMINARY STATEMENT[2]**

The Debtors filed these cases approximately 5 months ago with the intent to sell
substantially all of their assets.    After selling their assets, the Debtors have nothing further to
achieve in chapter 11 and, in fact, remaining in chapter 11 is not in the best interests of the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal
taxpayer-identification number are Edgenet, Inc. (4977) and Edgenet Holding Corporation (4146).  The
address of the Debtors' corporate headquarters is 8 Piedmont Center, 3525 Piedmont Drive, Suite 420,
Atlanta, GA 30305.

[2]     Capitalized terms used in the Preliminary Statement shall have the meanings ascribed to them in
this Motion.

7128744/

estates and their creditors. The Committee requests that the chapter 11 cases of these post-sale, shell-entity Debtors be converted to cases under chapter 7 of the Bankruptcy Code.

As this Court is well aware, the Committee was formed approximately 2 months after the Petition Date. The Debtors, along with Liberty, sought to disband the Committee, a request denied by this Court. While the Committee survived the motion to disband, it received no budget[3] to fund fees and expenses incurred in performing its fiduciary duties during these cases. Nevertheless, the Committee worked tirelessly to protect the interests of its constituency, the Noteholders, who hold a first-priority, secured lien on certain of the Debtors' assets. The Committee participated in all aspects of these cases, and added significant value to the estates and its constituency, including through the following actions:

- Opposing the Debtors' "bonus motion," in which the Debtors sought approval to pay in excess of $1 million to approximately 20 "key" employees;

- Joining the U.S. Trustee's objection to the structure of the stalking horse asset purchase agreement, which effectively permitted payment of $1 million in bonuses to "key" employees (approximately 15% of the proposed consideration under the stalking horse agreement) regardless of whether the Court ultimately approved those payments; and

- Joining in the request of EdgeAQ (which was ultimately the successful bidder for the Debtors' assets) to extend the bid deadline and auction date. As a result of the Court's order granting that request, the Debtors were able to conduct an auction which resulted in an increase of approximately 38% over the stalking horse bid to the estates (net of the break-up fee and expense reimbursement).

Importantly, the Committee also spent significant time investigating the extent, validity and priority of the liens and claims of Liberty Lenders and the prepetition activities of the Liberty Entities. After its initial investigation, the Committee met with Liberty Lenders to

---

[3]    The budget attached to the Final Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to the Adequate Protection Parties, (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b), and (D) Granting Related Relief (D.I. 83) contained a line item which allocated $50,000 for an official committee of unsecured creditors. However, an official committee of unsecured creditors was not appointed in these cases. The Committee reserves its rights with respect to those funds.

7128744/

discuss settlement, as well as an exit strategy for these cases. Unfortunately, those discussions did not result in an agreement among the parties. Given that the parties did not agree to a consensual exit strategy (which, as discussed below, is required to confirm a plan), there is no reason for these cases to stay in chapter 11 and languish. The interests of the estates and creditors are best served by the immediate cessation of administrative expenses, including fees and expenses of professionals retained by the Debtors and the Liberty Entities and the appointment of a chapter 7 trustee, who can efficiently wind down these estates, continue the Committee's investigative efforts and, if appropriate, commence causes of action on behalf of the estates.

Once cause for conversion is established, conversion is mandatory under the Bankruptcy Code. Two grounds constituting "cause" to convert the cases exist here. First, absent consent of the Noteholders, no plan can be effectuated. The Noteholders have a "blocking position" with respect to any plan of liquidation, and settlement discussions resolving the Committee's concerns with respect to Liberty Lenders' purported debt, which would have paved the way to a consensual plan, were not successful. Second, the Debtors have not been cash flow positive in chapter 11, and there is no reason to believe that post-sale non-operating entities will be. These losses, together with the absence of a reasonable likelihood of rehabilitation, constitute an additional basis for cause to convert these cases. While the Bankruptcy Code gives parties in interest opposing a conversion motion the opportunity to avoid conversion notwithstanding cause shown, the Debtors will not be able to show "unusual circumstances" necessitating that these cases remain in chapter 11, nor can they show that there is a reasonable likelihood a plan will be timely confirmed.

Finally, in an abundance of caution, the Committee requests an extension of its Investigation Deadline (in the event this Court does not convert these cases), and the provision of a reasonable investigation deadline for a chapter 7 trustee (in the event this Court does convert these cases).

In light of the foregoing, and for the reasons more fully set forth below, the Committee respectfully requests that cause exists to grant the Motion.

## BACKGROUND

### The Debtors' Prepetition Capital Structure

1.      Edgenet, Inc. is a party to various promissory notes, dated as of October 22, 2008, January 25, 2010 and June 8, 2011 in favor of Liberty Partners Lenders, L.L.C. ("Liberty Lenders"). The Debtors maintain that Liberty Lenders holds a lien on substantially all of the Debtors' assets.

2.      As of the Petition Date, Liberty Lenders is owed approximately $85 million, comprised of principal totaling approximately $53.3 million, and interest owed thereunder totaling approximately $31.7 million.

3.      An affiliate of Liberty Lenders, Liberty Partners Holdings 44, L.L.C. ("Liberty Partners" and, together with Liberty Lenders, the "Liberty Entities") owns all or substantially all of the Debtors' equity.

4.      In connection with the acquisition of Edgenet by Liberty Partners, Edgenet pledged its right to annual licensing fees paid pursuant to software license agreements with its customers, including accounts, contract rights, general intangibles and proceeds with respect thereto to the then-equity holders of Edgenet (the "Noteholders").[4] In connection with the issuance of notes to the Noteholders, the position of an "Owners Representative" was created to

---

[4]      Five of the Noteholders are members of the Committee.

7128744/

4

represent (including as attorney-in-fact) the Noteholders for certain designated purposes.  This position is currently filled by Ernest Wu.

5.      As of the Petition Date, the Noteholders are collectively owed approximately $18.5 million.

6.      On February 28, 2014, the Debtors filed their Schedules of Assets and Liabilities (the "Schedules," D.I. 93 and 95).  The Schedules indicate that there is approximately $44,000 of unsecured debt owed to parties other than the Liberty Entities.

## Case Background

7.      On January 14, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and properties as debtors-in-possession.  No trustee or examiner has been appointed in these cases.

8.      On February 19, 2014, the Court entered a final order authorizing the Debtors' use of Liberty Lenders' cash collateral (D.I. 83).

9.      On March 13, 2014, the Committee was appointed in these cases by the Office of the United States Trustee for the District of Delaware, consisting of the following five members: (i) Fred Marxer; (ii) Timothy D. Choate; (iii) Martin Davis; (iv) Robert H. Neal, and (v) Richard C. Pinson.  On March 18, 2014, the Committee selected Cooley LLP and Morris James LLP as co-counsel.

10.     On April 16, 2014, the Court approved a stipulation providing, among other things, the Committee with the authority to investigate the liens, claims and security interests held by Liberty Lenders through and including May 14, 2014 (as may be extended by agreement

of the parties or Court order, the "Investigation Deadline"). Liberty Lenders and the Committee subsequently agreed to extend the Investigation Deadline through and including June 13, 2014.

11. On April 11, 2014, the Debtors filed motions seeking to sell substantially all of their assets and authority to establish procedures in connection therewith (D.I. 197 & 199).

12. On May 5, 2014, the Court entered an order establishing procedures governing the sale of substantially all of the Debtors' assets (D.I. 233).

13. Following an auction for the sale of substantially all of their assets held on June 5 and 6, 2014, on June 12, 2014, the Court entered an order approving the sale of substantially all of the Debtors' assets to EdgeAQ, LLC (D.I. 299).

## JURISDICTION

14. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157. Pursuant to Local Rule 9013-1(f), the Committee hereby confirms its consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BASIS FOR RELIEF REQUESTED

15. The predicates for the relief requested herein are sections 105(a) and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1017, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

**ARGUMENT**

**A.    SECTION 1112(b) OF THE BANKRUPTCY CODE REQUIRES THIS COURT TO CONVERT THE CHAPTER 11 CASES TO CHAPTER 7 FOR CAUSE SHOWN**

16.    Section 1112(b)(1) of the Bankruptcy Code provides, in pertinent part, that

> … on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion is not in the **best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7** or dismiss a case under this chapter, whichever is in the **best interests of creditors and the estate,** for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b) (emphasis added). Prior to the 2005 amendments to the Bankruptcy Code, section 1112(b) contained the language "may convert" as opposed to the "shall convert" language which now appears in section 1112(b). Courts have recognized that "[t]he amendments to Section 1112 substantially limit the court's discretion to refuse to dismiss or convert a Chapter 11 case upon a finding of cause." *DCNC North Carolina I, LLC v. Wachovia Bank, N.A.*, Nos. 09-3775, 09-3776, 2009 WL 3209728, * 6 (E.D. Pa. Oct. 5, 2009); *In re The Reserves Resort, Spa & Country Club LLC*, No. 12-13316 (KG), 2013 WL 3523289, * 2 (Bankr. D. Del. July 12, 2013) ("The court does not have discretion."); *In re Midwest Properties of Shawano, LLC*, 442 B.R. 278, 283 (Bankr. D. Del. 2010) ("[t]he statutory language has been changed from the permissive … to mandatory.").

17.    Section 1112(b) provides a nonexclusive list of 16 "causes" for conversion. 11 U.S.C. § 1112(b)(4)(A)-(P)[5]; *In re Am. Capital Equip.*, LLC, 688 F.3d 145, 162 n. 10 (3d Cir.

---

[5]    Section 1112(b)(4) states that "cause" includes—
(A)    substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

7128744/

2012) ("the listed examples of cause are not exhaustive."). Two separate and independent grounds include where there is either (i) an inability to effectuate a plan, or (ii) a continuing loss to or diminution of the estate <u>and</u> the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. §1112(b)(4)(M) and (A) (formerly §1112(b)(1) and (2)).

18.    The Third Circuit has indicated that "Section 1112(b) requires a two-step process in which the court first determines whether there is "cause" to convert or dismiss, and next chooses between conversion and dismissal based on "the best interest of creditors and the estate." *In re Am. Capital Equip.*, LLC, 688 F.3d at 161. This Court should convert the Debtors' chapter 11 cases to chapter 7 cases because, as set forth below, the Committee has met its burden

---

(B)    gross mismanagement of the estate;
(C)    failure to maintain appropriate insurance that poses a risk to the estate or the public;
(D)    unauthorized use of cash collateral substantially harmful to 1 or more creditors;
(E)    failure to comply with an order of the court;
(F)    unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
(G)    failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
(H)    failure to timely provide information or attend meetings reasonably requested by the United States Trustee (or the bankruptcy administrator, if any);
(I)    failure to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
(J)    failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
(K)    failure to pay any fees or charges required under chapter 123 of title 28;
(L)    revocation of an order of confirmation under section 1144;
(M)    inability to effectuate substantial consummation of a confirmed plan;
(N)    material default by the debtor with respect to a confirmed plan;
(O)    termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(P)    failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

*See* 11 U.S.C. §1112(b)(4)(A)-(P).

7128744/

to prove that each of the above cited grounds for conversion exists.  Moreover, the Debtors can offer no evidence to support a specific finding by this Court that "unusual circumstances" exist, such that a prompt conversion would not serve the best interests of the estates.

## B.    THE INABILITY TO EFFECTUATE A PLAN CONSTITUTES CAUSE TO CONVERT THESE CASES

19.    Cause for conversion exists where a party in interest shows that there is an inability to effectuate a plan.  *In re Am. Capital Equip., LLC*, 688 F.3d at 162 n. 10 ("the "inability to effectuate a plan" remains a viable basis for dismissal" post-BAPCPA.); *In re Brown*, 498 B.R. 486, 507 (Bankr. E.D. Pa. 2013) ("Fundamental bankruptcy policy continues to support the proposition that the inability to propose a feasible reorganization or liquidation plan provides "cause" for dismissal or conversion of a chapter 11 case on request of an interested party.").  Inability to effectuate a plan arises when the "debtor lacks the ability to formulate a plan or to carry one out."  *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003) (citation omitted).

20.    As stated by one court:

> [I]f the Chapter 11 case cannot achieve a reorganization within the statutory requirements of the Code, then there is no point in expending estate assets on administrative expenses....**Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired ... The very purpose of [section] 1112(b) is to cut short this plan and confirmation process where it is pointless.... If it becomes reasonably apparent that the debtor cannot obtain the favorable vote of at least one class of impaired claims with respect to any plan that the debtor might reasonably propose, there is no point in incurring the cost of the plan process and cause exists to dismiss or convert the case.**

*DCNC North Carolina I, LLC v. Wachovia Bank, N.A.*, 2009 WL 3209728, * 3-5 (citations omitted) (emphasis added).

7128744/

9

21.     In order to effectuate a consensual liquidating plan, the Debtors would need one impaired, accepting class of creditors to vote in favor of any such plan.    Given that the Noteholders hold secured claims in these cases, creditors junior to the Noteholders (namely, general unsecured creditors) cannot be paid unless either the Noteholders are paid in full (including interest) or the Noteholders consent to impairment.    While the Committee had an in-person meeting with Liberty Lenders and its counsel to discuss an exit strategy for these cases, no settlement appears likely at this time.    Accordingly, if the Debtors seek to pursue a plan in these cases, they will be required to seek approval under the cramdown provisions of section 1129(b) of the Bankruptcy Code.

22.     The Bankruptcy Code sets a high bar for what is required to successfully cram down a plan on secured creditors.    Specifically, with respect to secured creditors, the plan must provide:

> that the holders of such claims **retain the liens** securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; **and**

> that each holder of a claim of such class receive on account of such claim **deferred cash payments totaling at least the allowed amount of such claim**, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property[.]

11 U.S.C. § 1129(b)(2)(A)(i) (emphasis added).    Accordingly, unless the Debtors propose a plan that will pay the Noteholders in full (including interest) or the parties agree on an alternative treatment of the Noteholder class, the Debtors would be required to satisfy section 1129(b)(2)(A)(i), which the Committee understands the Debtors cannot do.

23.     Given that the confirmation of a plan of liquidation in these cases is not reasonably likely, there is no basis for allowing the Debtors to remain in chapter 11 while they

7128744/

continue to incur administrative expenses[6] and potentially pursue a plan strategy which would necessarily be dead on arrival. The Debtors' creditors should not be forced to pay for any long-shot attempts the Debtors may devise.

**C.    CONTINUING LOSSES AND AN ABSENCE OF A REASONABLE LIKELIHOOD OF REHABILITATION ARE SUFFICIENT CAUSE TO CONVERT THESE CASES**

24.    Conversion is warranted where a debtor is "suffering substantial or continuing losses to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b)(4)(A). The inquiry under section 1112(b)(4)(A) is twofold. First, the Court must look at the track record of the Debtors to determine if they are suffering losses or making gains. Then, the Court must examine whether rehabilitation is likely.

25.    With respect to the first prong of the test, "negative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss or diminution of the estate standard for purposes of § 1112(b). *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007); *In re AdBrite Corp.*, 290 B.R. at 215 ("[c]ourts have held that a negative cash flow postpetition and an inability to pay current expenses satisfy the elements of § 1112(b)(1)")[7] (citing *In re Route 202 Corp. t/a Lionti's Villa*, 37 B.R. 367, 374 (Bankr. E.D. Pa. 1984) ("[o]bviously, if the debtor has negative cash flow after entry of the order for relief in the chapter 11 case, the [elements of § 1112(b)(1) are] satisfied"); *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) ("In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow – including that resulting only

---

[6]    Debtors' counsel has billed the estates for fees and expenses totaling approximately $707,000 incurred through April 30, 2014. In addition, as of March 31, 2014, the estates had paid counsel for Liberty Lenders approximately $185,000, although that figure likely does not include fees and expenses incurred from and after March 1, 2014. *See* Monthly Operating Report for Period Ending March 31, 2014, p. 15 (D.I. 213).

[7]    Reference to caselaw which precedes the 2005 amendments to the Bankruptcy Code is equally applicable post-amendment. *See In re Gateway Access Solutions, Inc.*, 374 B.R. at 562.

7128744/

from administrative expenses – effectively comes straight from the pockets of the creditors. This is enough to satisfy the first element of § 1112(b)(1).").

26.     The Debtors' historical monthly operating reports in chapter 11 show that while the Debtors were in operation (i.e., before the sale), the Debtors were cash flow negative. *See* Monthly Operating Report for Period Ending January 31, 2014 (D.I. 88) (showing Debtor Edgenet, Inc. incurred a net loss of $685,000 for the postpetition period); Monthly Operating Report for Period Ending February 28, 2014 (D.I. 159) (showing Debtor Edgenet, Inc. incurred a net loss of $2,186,000 for the postpetition period); Monthly Operating Report for Period Ending March 31, 2014 (D.I. 213) (showing Debtor Edgenet, Inc. incurred a net loss of $1,074,000 for the postpetition period). Consistent with the reality reflected by these reports, the Debtors' cash collateral budget assumed a net loss of approximately $1.7 million during the first 13 weeks of the cases. Now that substantially all of the Debtors' assets have been sold and the Debtors are a mere shell with no operations, the Debtors have no ability to produce cash which exceeds their expenses.     Accordingly, each week the Debtors' cash position deteriorates, decreasing the amount available for creditors.

27.     The Debtors also fail the second prong of the test because they are not seeking to "rehabilitate." *See* Declaration of Juliet Reising in Support of Debtors' Chapter 11 Petitions and First Day Motions, ¶ 10 (describing sale process). "Rehabilitation" does not share the same meaning as "reorganization," as it requires an ability to re-establish the debtor-entity on a firm, sound financial basis. *See In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991) ("[h]owever honest in its efforts the debtor may be, and however sincere its motives, the [court] is not bound to clog its docket with visionary or impractical schemes for resuscitation.") (citation omitted); *Loop Corp. v. U.S. Trustee*, 379 F.3d at 516 ("Because the debtors here intended to liquidate their assets

rather than restore their business operations, they had no reasonable likelihood of rehabilitation."). For example, "visionary schemes that entail risk to creditors without any reasonable probability of success usually warrant prompt conversion to chapter 7." *See* 7 COLLIER ON BANKRUPTCY ¶ 1112.04[5][b]; *see also In re AdBrite Corp.*, 290 B.R. at 215 ("The purpose of [section 1112(b) of the Bankruptcy Code] is 'to prevent the debtor-in-possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation.'"). The inherent requirement of rehabilitation is the establishment of cash flow from which current obligations can be met. *See In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992).

28.     The Debtors have now sold substantially all of their assets and have no further operations. There is no entity for the Debtors to rehabilitate. They are not trying to save jobs or benefit customers, but rather are running a chapter 11 process and incurring professional fees solely for the benefit of Liberty Lenders. The Debtors' remaining shell cannot be rehabilitated, and while these cases remain in chapter 11, professional fees accrue without end in sight. Remaining in chapter 11 will diminish the recovery of non-insider creditors if the Debtors' funds are used to pay professional fees without any reasonable goal that is in the best interests of those non-insider creditors.

29.     While a debtor should be allowed a fair opportunity to reorganize, a debtor's opportunity must be balanced against the protection of creditors' interests and the needs of the chapter 11 system as a whole. *See* 7 COLLIER ON BANKRUPTCY, 1112.04[5][b] (citation omitted). Now that the Debtors' assets have been sold, there is nothing left for the Debtors to achieve in chapter 11 other than the erosion of creditor recoveries. Accordingly, cause exists to convert these cases to cases under chapter 7 of the Bankruptcy Code.

7128744/

**D.    THE BEST INTERESTS OF THE ESTATES ARE SERVED BY IMMEDIATE CONVERSION**

30.    Once a court determines that cause exists to convert a debtor's chapter 11 case to a chapter 7 case, the burden shifts to the objecting party to demonstrate that "unusual circumstances" establishing that concerting or dismissing the case is not in the best interest of creditors and the estate exist warranting a denial of the request, failing which the court must grant the requested relief.    11 U.S.C. §1112(b)(1); *In re Riverbend Community, LLC*, No. 11-11771(KG), 2012 WL 1030340, * 3 (Bankr. D. Del. Mar. 23, 2012) ("The only "but" to the mandatory conversion or dismissal is if a debtor can prove the existence of "unusual circumstances specifically identified by the court" showing that dismissal or conversion is not in the best interests of creditors and the estate.").    Although the phrase "unusual circumstances" is not defined in the Bankruptcy Code, courts agree that the phrase means "conditions that are not common in a chapter 11." *In re Town Dev., LLC*, 404 B.R. 140, 147 (Bankr. M.D. La. 2009); *In re Grasso*, 497 B.R. 448, 455 (Bankr. E.D. Pa. 2013) ("The unusual circumstances should relate to conditions that are not common in Chapter 11 cases that explain why a plan is reasonably likely to be confirmed within a reasonable period of time.").

31.    In addition, the objecting party must establish (a) that there is a reasonable likelihood a plan will be confirmed within the time period provided by law, and (b) that the grounds for conversion or dismissal are reasonably justified acts or omissions of the debtor that are capable of being cured within a reasonable period of time fixed by the court.    11 U.S.C. § 1112(b)(2).

32.    There are no unusual circumstances warranting a denial of the Committee's request to convert these cases.  These Debtors have no post-closing obligations to the buyer.  In fact, these cases are fairly typical for post-sale chapter 11 cases.  Once a sale of substantially all

of a debtor's assets closes, a debtor typically exists in possession solely to wind down the case. If the parties have agreed to an exit strategy, then a debtor's role exists to pursue and effectuate that strategy for the benefit of the estate. Here, however, the parties have not agreed on an exit strategy (and if the Debtors proposed one, the Noteholder class would need to consent), rendering the Debtors' role here purposeless. Thus, as no unusual circumstances exist that can be identified by the Court to establish that conversion is not in the best interests of creditors and the estate, these cases must be converted to cases under chapter 7.

33.    In addition, as discussed above, there is not a reasonable likelihood that a plan will be confirmed within the time periods established in sections 1121(e) and 1129(e) of the Bankruptcy Code. Absent support from the Noteholders, the Debtors will be forced to seek approval of any plan pursuant to the cramdown provisions of the Bankruptcy Code. As stated by one bankruptcy court within the Third Circuit, "it appears that absent support from Madison, any plan dependent upon the Debtor will be confirmed only through the cramdown process provisions of 11 U.S.C. § 1129(b). This dynamic does not support a finding that there is a reasonable likelihood that a plan could be confirmed within a reasonable time." *In re Grasso*, 497 B.R. at 461.

34.    The Committee submits that the Court should use its discretion to convert these cases to chapter 7, rather than to dismiss them. A bankruptcy court "has wide discretion to use its equitable powers to make an appropriate disposition of the case." *In re Am. Capital Equip., LLC*, 688 F.3d at 163. The chapter 7 process will permit an efficient wind down of these estates, and will also permit the preservation of potentially valuable estate causes of action.

7128744/

15

E.    **THE INVESTIGATION DEADLINE SHOULD BE EXTENDED**

35.    In an abundance of caution, if the Court denies this Motion, the Committee seeks an extension of the Investigation Deadline through and including 10 (ten) business days after entry of a final order with respect to this Motion.[8] *See* Bankruptcy Rule 9006(b)(1) (providing for the enlargement of time). Alternatively, if this Court grants the Motion, then the Committee will be disbanded and will not pursue any claims which may exist against the Liberty Entities or otherwise. In that case, the Committee respectfully requests that this Court provide a reasonable period in which the Committee could provide the chapter 7 trustee with the knowledge it has gained through its investigation[9] and the chapter 7 trustee could continue that investigation and, if appropriate, pursue causes of action on behalf of the estates.

## NOTICE

36.    Notice of this Motion has been provided to (i) counsel to the Debtors, (ii) counsel to Liberty; (iii) the U.S. Trustee; (iv) counsel to the Owner's Representative; (v) each creditor on the Debtors' creditor matrix; and (vi) each person or entity that has filed a notice of appearance and request for service of documents herein. In light of the nature of the relief requested, the Committee submits that no other or further notice need be provided.

37.    No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, Applicant hereby respectfully requests that the Court enter an Order: (i) converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (ii)

---

[8]    The Committee submits that Local Rule 9006-2 automatically extends the Investigation Deadline until the Court acts on this Motion, and that a bridge order is not necessary here.

[9]    *See* Proposed Order Granting Motion of the Official Committee of Noteholders for an Order (A) Pursuant to Sections 105(a) and 1112(b) of the Bankruptcy Code Converting These Cases to Cases Under Chapter 7 of the Bankruptcy Code, (B) Extending the Investigation Deadline, and (C) Granting Related Relief, annexed hereto.

7128744/

extending the Investigation Deadline; and (iii) such other and further relief as the Court deems just and proper.

Dated:  June 12, 2014

**MORRIS JAMES LLP**

/s/ Brett D. Fallon
Brett D. Fallon (DE Bar No. 2480)
Jeffrey R. Waxman (DE Bar No. 4159)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone:  (302) 888-6800
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com
Email: jwaxman@morrisjames.com

and

COOLEY LLP
Cathy Hershcopf
Jeffrey L. Cohen
Richelle Kalnit
The Grace Building
1114 Avenue of the Americas
New York, New York 10036-7798
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: chershcopf@cooley.com
Email:  jcohen@cooley.com
Email: rkalnit@cooley.com

*Counsel to the Official Committee of Noteholders*