**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EI WIND DOWN, INC., *et al.*,[1] | ) Case No. 14-10066 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

---

**DEBTORS' MODIFIED AMENDED JOINT PLAN OF LIQUIDATION**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

> **THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  EI Wind Down, Inc. f/k/a Edgenet, Inc. [4977] and EHC Holding Wind Down Corp. f/k/a Edgenet Holding Corporation [4146].

**TABLE OF CONTENTS**

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
AND GOVERNING LAW**........................................................................................**2**
    A.    Defined Terms.................................................................................................2
    B.    Rules of Interpretation..................................................................................10
    C.    Computation of Time....................................................................................~~10~~11
    D.    Governing Law..............................................................................................~~10~~11
    E.    Reference to Monetary Figures......................................................................11
    F.    Controlling Document...................................................................................11

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS**......................................**11**
    A.    Administrative Claims...................................................................................11
    B.    Priority Tax Claims.......................................................................................13
    C.    U.S. Trustee Statutory Fees..........................................................................13

**ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**.........**~~13~~14**
    A.    Summary of Classifications...........................................................................14
    B.    Treatment of Classes of Claims and Interests...............................................14
    C.    Special Provision Governing Unimpaired Claims.........................................16
    D.    Elimination of Vacant Classes......................................................................16
    E.    Voting Classes; Presumed Acceptance by Non-Voting Classes.....................16
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code...........~~16~~17

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN**.................................**~~16~~17**
    A.    Global Plan Settlement..................................................................................~~16~~17
    B.    General Settlement of Claims........................................................................17
    C.    Post-Effective Date Debtors..........................................................................17
    D.    Plan Administrator........................................................................................~~17~~18
    E.    The Plan Administrator Escrow.....................................................................~~19~~20
    F.    Sources of Consideration for Plan Distributions...........................................20
    G.    Cancellation of Securities and Agreements...................................................20
    H.    Corporate Action...........................................................................................~~20~~21
    I.    Effectuating Documents; Further Transactions.............................................21
    J.    Exemption from Certain Taxes and Fees.......................................................21
    K.    Release of Liens............................................................................................21
    L.    Causes of Action.........................................................................**Error! Bookmark not defined.**
    M.    Closing the Chapter 11 Cases........................................................................22

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**..............**~~22~~23**
    A.    Assumption and Assignment of Executory Contracts and Unexpired Leases........~~22~~23
    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases........~~22~~23
    C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases........23
    D.    Purchase Agreement; Assumed Contracts.....................................................~~23~~24
    E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements....24
    F.    Insurance Policies.........................................................................................24
    G.    Indemnification Obligations..........................................................................24
    H.    Reservation of Rights....................................................................................~~24~~25

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS**.....................................**25**
    A.    Calculation of Amounts to Be Distributed....................................................25
    B.    Rights and Powers of the Debtor and the Plan Administrator........................25

i

C. Delivery of Distributions and Undeliverable or Unclaimed Distributions ........................ 2526
D. Compliance with Tax Requirements/Allocations ................................................................ 27
E. Claims Paid or Payable by Third Parties ............................................................................ 27

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS** .......................................................................... **28**
A. Resolution of Disputed Claims .......................................................................................... 28
B. Disallowance of Claims ..................................................................................................... 29
C. Amendments to Claims ....................................................................................................... 29
D. No Interest ........................................................................................................................ 2930

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ..... **2930**
A. Compromise and Settlement of Claims, Interests, and Controversies .............................. 2930
B. Release of Liens ................................................................................................................ 30
C. Subordinated Claims .......................................................................................................... 30
D. Debtor Release .................................................................................................................. 3031
E. Third Party Release ............................................................................................................ 31
F. Seller Noteholder Release .................................................................................................. 31
G. Exculpation ........................................................................................................................ 32
H. Injunction ........................................................................................................................... 32
I. Waiver of Statutory Limitations on Releases .................................................................... 33
J. Setoffs ................................................................................................................................ 33

**ARTICLE IX. SUBSTANTIAL CONSUMMATION OF THE PLAN** .......................................... **3334**
A. Conditions Precedent to Consummation of the Plan .......................................................... 3334
B. Waiver of Conditions ......................................................................................................... 34
C. Effect of Non-Occurrence of Conditions to the Effective Date ......................................... 34

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ............. **3435**
A. Modification and Amendments ........................................................................................... 3435
B. Effect of Confirmation on Modifications ........................................................................... 35
C. Revocation or Withdrawal of the Plan ............................................................................... 35

**ARTICLE XI. RETENTION OF JURISDICTION** .................................................................... **35**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** .................................................................. **37**
A. Immediate Binding Effect .................................................................................................. 37
B. Additional Documents ........................................................................................................ 37
C. Dissolution of Committee ................................................................................................... 3738
D. Reservation of Rights ......................................................................................................... 3738
E. Successors and Assigns ...................................................................................................... 38
F. Service of Documents ......................................................................................................... 38
G. Term of Injunctions or Stays ............................................................................................. 39
H. Entire Agreement ............................................................................................................... 3940
I. Nonseverability of Plan Provisions .................................................................................... 3940
J. Waiver or Estoppel ....................................................................................... 40Error! Bookmark not defined.

**INTRODUCTION**

The Debtors propose the following *Debtors' Modified Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*.  Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan.  The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code section 1129.  Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtors' history, business and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan.  All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entirety before voting to accept or reject the Plan.  Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019 and the provisions of the Plan Support Agreement, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

The Plan is a liquidating plan. Pursuant to prior orders of the Bankruptcy Court, the Debtors have terminated their remaining business operations and have liquidated or are in the process of liquidating their remaining assets.  The Plan provides for the continuation and completion of that liquidation process.  Subject to the rights of certain parties in interest to object to the allowance and/or priority of such claims set forth in the Plan, to the extent not inconsistent with the Term Sheet, the Plan also provides for the payment in full to holders of allowed administrative claims and priority claims.  The Plan further provides for the termination of all Interests in the Debtors, the dissolution and wind-up of the affairs of the Debtors and distributions to certain creditors as further provided herein.  Confirmation of the Plan is contingent upon the satisfaction of all conditions precedent set forth in Article IX.A.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of the Plan.  Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims and Interests to the extent required by Bankruptcy Code section 1125.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

1

## Article I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*Administrative Claims*" means Claims for the costs and expenses of the administration of the Debtors' Estates pursuant to section 503(b) of the Bankruptcy Code, including the Seller Noteholder Professional Fee Claims.  For the avoidance of doubt, Claims asserting priority under section 503(b)(9) of the Bankruptcy Code are included in the definition of Administrative Claims, and, if Allowed, shall be paid in accordance with the Plan, and Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim shall be subject to Bankruptcy Court approval through a motion for substantial contribution under sections 503(b)(3) and (4) of the Bankruptcy Code or a fee application with respect to the Committee's retained professionals.

2.    "*Administrative Claims Objection Bar Date*" means the first Business Day that is 120 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including, without limitation, the Bar Date Order.

3.    "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including, without limitation, the Bar Date Order.

4.    "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

5.    "*Allowed*" means with respect to Claims:  (a) any Claim, proof of which is ~~timely Filed by the applicable Claims Bar Date~~filed (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been ~~timely~~ Filed; or (c) any Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that, with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been ~~timely~~ Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  "Allow" and "Allowing" shall have correlative meanings.

6.    "*Articles of Incorporation*" means the articles of incorporation for EI Wind Down, Inc. and EHC Holding Wind Down Corp.

7.    "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws, which was not conveyed to the Purchaser in connection with the Sale Transaction.

8.    "*Ballot*" means a ballot authorized by the Bankruptcy Court pursuant to the Disclosure Statement Order to indicate acceptance or rejection of the Plan and to opt out of the release provided by Article VIII.E of the Plan.

2

9.        "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as the same may be amended from time to time.

10.        "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Delaware.

11.        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

12.        "*Bar Date Order*" means that certain *Order (A) Establishing Bar Dates for Filing Proofs of Claim, Including Claims Under 11 U.S.C. Section 503(b)(9); (B) Approving the Form and Manner for Filing Proofs of Claims; and (C) Approving Notice Thereof* [Docket No. 203].

13.        "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14.        "*Cash*" means the legal tender of the United States or the equivalent thereof.

15.        "*Cash Sale Proceeds*" means the Sale Proceeds that are Cash, if any.

16.        "*Causes of Action*" means, subject to the releases, exculpations, and injunctions set forth in the Plan, any Claim, cause of action, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including Avoidance Actions.

17.        "*Chapter 11 Cases*" means the jointly administered chapter 11 cases commenced by the Debtors on the Petition Date and styled EI Wind Down, Inc., et al., Case No. 14-10066 (BLS), which are currently pending before the Bankruptcy Court.

18.        "*Claim*" means a "claim" (as defined in section 101(a)(5) of the Bankruptcy Code) against a Debtor.

19.        "*Claims Bar Date*" means the bar date by which a Proof of Claim must be or must have been Filed, as established by (a) a Final Order of the Bankruptcy Court, including, without limitation, the Bar Date Order, or (b) pursuant to the Plan.

20.        "*Claims Objection Bar Date*" means the first Business Day that is 120 days after the Effective Date.

21.        "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

22.        "*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

23.        "*Committee*" means the official committee of note holders appointed in the Chapter 11 Cases pursuant to section 1102(a)(1) of the Bankruptcy Code pursuant to that certain *Notice of Appointment of Committee of Note Holders* filed by the U.S. Trustee on March 13, 2014 [Docket No. 141].

3

24.     "*Committee Members*" means all current and former members of the Committee, including each of the following, in each case solely in their capacity as such:  (a) Timothy D. Choate; (b) Richard C. Pinson; (c) Robert H. Neal; (d) Fred Marxer; and (e) Martin Davis.

25.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

26.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

28.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

29.     "*Consummation*" means the occurrence of the Effective Date.

30.     "*Cure Obligations*" means:  all (a) amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults; and (b) other obligations required to cure any nonmonetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

31.     "*D&O Policies*" means all insurance policies for directors, members, managers, trustees, and officers' liability maintained by the Debtors' Estates as of the Effective Date, including, without limitation:  (a) that certain Policy No. 01-123-18-98, underwritten by Chartis Specialty Insurance Company and (b) that certain Policy No. [#####], underwritten by [Willis North America].

32.     "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.D hereof.

33.     "*Debtors*" means, collectively, each of the following:  (a) EI Wind Down, Inc. f/k/a Edgenet, Inc. and (b) EHC Holding Wind Down Corp. f/k/a Edgenet Holding Corp.

34.     "*DGCL*" shall have the meaning ascribed to it in 4 hereof.

35.     "*Disclosure Statement*" means the *Amended Disclosure Statement for the Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 27, 2014 [Docket No. [____]420], as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

36.     "*Disclosure Statement Order*" means the *Order (4I) Approving the Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation and Notice Procedures With Respect to; (II) Fixing the Voting Record Date; (III) Approving the Notice and Objection Procedures in Respect of Confirmation of the Debtors' Proposed Joint Plan of Liquidation, (CPlan; (IV) Approving Solicitation Packages and Procedures for Distribution Thereof; (V) Approving the FormForms of Various Ballots and Notices In Connection Therewith, (D) Scheduling Certain Dates With Respect Thereto, and (E) Granting Related ReliefBallots and Establishment of Procedures for Voting on the Plan; (VI) Approving the Forms of Notices to Non-Voting Classes Under the Plan; (VII) Fixing the Voting Deadline to Accept or Reject the Plan; and (VIII) Approving Procedures for Vote Tabulations in Connection Therewith*, entered on [____]October 30, 2014 [Docket No. [____]432].

37.     "Disputed" means, with respect to any Claim, any Claim that is not yet Allowed.

38.     "*Distribution Record Date*" means the first Business Day that is two (2) Business Days after the Confirmation Date.

39.     "*Effective Date*" means the date selected by the Debtors which is no later than two (2) Business Days after the date on which:  (a) the Confirmation Date has occurred; (b) no stay of the Confirmation Order is in effect; and (c) all conditions precedent specified in Article IX of the Plan have been satisfied or waived.

40.     "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

41.     "*Equity Interests in Holding*" shall include any share of common stock, preferred stock or other instrument evidencing an ownership interest in Holding, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in Holding that existed immediately prior to the Effective Date.

42.     "*Estate*" means, as to each Debtor, the estate created for such Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code.

43.     "*Exculpated Parties*" means, collectively:  (a) the ~~Released Parties; (b~~Debtors and the officers and directors of the Debtors who served at any time during the course of these Chapter 11 Cases; (b) Liberty and its officers, members and directors who served at any time during the course of these Chapter 11 Cases; (c) the Committee and the Committee Members~~; (c in their capacity as such; (d)~~ the Owners Representative; and (~~d~~c) each of the ~~Committee's and the Owners Representative's~~foregoing's  respective agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case solely in their capacity as such.

44.     "*Exculpation*" means the exculpation provision set forth in Article VIII.G hereof.

45.     "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

46.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Effective Date.

47.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent.

48.     "*Final Cash Collateral Order*" means the *Final Order (A) Authorizing Postpetition Use of Cash Collateral, (B) Granting Adequate Protection to the Adequate Protection Parties, (C) Scheduling a Final Hearing and (D) Granting Related Relief*, entered on February 19, 2014 [Docket No. 83].

49.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended from time to time, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

50.     "*General Unsecured Claim*" means any unsecured Claim other than an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, an Other Priority Claim, the LPL Secured Claim, a Seller Noteholder Claim and a Section 510(b) Claim.

51.     "*Global Plan Settlement*" means the settlement outlined in the Plan Support Agreement by and among the Debtors, Liberty, the Committee, and the Owners Representative.

52.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

53.     "*Holder*" means any Entity holding a Claim or an Interest.

5

54.    "*Holdings*" means EHC Holding Wind Down Corp., a Debtor in the Chapter 11 Cases.

55.    "*Holdings Interests*" means all Interests in Holdings.

56.    "*Impaired*" means, with respect to a Claim or Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

57.    "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place whether in the bylaws, certificates of incorporation or formation, other formation documents, board resolutions, or employment contracts for the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates.

58.    "*Indemnified Parties*" means:  (a) the members of the Debtors' boards of directors or boards of managers, as applicable, as of the Petition Date, as well as any additional directors or members of a board of managers, if any, appointed from the Petition Date through the Effective Date; (b) the Debtors' officers as of the Petition Date, as well as any additional officers (if any) appointed from the Petition Date through the Effective Date; and (c) the Debtors' employees, attorneys, accountants, investment bankers, financial and other advisors.

59.    "*Initial Distribution Date*" means the date on which the Debtors make initial distributions to Holders of Allowed Claims pursuant to the Plan.

60.    "*Interest*" means any interest, equity, or share in the Debtors, including all options, warrants, or other rights to obtain such an interest or share in such Debtor, whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising therefrom.

61.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

62.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

63.    "*Liberty*" shall mean LPL and its affiliates, including Liberty Partners Holdings 44, L.L.C., and Liberty Partners, L.P.

64.    "*Liberty Contribution*" means cash in the amount of $1,340,000 to be contributed by LPL, via a reduction in its Secured Claim, on the Effective Date to fund the recovery of the Seller Noteholder Claims and the Seller Noteholder Professional Fee Claims, subject to Bankruptcy Court Approval.

65.    "*Liberty Paydown Motion*" means the "Debtors' Motion for Entry of an Order Authorizing and Directing the Debtors to Make Payment from Sale Proceeds to Liberty Partners Lenders, L.L.C. and to Enter into Plan Support Agreement" [Docket No. 376].

66.    "*Liberty Paydown Order*" means the "Order Granting the Debtors' Motion for Entry of an Order Authorizing and Directing the Debtors to Make Payment from Sale Proceeds to Liberty Partners Lenders, L.L.C. and to Enter into Plan Support Agreement", entered on September 29, 2014 [Docket No. 398], authorizing the Debtors to distribute to LPL $5 million in Cash other than Cash Sale Proceeds.

67.    "*LPL*" means Liberty Partners Lenders, L.L.C.

68.    "*Local Bankruptcy Rules*" means the local rules of bankruptcy practice and procedure of the United States Bankruptcy Court for the District of Delaware.

69.    "*Notice and Claims Agent*" means Phase Eleven Consultants LLC, in its capacity as notice and claims agent and administrative advisor for the Debtors' Estates pursuant to 28 U.S.C. § 156(c).

70.     "*Other Priority Claim*" means a Claim asserting a priority described in section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; (b) a Professional Fee Claim; and (c) a Priority Tax Claim.

71.     "*Owners Representative*" means Ernest Wu in his capacity as the Owners Representative pursuant to the Acquisition Agreement and Plan of Merger among Edgenet Holding Corporation, Edgenet Acquisition Corp., Edgenet, Inc. and Certain Owners of Edgenet, Inc. dated as of August 31, 2004.

72.     "*Owners Representative Professionals*" means (i) Cross & Simon, LLC and (ii) Bone McAllester Norton PLLC.

73.     "*Owners Representative Reimbursement Claim*" means the claim for reimbursement of legal fees and expenses incurred by the Owners Representative, in his capacity as such, in connection with these Chapter 11 Cases.

74.     "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

75.     "*Petition Date*" means January 14, 2014, the date on which the Debtors commenced the Chapter 11 Cases.

76.     "*Plan*" means this *Debtors' Modified Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time.

77.     "*Plan Administrator*" means Juliet Reising, solely in her capacity as such.

78.     "*Plan Administrator Escrow*" means one or more interest-bearing escrow accounts to be funded by the Debtors with Cash on the Effective Date in an amount equal to the Plan Administrator Escrow Amount and used to fund the reasonable and documented fees and expenses of the Plan Administrator.

79.     "*Plan Administrator Escrow Amount*" means $55,600 in Cash used to fund the Plan Administrator Escrow.

80.     "*Plan Support Agreement*" means the agreement entered into by and between the Debtors, LPL, the Committee, and the Owners Representative, dated September 11, 2014, and the Plan Term Sheet attached as Exhibit A to the Plan Support Agreement.

81.     "*Post-Effective Date Debtor*" means the Debtors, on and after the Effective Date.

82.     "*Post-Effective Date Debtor Assets*" means: (a) the Professional Fee Escrow; (b) the Priority Claims Reserve; (c) the Plan Administrator Escrow; (d) the D&O Policies; (e) the LLC Agreement; (f) the Post-Effective Date Debtor Causes of Action; and (g) the Debtors' rights under the Purchase Agreement, including all rights of recovery under the Purchase Agreement and any ancillary agreements among the Debtors and the Purchaser; provided, however, that notwithstanding anything herein to the contrary, Post-Effective Date Assets shall not include the Liberty Contribution.

83.     "*Post-Effective Date Debtor Causes of Action*" means the Causes of Action that are not waived, relinquished, exculpated, released, compromised, or settled under the Plan; provided, however, that notwithstanding anything herein to the contrary, Post-Effective Date Causes of Action shall not include the Wu Adversary Proceeding.

84.     "*Post-Effective Date Debtor Distribution*" means distribution of the Post-Effective Date Debtor Assets on the Effective Date in accordance with Article IV.C hereof.

85.     "*Priority Claims*" means, collectively:  (a) Priority Tax Claims; and (b) Other Priority Claims.

7

86.     "*Priority Claims Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Priority Claims Reserve Amount pursuant to Article IV.D.2 hereof.

87.     "*Priority Claims Reserve Amount*" means Cash in an amount of $100,000.00 to be funded by the Debtors and used by the Plan Administrator for the payment of Priority Tax Claims and Other Priority Claims Allowed after the Effective Date to the extent that such Claims have not been paid in full on or before the Effective Date.

88.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

89.     "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

90.     "*Professional*" means any entity retained in the Chapter 11 Cases in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 326, 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

91.     "*Professional Fee Claims*" mean all Claims for accrued fees and expenses (including success fees) for services rendered and expenses incurred by a Professional from the Petition Date through and including the Effective Date to the extent such fees and expenses have not been paid or are not disallowed pursuant to an order of the Bankruptcy Court and regardless of whether a fee application has been filed for such fees and expenses.  For the avoidance of doubt, Professional Fee Claims include the Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim, provided, however, unless expressly stated otherwise, the Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim shall require Bankruptcy Court approval under sections 503(b)(3) and (4) of the Bankruptcy Code or a fee application with respect to the Committee's retained professionals.

92.     "*Professional Fees Claims Estimate*" means the amount of Professional Fee Claims that are estimated by each applicable Professional in good faith to be accrued but unpaid as of the Effective Date; provided, however, that Seller Noteholder Professionals and the Owners Representative Professionals shall not provide such an estimate.

93.     "*Professional Fee Escrow*" means one or more interest-bearing escrow accounts to be funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Claims Estimate.  For avoidance of doubt, the Professional Fee Escrow will not include funds to pay any Seller Noteholder Professional Fees or the Owners Representative Reimbursement Claim.

94.     "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

95.     "*Purchase Agreement*" means that certain Asset Purchase Agreement by and among Edgenet, Inc., Edgenet Holding Corporation, and the Purchaser, dated as of June 6, 2014.

96.     "*Purchaser*" means EdgeAQ, LLC together with its successors and permitted assigns.

97.     "*Released Parties*" means:  (a) each Debtor; (b) the Debtors' current and former officers, directors, and managers; (c) the Plan Administrator; (d) each Entity that holds Holdings Interests, and each such Entity's affiliated funds and any Entity that has a direct or indirect interest in any of the foregoing Entities; (e) Liberty; (f) the Committee; and (g) each of the foregoing Entities' respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such; provided that, as a condition to receiving or enforcing any release granted

8

pursuant to Article VIII.D or Article VIII.E hereof, each Released Party and its Affiliates shall release or be deemed to have released the Releasing Parties, the Estates, and the Debtors for any and all Claims or Causes of Action arising from or related to their relationship with the Debtors, but not, for the avoidance of doubt, Professional Fee Claims. For the avoidance of doubt, and notwithstanding anything herein to the contrary, in no event shall an Entity that checks the box on the Ballot and returns such Ballot in accordance with the Disclosure Statement Order to opt out of the third party release provided in Article VIII.E hereof be a Released Party. Notwithstanding anything herein to the contrary, "Released Parties" shall not include the Florida State Board of Administration and its affiliated funds

98.     "*Releasing Parties*" means: (a) the Released Parties; (b) with respect to any other Entities, Holders of Claims, other than Holders of Seller Noteholder Claims, who vote to accept the Plan that do not affirmatively opt out of the third party release provided by Article VIII.E hereof pursuant to a duly executed Ballot; and (c) with respect to each of the foregoing Entities, their respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such; provided that, notwithstanding anything contained herein to the contrary, in no event shall an Entity that checks the box on the Ballot and returns such Ballot in accordance with the Disclosure Statement Order to opt out of the third party release provided in Article VIII.E hereof be a Releasing Party.

99.     "*Sale Proceeds*" means all proceeds from the Sale Transaction, including the Cash Sale Proceeds from the Sale Transaction and the right to enforce the Purchase Agreement.

100.     "*Sale Transaction*" means that certain transaction between the Debtors and the Purchaser as set forth in the Purchase Agreement.

101.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

102.     "*Section 510(b) Claims*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

103.     "*Secured Claim*" means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan or a Final Order as a Secured Claim.

104.     "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

105.     "*Seller Notes*" means the Subordinated Promissory Notes issued to the selling shareholders of Edgenet, Inc.

106.     "*Seller Noteholders*" means the holders of the Subordinated Promissory Notes

107.     "*Seller Noteholder Claims*" means all Claims held by the Seller Noteholders on account of the Seller Notes.

108.     "*Seller Noteholder Professionals*" means (i) Cooley LLP and (ii) Morris James LLP.

109.     "*Seller Noteholder Professional Fee Claims*" means the Allowed Administrative Claims of the Seller Noteholder Professionals for fees and expenses incurred in connection with these Chapter 11 Cases.

9

110.    "*Seller Noteholder Release*" means the release given on behalf of the Seller Noteholders, including the Owners Representative, to the Released Parties as set forth in Article VIII.F hereof.

111.    "*Solicitation Procedures*" means that form of solicitation procedures approved by and attached as an exhibit to the Disclosure Statement Order.

112.    "*Subsequent Distribution Date*" means the date on which the Plan Administrator, in their reasonable discretion, elects to make distributions to Holders of Allowed Claims pursuant to the Plan.

113.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

114.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

115.    "*United States*" means the United States of America and its agencies.

116.    "*U.S. Trustee*" means the United States Trustee for the District of Delaware.

117.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

118.    "*Wind Down*" means the wind down and dissolution of the Debtors' Estates following the Effective Date as set forth in 4 hereof.

119.    "*Wu Adversary Proceeding*" means the adversary proceeding initiated by the Debtors against Ernest Han-Ping Wu as the Owners Representative on February 10, 2014, docketed as Adversary Number 14-50046.

*B.*    *Rules of Interpretation*

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference in the Plan to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented from time to time; (4) unless otherwise specified, all references in the Plan to "Articles" are references to Articles hereof or hereto; (5) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined in Article I of this Plan or any exhibit hereto but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; and (11) any immaterial effectuating provisions may be interpreted by the Debtors or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.      *Computation of Time*

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or Allowed in the Plan.

D.      *Governing Law*

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflict of laws principles.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States, unless otherwise expressly provided in the Plan.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

**Article II.**

**ADMINISTRATIVE AND PRIORITY CLAIMS**

A.      *Administrative Claims*

Subject to the provisions of sections 327, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed Administrative Claim and, as applicable, the Debtors or the Plan Administrator agree to less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Plan Administrator shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash from the Liberty Contribution through a dollar-for-dollar reduction of LPL's Secured Claim, as applicable: (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (iii) at such later time as may be agreed upon by such Holder and the Debtors or the Plan Administrator, as applicable; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court.  For the avoidance of doubt, Administrative Claims include all Professional Fee Claims. Furthermore, notwithstanding anything herein to the contrary, the Plan's treatment of Administrative Claims shall not affect payment of the Professional Fee Claims in accordance with paragraphs 12(c) and 20 of the Final Cash Collateral Order.

On the Effective Date, the Debtors shall transfer an amount totaling the Liberty Contribution in immediately available funds by wire transfer to a segregated account to be held by Cooley LLP, which funds shall be used to pay the Seller Noteholder Professionals and the Owners Representative Reimbursement Claim (subject to Bankruptcy Court approval in amounts as identified below) and the Allowed Seller Noteholder Claims on a pro rata basis.  The only Administrative  Claims that shall be paid from the Liberty Contribution shall be the Allowed Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim (to the extent that it may be characterized as an Administrative Claim), all of which are subject to Bankruptcy Court approval, and include the following:

- On account of fees and expenses incurred in connection with representing the Committee through and including the Effective Date, Cooley LLP and Morris James

11

LLP will collectively be paid $260,000, to be split pro rata between the two firms based on the total accrued fees for each firm as of the Effective Date. As of September 30, 2014, Cooley LLP has accrued approximately $340,000 in fees and expenses, and Morris James LLP has accrued approximately $135,000 in fees and expenses. Fees and expenses continue to accrue after September 30, 2014.

- Separate and apart from the payment identified immediately above, Seller Noteholders Davis Carr, Timothy Choate and Fred Marxer will collectively be reimbursed a total of $39,139.67 ($13,046.55 to each of Messrs. Choate and Marxer and $13,046.57 to Mr. Carr), which represents amounts such Seller Noteholders paid to Morris James LLP on account of fees and expenses incurred in connection with efforts to appoint the Committee.

- After payment of the amounts indicated above, Cooley LLP will transfer the remaining funds to the Owners Representative or his designee to make the following distributions. The Owners Representative will be reimbursed a total of $225,000 on account of the Owners Representative Reimbursement Claim, which represents amounts paid by the Owners Representative, Timothy Choate, Albert Wu, Karen Wu, James Wu, Robert Neal and James Robert Hendrick to Cross & Simon, LLC and Bone McAllester Norton PLLC. As of September 30, 2014, the Owners Representative had accrued approximately $135,000 on account of fees and expenses of Cross & Simon, LLC and has accrued approximately $100,000 on account of fees and expenses Bone McAllester Norton PLLC. Fees and expenses continue to accrue after September 30, 2014.

Accordingly, from the Liberty Contribution, a total of $~~525,000~~524,139.67 will be paid to the Seller Noteholder Professionals on account of Seller Noteholder Professional Fees ~~and~~or reimbursed to the Owners Representative and certain individual Seller Noteholders, including Timothy Choate, Fred Marxer and Davis Carr (subject to Bankruptcy Court approval)~~,~~ in full and final satisfaction of all Professional Fees accrued ~~by the Seller Noteholder Professionals and~~or paid in these Chapter 11 Cases by or for the Committee, the Owners Representative ~~for or on behalf of the Seller Noteholders or the Owners Representative, respectively, in these Chapter 11 Cases, leaving $815,000~~, and Timothy Choate, Fred Marxer and Davis Carr leaving $815,860.33 to be paid on account of Seller Noteholder Claims. Assuming that Allowed Seller Noteholder Claims collectively aggregate $18,401,287.65, the Plan provides for a recovery of approximately 4.4% on account of the Allowed Seller Noteholder Claims. A summary of the anticipated distribution to each Seller Noteholder is set forth on Exhibit C to the Disclosure Statement.

The Allowed Administrative Claims and Allowed Professional Fee Claims of entities other than the Seller Noteholders and the Owners Representative Reimbursement Claim, shall be funded by a dollar-for-dollar reduction of LPL's Secured Claim and shall not reduce the Liberty Contribution.

1.    Administrative Claims Bar Date

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order) or as provided by this Article II hereof, unless previously Filed, requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date ~~shall~~may be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Plan Administrator, or the Post-Effective Date Debtor Assets, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date or by such earlier deadline as may be established for a particular application. Except with respect to Allowed Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim, under no circumstances shall Holders of Administrative Claims receive payment from the Liberty Contribution.

12

2.      Professional Fee Escrow

If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow. The Debtors shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate. For the avoidance of doubt, the Professional Fee Claims Estimate shall include estimates for the fees of professionals hired by the Plan Administrator and the Professional Fee Escrow shall be sufficient to include amounts for the payment of fees to those professionals hired by the Plan Administrator. For the further avoidance of doubt, the Professional Fees Claims Estimate shall not be deemed to limit the amount of fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court and such Professional Fee Escrow will not be paid from the Liberty Contribution. If a Professional does not provide a Professional Fee Claims Estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. Except as provided in the Plan, the Professional Fee Escrow shall be funded on the Effective Date and maintained in trust by the Plan Administrator for the Professionals and shall not be considered property of the Debtors' Estates. When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow, if any, shall be transferred to LPL and shall be distributed in accordance with the Plan as partial payment of the LPL Secured Claim.

To the extent that funds held in the Professional Fee Escrow are unable to satisfy the amount of Allowed Professional Fee Claims owing to the Professionals after application of funds held in the Professional Fee Escrow, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which Allowed Administrative Claim shall be satisfied in accordance with the Plan.

Notwithstanding anything herein to the contrary, this Article II.A.2 shall not apply to Seller Noteholder Professionals or the Owners Representative Professionals.

3.      Final Fee Applications

All final requests for payment of Professional Fee Claims, not including the Owners Representative Reimbursement Claim, shall be Filed no later than the first Business Day that is 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed Professional Fee Claims shall be determined by the Bankruptcy Court. Subject to Article II.A hereof, Allowed Professional Fee Claims shall be paid in Cash, or as otherwise provided herein, after such Claims are Allowed by an order of the Bankruptcy Court, which order is not subject to a stay. For the avoidance of doubt, the Owners Representative Professionals will not file a Final Fee Application. All Professional Fees owed to the Owners Representative Professionals will be paid from the Liberty Contribution on the Effective Date as described in Article II.A.

B.      Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim and, as applicable, the Debtors or the Plan Administrator agree to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, and release of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code and paid the full unpaid amount of such Allowed Priority Tax Claim in Cash, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed Priority Tax Claim becomes Allowed; and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law. For the avoidance of doubt, payment of Allowed Priority Tax Claims shall not reduce the Liberty Contribution, but rather LPL's Secured Claim shall be reduced on a dollar-for-dollar basis on account of Allowed Priority Tax Claims. Further, any Claims asserted by a governmental unit not entitled to priority under the Bankruptcy Code shall not be Priority Tax Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

13

*C.      U.S. Trustee Statutory Fees*

~~The Debtors or~~All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Plan Administrator~~, as applicable, shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first~~ shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each of the Debtors shall remain obligated to pay quarterly fees to the office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  For avoidance of doubt, payment of the U.S. Trustee Fees shall not reduce the Liberty Contribution, but rather shall reduce LPL's Secured Claim on a dollar-for-dollar basis.

## Article III.

### CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article III.

*A.      Summary of Classifications*

All Claims and Interests, other than Administrative Claims and Priority Tax Claims are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  The Debtors reserve the right to withdraw the Plan with respect to one or both Debtors while seeking Confirmation or approval of the Plan with respect to the other Debtor, subject to the Plan Support Agreement.

The Plan constitutes a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  To the extent there are no Holders of Claims or Interests in a particular Class or Classes, such Claims or Interests shall be treated as set forth in Article III.D. hereof.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | LPL's Secured Claim | Impaired | Entitled to Vote |
| 3 | Seller Noteholder Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Equity Interests in the Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |

14

B.       *Treatment of Classes of Claims and Interests*

Except to the extent that the Debtors and a Holder of an Allowed Claim or Interest, as applicable, agree to a less favorable treatment, such Holder shall receive under the Plan the treatment described below ~~in full and final satisfaction, settlement, and release of and in exchange for such Holder's Allowed Claim or Interest~~.  Unless otherwise indicated, each Holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.    Class 1—Other Priority Claims

(a)    *Classification*:  Class 1 consists of any Other Priority Claims against any Debtor.

(b)    *Treatment*:  Each Holder of an Allowed Class 1 Claim shall be paid in full, in Cash on account of such Allowed Class 1 Claim.

(c)    *Voting*:  Class 1 is Unimpaired.  Holders of Allowed Class 1 Claims are presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2—LPL's Secured Claim

(a)    *Classification*:  Class 2 consists of LPL's Secured Claim.

(b)    *Treatment*:  LPL shall receive all Cash in the Debtors' estates less the Liberty Contribution and amounts used to fund the Plan Administrator Escrow, the Priority Claims Reserve and the Professional Fee Escrow.  For the avoidance of doubt, LPL's Secured Claim shall be reduced, on a dollar-for-dollar basis, by payment of (a) all Allowed Administrative Claims (other than the Allowed Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim); (b) all Allowed Professional Fee Claims in accordance with paragraphs 12(c) and 20 of the Final Cash Collateral Order (other than the Allowed Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim); (c) Priority Tax Claims; (d) Other Priority Claims; and (e) U.S. Trustee Fees.  For further avoidance of doubt, LPL shall receive all Cash remaining in the Priority Claims Reserve, the Professional Fee Escrow and the Plan Administrator Escrow after payment of all obligations in full required to be paid from same.

(c)    *Voting*:  Class 2 is Impaired.  As such, LPL is entitled to vote to accept or reject the Plan.

3.    Class 3—Seller Noteholder Claims

(a)    *Classification*:  Class 3 consists of the Seller Noteholder Claims.

(b)    *Treatment*:  Each Holder of an Allowed Class 3 Claim shall receive a *pro rata* share, based on the total amount by value of Allowed Seller Noteholder Claims, of the remainder of the Liberty Contribution after holdback for payment of the Allowed Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim (as allowed by the Bankruptcy Court and in such amounts as agreed among such entities, the Committee and the Owners Representative as described in Article II.A. hereof).

(c)    *Voting*:  Class 3 is Impaired.  Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

15

4.  Class 4—General Unsecured Claims

    (a)    *Classification*:  Class 4 consists of all General Unsecured Claims against any Debtor.

    (b)    *Treatment*:  Each Holder of an Allowed Class 4 Claim shall receive no distribution under the Plan.  For the avoidance of doubt, holders of General Unsecured Claims shall not be entitled to be paid from the Liberty Contribution.

    (c)    (c)    *Voting*:  Class 4 is Impaired.  Holders of Claims in Class 4 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

5.  Class 5—Section 510(b) Claims

    (a)    *Classification*:  Class 5 consists of all Section 510(b) Claims.

    (b)    *Treatment*:  Each Holder of an Allowed Class 5 Claim shall receive no distribution under the Plan. For the avoidance of doubt, Holders of Section 510(b) Claims shall not be entitled to be paid from the Liberty Contribution.

    (c)    *Voting*:  Class 5 is Impaired.  Holders of Claims in Class 5 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

6.  Class 6—Equity Interests in the Debtors

    (a)    *Classification*:  Class 6 consists of all holders of equity interests in the Debtors.

    (b)    *Treatment*:  Each Holder of an Allowed Class 6 Interests shall receive no distribution under the Plan.  For the avoidance of doubt, Holders of Allowed Class 6 Interests shall not be entitled to be paid from the Liberty Contribution.  Equity interests in the Debtors shall be discharged, cancelled, released, and extinguished as of the Effective Date.

    (c)    *Voting*:  Class 6 is Impaired.  Holders of Interests in Class 6 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

C.    C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Plan Administrator, the Debtors, or the Debtors' Estates in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

F.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**Article IV.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *Global Plan Settlement*

This Plan is predicated upon the Global Plan Settlement entered into among the Debtors, Liberty, the Committee, and the Owners Representative as set forth in this Plan.  In accordance with the Global Plan Settlement, and in exchange for the Seller Noteholders' support of the Plan, including the Seller Noteholder Release, LPL will contribute, on the Effective Date, the Liberty Contribution, which after holdback for payment of the Allowed Seller Noteholder Professional Fee Claims and the Owners Representative Reimbursement Claim, is to be distributed to the Seller Noteholders in accordance with Article III.B hereof and in full and final satisfaction, settlement, and release, and discharge of the Seller Noteholder Claims.  In addition, on the Effective Date, the Debtors will dismiss, with prejudice, the Wu Adversary Proceeding.

On account of its Secured Claim, LPL has received (a) $5 million in Cash other than Cash Sale Proceeds from the sale of the Debtors' Assets, following entry of the Liberty Paydown Order, and will receive (b) all Cash remaining in the Debtors' estate, plus including the Cash Sale Proceeds, less the Liberty Contribution and amounts used to fund the Plan Administrator Escrow, the Priority Claims Reserve and the Professional Fee Escrow.  For the avoidance of doubt, LPL shall receive all Cash remaining the Priority Claims Reserve, the Professional Fee Escrow and the Plan Administrator Escrow after payment of all obligations in full required to be paid from the same.

The Plan and Disclosure Statement, jointly, and all exhibits attached thereto, shall serve as, and shall be deemed to be, a motion for entry of an order under Bankruptcy Rule 9019 approving the Global Plan Settlement.  Objections to the Global Plan Settlement must be filed and served on or before the Confirmation Objection Deadline, or such later date as may be established  by the Bankruptcy Court; provided, however, pursuant to the terms of the Plan Support Agreement, if any party thereto objects to the Global Plan Settlement, such shall be a default thereunder.  If any objections are timely filed and served, a hearing with respect to the Global Plan Settlement and the objections thereto shall be held at the Confirmation Hearing.

B.      B.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.  Without limiting the generality of the foregoing, the distributions to the Seller Noteholders are solely on account of the compromise and settlement of the dispute over the perfection and validity of the Owners Representative's liens purportedly securing the Seller Notes, including the releases from the Seller Noteholders to Liberty as part thereof.

C.      *Post-Effective Date Debtors*

From and after the Effective Date, the Post-Effective Date Debtor shall continue in existence for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously and efficaciously as reasonably possible, (2) paying remaining Allowed Priority Claims, as well as Claims authorized to be paid under the Plan, including, but not limited to Allowed Professional Fee Claims, (3) paying the Liberty Contribution to a segregated account to be held at Cooley LLP on the Effective Date; (4) enforcing and prosecuting claims, interests, rights, and privileges

17

under the Post-Effective Date Debtor Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (4) holding the D&O Policies and the Articles of Incorporation, (5) filing appropriate tax returns, and (6) administering the Plan in an efficacious manner.

On the Effective Date, the Post-Effective Date Debtor Assets shall vest in the Post-Effective Date Debtor for the purpose of liquidating the Estates and Consummating the Plan. The Post-Effective Date Debtor Assets shall be held free and clear of all liens, claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. Any distributions to be made under the Plan from the Post-Effective Date Debtor Assets shall be made by the Plan Administrator. Any actions to be taken by the Post-Effective Debtor shall be taken by the Plan Administrator. Notwithstanding anything herein to the contrary, the Post-Effective Date Debtor and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order. Once all of the Post-Effective Date Debtors' assets have been administered, the ~~Debtors are entitled~~ Plan Administrator shall file all papers necessary to dissolve~~, and shall dissolve~~ the Debtors.

D.    *Plan Administrator*

The Plan Administrator shall act for the Post-Effective Date Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as officers and directors of the Debtors shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole director and sole officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtors' directors and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtor.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Post-Effective Date Debtor Assets and wind down the businesses and affairs of the Debtors and the Post-Effective Date Debtor, including: (1) liquidating the Post-Effective Date Debtor Assets or using the same to satisfy appropriate obligations therefrom; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Post-Effective Date Debtor Assets; (3) making distributions from the Post-Effective Date Debtor Assets as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Post-Effective Date Debtor; (5) employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees and expenses of the Post-Effective Date Debtor, without any further order of the Bankruptcy Court; (7) administering and paying taxes of the Post-Effective Date Debtor, including filing tax returns and paying all applicable taxes; (8) representing the interests of the Post-Effective Date Debtor or the Estates before any taxing authority in all matters, including any action, suit, proceeding or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

1.    Tax Returns

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Cases, as determined under applicable tax laws.

2.    Priority Claims Reserve

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall fund, and the Plan Administrator shall establish and thereafter maintain, the Priority Claims Reserve with the  Priority Claims Reserve Amount in an authorized depository (as set forth in the guidelines for the office of the United States Trustee in force at such time in the District of Delaware), which funds shall vest in the Post-Effective Date Debtor free and clear of all liens, Claims, encumbrances, charges, and other interests, except as otherwise specifically provided in the Plan or

18

in the Confirmation Order.  Funds in the Priority Claims Reserve shall be used by the Plan Administrator only for the payment of Priority Claims Allowed after the Effective Date to the extent that such Priority Claims have not been paid in full on or prior to the Effective Date.  To the extent any funds remain in the Priority Claims Reserve after all of such Priority Claims have been Allowed and paid or otherwise satisfied in full, such remaining funds shall be distributed by the Plan Administrator to LPL in accordance with the Plan.  Notwithstanding anything to the contrary herein, neither the Plan Administrator, the Post-Effective Date Debtor, nor any other party in interest shall be obligated to fund the Priority Claims Reserve in excess of the amount approved by the Bankruptcy Court under the Confirmation Order—i.e., the Priority Claims Reserve Amount.

    3.    D&O Policies

Notwithstanding anything to the contrary contained herein or in the Confirmation Order, Confirmation of the Plan shall not impair or otherwise modify any obligations arising under the D&O Policies or any D&O coverages.  In addition, after the Effective Date, the Plan Administrator shall not terminate or otherwise reduce D&O coverages or the coverage under any D&O Policy, including, without limitation, any "tail policy," in effect as of the Petition Date, and all directors, managers, and officers of the Debtors who served in such capacity as of the Petition Date at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

    4.    Wind Down

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as reasonably practicable after the Effective Date, except with respect to the Post-Effective Date Debtor as set forth herein, the Plan Administrator shall:  (1) file for each of the Debtors a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable), including, but not limited to, any actions contemplated in sections 275–283 of the General Corporation Law of the State of Delaware (the "***DGCL***"); and (2) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan (for purposes of clause (2) of the preceding sentence, the Plan shall constitute a plan of distribution as contemplated in the DGCL).  The certificate of dissolution or equivalent document may be executed by the Plan Administrator without the need for any action or approval by the equity holders or boards of directors or managers of any Debtor and from and after the Effective Date, except with respect to the Post-Effective Date Debtor as set forth herein, the Debtors for all purposes shall be deemed to have:  (1) withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations; (2) shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal; (3) shall be deemed to have cancelled pursuant to the Plan all Interests; (4) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date; and (5) for the avoidance of doubt, except with respect to the Post-Effective Date Debtor as set forth herein, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

    5.    ~~Exculpation;~~ Indemnification; Insurance

The Plan Administrator, all professionals retained by the Plan Administrator, and representatives of each of the foregoing shall be deemed ~~exculpated and~~ indemnified by the Post Effective Date Debtor as well as any insurance policy purchased for same, in all respects, except for any acts of gross negligence or willful misconduct. The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtor, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Plan Administrator.

19

The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon, any statement, instrument, opinion, report, notice, request, consent, order or other instrument or document that it believes to be genuine and to have been signed or presented by the proper party.  The Plan Administrator may rely upon written information previously generated by the Debtors or the Post-Effective Date Debtor.

      6.    Dissolution of the Post-Effective Date Debtor

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and, but before the entry of a final decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtor shall be deemed to be dissolved without any further action by the Post-Effective Date Debtor, or the Plan Administrator, including the filing of any documents with the secretary of state for the state in which the Post-Effective Date Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtor in and withdraw the Post-Effective Date Debtor from applicable state(s).

*E.*        *E.*        *The Plan Administrator Escrow*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall fund, and the Plan Administrator shall establish and thereafter maintain, the Plan Administrator Escrow with the Plan Administrator Escrow Amount in an authorized depository as approved by the guidelines for the Office of the United States Trustee then in effect for the District of Delaware, which funds shall vest in the Post-Effective Date Debtor free and clear of all liens, Claims, encumbrances, charges, and other interests, except as otherwise specifically provided in the Plan or in the Confirmation Order.  Funds in the Plan Administrator Escrow shall be used by the Plan Administrator for the payment reasonable and documented fees and expenses of the Plan Administrator.  For the avoidance of doubt, the Plan Administrator Escrow shall not reduce the Liberty Contribution.  To the extent any funds remain in the Plan Administrator Escrow after the dissolution of the Post-Effective Date Debtor and the payment or otherwise satisfaction in full of all reasonable and documented fees and expenses of the Plan Administrator, such remaining funds shall be distributed by the Plan Administrator to LPL for the benefit of LPL in accordance with the Plan.

*F.*      *Sources of Consideration for Plan Distributions*

Subject to and only to the extent provided in the Global Plan Settlement, all Cash necessary for the Debtors and/or the Plan Administrator to make payments of Cash pursuant to the Plan shall be obtained from the following sources: (a) the Debtors' Cash on hand as of the Effective Date, including the Sale Proceeds, (b) the Liberty Contribution, and (c) reductions in LPL's Secured Claim, each of which shall be used to fund the distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims provided herein.

*G.*        *G.*        *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled as to the Debtors; and (2) the obligations of the Debtors pursuant, relating, or pertaining to and nullified; and (2) any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised cancelled and nullified; provided that, notwithstanding Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing such Holders to receive distributions under the Plan as provided herein.

*H.*        *H.*        *Corporate Action*

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan

Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

Upon the Effective Date or as soon as reasonably practicable thereafter, the existing boards of directors and managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members and any all remaining officers or directors of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the shareholders of such Debtor, or the officers and directors of such Debtor.  The directors, managers, and officers of the Debtors and the Plan Administrator, as applicable, shall be authorized to execute, deliver, File, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate in their sole discretion to implement the provisions of this Article IV.H.

The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under applicable nonbankruptcy law.

I.    *Effectuating Documents; Further Transactions*

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Plan Administrator is, authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

J.    *Exemption from Certain Taxes and Fees*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

K.    *Release of Liens*

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estates shall be released; provided, however, that any Liens held by LPL shall not be released unless and until LPL receives its distribution under the Plan.

L.    *Causes of Action*

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled under the Plan or any Final Order (including, for the avoidance of doubt, any claims or Causes of Action released pursuant to Article VIII.D hereof), the Debtors reserve and, as of the Effective Date, assign to the Post-Effective Date Debtor the Post-Effective Date Debtor Causes of Action, respectively.  On and after the Effective Date, the Plan Administrator may pursue the Post-Effective Date Debtor Causes of Action on behalf of and for the benefit of their respective beneficiaries.

21

While the Plan Administrator is empowered to assert Post-Effective Date Debtor Causes of Action on behalf of the Post-Effective Date Debtor, it is not anticipated that any such claims or Causes of Action will be asserted, as it is believed that none exist which would enhance the Post-Effective Date Debtor's estate. To the extent that any Post-Effective Date Debtor Causes of Action is asserted under chapter 5 of the Bankruptcy Code, any recoveries, net of the payment of sums on account of any professional fees incurred in prosecuting such claims or Causes of Action will be paid to Holders of Allowed Class 4 Claims, in accordance with the Plan, but, again it is not anticipated that any such claims or Causes of Action exist or will be asserted. To the extent any non-Chapter 5 Post Effective Date Debtor Causes of Action are asserted, any recoveries, net of the payment of sums on account of any professional fees incurred in prosecuting such claims or Causes of Action will be paid to LPL in accordance with the Plan.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any such Cause of Action against them as any indication that the Debtors, the Post-Effective Date Debtor, or the Plan Administrator will not pursue any and all available Causes of Actions against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors reserve such Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

In connection with the Global Plan Settlement, the Debtors, Liberty, the Committee, and the Owners Representative have agreed that the Debtors will dismiss, with prejudice, the Wu Adversary Proceeding on the Effective Date. Accordingly, notwithstanding anything herein to the contrary, the Wu Adversary Proceeding shall not constitute a Post-Effective Date Debtor Cause of Action.

*M.      Closing the Chapter 11 Cases*

When all remaining Cash has been distributed in accordance with the Plan, and the business and affairs of the Post-Effective Date Debtor have been otherwise wound down, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**Article V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

*A.      Assumption and Assignment of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan; (2) is subject to a pending motion to assume or reject such Unexpired Lease or Executory Contract as of the Effective Date; (3) was assumed or assumed and assigned to the Purchaser or another third party, as applicable, in connection with the Sale Transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (5) is a D&O Policy; or (6) is the Purchase Agreement. Entry of the Confirmation Order by the Bankruptcy Court shall

22

constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

B.    ~~B.~~    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Obligations under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Obligation in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitation described below, by the Debtors as an Administrative Claim, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of the Cure Obligation, (2) the ability of the Debtors' Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Unless otherwise provided by an order of the Bankruptcy Court, at least twenty-one (21) days before the Confirmation Hearing, the Debtors shall cause notice of proposed assumption and proposed Cure Obligations to be sent to applicable counterparties.  Any objection by such counterparty must be Filed, served, and actually received by the Debtors not later than fourteen (14) days after service of notice of the Debtors' proposed assumption and associated Cure Obligations.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Obligation.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment.  **~~Anything~~Upon satisfaction of the Cure Obligations, anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity**.

C.    ~~C.~~    *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with Bankruptcy Court and served on the Debtors or, after the Effective Date, the Plan Administrator, as applicable, no later than thirty (30) days after the ~~earlier of the Effective Date or the effective~~ date of service of notice of rejection of such Executory Contract or Unexpired Lease.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtors or, after the Effective Date, the Post-Effective Date Debtors and Plan Administrator, as applicable, no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Post-Effective Date Debtor, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising**

23

**out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims against the appropriate Debtor, except as otherwise provided by order of the Bankruptcy Court.

D.        ~~D.~~        *Purchase Agreement; Assumed Contracts*

The Debtors' assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to the Purchaser's rights and obligations, including any Cure Obligations assumed by the Purchaser in accordance with the Purchase Agreement, with respect to any such Executory Contracts or Unexpired Leases.

E.        *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or on behalf of the Debtors or on behalf of the Debtors' Estates during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.        *Insurance Policies*

Each insurance policy, including the D&O Policies and any D&O coverages, shall, to the extent necessary, be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order, is the subject of a motion to reject pending on the Effective Date, or was assumed and assigned to the Purchaser under the Purchase Agreement, and coverage for defense and indemnity under any such insurance policy, including the D&O Policies and D&O coverages, shall remain available to all individuals within the definition of "Insured" in any such insurance policy, including the D&O Policies.  No amounts are due under the D&O Policies and the cure amounts for such policies are $0.  The Debtors will serve any such insurance company a notice with the cure amount at least twenty-one (21) days before the confirmation hearing.  Any insurance company receiving such a notice shall have until 7 days before the Confirmation Hearing, to serve an objection to the cure amount or the assumption and assignment in accordance with the Plan indicating a different amount.

G.        *Indemnification Obligations*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors' and officers' respective Affiliates, respectively, against any Claims or Causes of Action under the Indemnification Provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtor, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date; provided, however, that notwithstanding anything herein to the contrary, the Post-Effective Date Debtor's obligation to fund such Indemnification Provisions shall be limited to the extent of coverage available under any insurance policy assumed by the Debtors and assigned to the Post-Effective Date Debtor, including the D&O Policies.

Notwithstanding anything herein to the contrary, the Plan Administrator is authorized to reimburse the Debtors' directors and officers on account of any costs and expenses in connection with the Chapter 11 Cases, including without limitation, costs and expenses incurred in connection with the preparation of Proofs of Claim on behalf of the Debtors' directors and officers.  For the avoidance of doubt, payment on account of directors' and officers' costs shall be reduced from LPL's Secured Claim on a dollar-for-dollar basis.

*H.*    *H.*    *Reservation of Rights*

Nothing contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**Article VI.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

A.    *Calculation of Amounts to Be Distributed*

Each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtors or the Plan Administrator on behalf of the Debtors or the Post-Effective Date Debtor, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

B.    *Rights and Powers of the Debtor and the Plan Administrator*

1.    Powers of the Debtors and the Plan Administrator

All distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter by the Plan Administrator or her designees.

After the Effective Date, the Plan Administrator and its designees or representatives shall have the right to object to, Allow, or otherwise resolve any Priority Claim.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Debtors or the Plan Administrator, as applicable, is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Post-Effective Date Debtor.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator shall be paid in Cash from the Plan Administrator Escrow without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    C.        *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and the Debtors, the Plan Administrator, or any other party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    Delivery of Distributions in General

(a)        Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the reasonable discretion of the Plan Administrator be deemed to have been made by the Plan Administrator on the Effective Date, unless the Plan Administrator and the Holder of such Claim agree otherwise.

(b)        Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors or the Plan Administrator, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

(c)        Distributions

On the Effective Date, the Debtors and the Plan Administrator, as applicable, shall make the distributions required to be made on account of all Allowed Claims under the Plan.  Any distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that distribution is not an Allowed Claim on such date, shall be held by the Plan Administrator in the Priority Claims Reserve, as applicable, and distributed on the next Subsequent Distribution Date that occurs after such Claim is Allowed.  In accordance with Article VIII.D hereof, no interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to the Plan.

3.    Minimum; De Minimis Distributions

Except with respect to Seller Noteholder Claims, no Cash payment of less than $100.00, in the reasonable discretion of the Debtors or the Plan Administrator, as applicable, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

4.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors or the Plan Administrator, as applicable, has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the initial distribution is made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Post-Effective Date Debtor automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.  For the avoidance of doubt, neither the Debtors, the Plan Administrator nor the Owners Representative are obligated to ascertain the current address of any Holder for whom a distribution is returned undeliverable.

5.    Manner of Payment Pursuant to the Plan

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtors or the Plan Administrator, as applicable, by check or by wire transfer.

6.    Seller Noteholder Distributions

Notwithstanding anything herein to the contrary, distributions on account of Allowed Class 3 Claims shall be made in accordance with Articles II.A and III.B.3 hereof.

D.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Debtors and the Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

E.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties; Recourse to Collateral

The Debtors or the Plan Administrator, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Post-Effective Date Debtor, as applicable, including on account of recourse to collateral held by third parties that secure such Claim.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    Claims Payable by Insurance, Third Parties; Recourse to Collateral

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies

Notwithstanding anything to the contrary in the Plan or Confirmation Order, neither Confirmation and Consummation of the Plan, nor dissolution of the Debtors or the Post-Effective Date Debtor, nor the assumption and assignment or lack of the assumption and assignment of any insurance policies, including the D&O Policies shall

27

limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtor's insurance policies with respect to such policies, including the D&O Policies.

## Article VII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

A.      *Resolution of Disputed Claims*

1.      Allowance of Claims and Interests

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest, except with respect to any Claim or Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

Notwithstanding anything herein to the contrary, the Debtors will request that claim number 20 filed by the Owners Representative be deemed Allowed in the filed amount of $18,401,287.65 pursuant to the Confirmation Order. For the avoidance of doubt, Claim number 20 shall be treated in accordance with Article III.B.3 hereof.

2.      Prosecution of Objections to Claims

Other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtors, and on or after the Effective Date, the Plan Administrator with respect to Priority Claims shall have the authority to File objections to such Claims, and the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtors' Estates to any and all such Claims, regardless of whether such Claims are in a Class or otherwise. From and after the Effective Date, the Plan Administrator shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent an objection is filed to a Claim prior to October 31, 2014, unless such Claim is disallowed by order of the Bankruptcy Court on or before October 31, 2014, the Holder of such Claim can file a motion under Bankruptcy Rule 3018 to have such Claim allowed in a specific amount for purposes of voting on the Plan.

3.      Claims Estimation

On and after the Effective Date, (a) the Plan Administrator, may, at any time, request that the Bankruptcy Court estimate (i) any Disputed Priority Claim pursuant to applicable law and (ii) any contingent or unliquidated Priority Claim pursuant to applicable law, in each case regardless of whether the Debtors or the Plan Administrator have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any such Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection, provided, however, that the Debtors may not request estimation of a non-contingent, liquidated claim if the Debtors' objection to such claim was previously overruled.

Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be

estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, ~~and~~as determined by the Bankruptcy Court, and if the Bankruptcy Court determines it to be the latter, the Debtors or the Plan Administrator, as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

      4.    Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtors or the Plan Administrator (or the Notice and Claims Agent at, as applicable, the Debtors' or the Plan Administrator's direction), and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtors or the Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

      5.    Deadline to File Objections to Claims or Interests

Any objections to Claims or Interests shall be Filed no later than the Claims Objection Bar Date.

**B.**    *Disallowance of Claims*

To the maximum extent provided by section 502(d) of the Bankruptcy Code, all Claims of any Entity from which property is recoverable by the Debtors or the Plan Administrator, as applicable, under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Plan Administrator, as applicable, alleges is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtors or the Plan Administrator, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code, and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**C.**    *Amendments to Claims*

After the Effective Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim or Interest Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, such Holder may amend the Claim or Interest Filed solely to decrease, but not to increase, the amount, number, or priority of such Claim or Interest, unless otherwise provided by the Bankruptcy Court.

**D.**   ~~**D.**~~    *No Interest*

Unless otherwise specifically provided for in the Plan (including Article III hereof), by applicable law,  or agreed-to by the Debtors, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim.  Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final distribution paid on account of such Claim occurs after the Effective Date.

**Article VIII.**

**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.     *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests, subject to the Effective Date occurring.   Nothing herein is intended, nor shall be interpreted, to settle, resolve or release any claim of any non-debtor against the Debtors or any non-debtor party, except as set forth in Articles VIII.D, E and F of the Plan, however any such claims are subject to the provisions of Articles VIII.G, H and I.

B.     ~~B.~~     *Release of Liens*

~~Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on~~On the Effective Date and concurrently with the ~~applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date~~making of the payment of the Liberty Contribution, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates held by the Seller Noteholders shall be fully released, settled, and compromised and all rights, titles, and interests of any ~~Holder of~~Seller Noteholder regarding such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.  For the avoidance of doubt, LPL shall retain its Liens and security interests until it receives its distribution under the Plan.

C.     ~~C.~~     *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

30

D.    *Debtor Release*

Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, the Debtors on behalf of themselves and the Debtors' bankruptcy estates, for the good and valuable consideration provided by each of the ~~Released Parties~~Entities to be released by this Article VIII.D Debtor Release, including, without limitation~~: (a)~~ the ~~discharge~~release and elimination of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise~~: (b) the services of the Debtors' officers and directors to the Debtors~~, hereby provides a full ~~discharge and release to the Released Parties (and each such Released Party~~release to Liberty, its officers and directors, its predecessors, successors, affiliates and assigns, the Committee and the Committee members in their respective capacities as such and each of the foregoing Entities' respective professionals (and each such party so released shall be deemed released ~~and discharged~~ by the Debtors) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that the Debtors ~~or the Plan Administrator~~ would have been legally entitled to assert or that any Holder of a Claim against or equity interest in the Debtors or other entity would have been legally entitled to assert for or on behalf of the Debtors or the Debtors' bankruptcy estates and further including those in any way related to the Debtors' Chapter 11 Cases or this Plan; provided, however, that the foregoing provisions shall have no effect on the liability of any entity that results from any act or omission that is determined in a final non-appealable order to be ~~solely~~ due to their own respective gross negligence or willful misconduct.

E.    *Third Party Release*

Notwithstanding anything contained in this Plan to the contrary, on the Effective Date and effective as of the Effective Date, the Releasing Parties shall be deemed to provide a full ~~discharge and~~ release to the Released Parties and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, and all direct claims, arising from or related in any way to the Debtor, including those in any way related to the Debtors' Chapter 11 Cases or this Plan (the "Third Party Release"); provided, however, that the foregoing provisions shall have no effect on the liability of any entity that results from any act or omission that is determined in a final non-appealable order to be solely due to their own respective gross negligence or willful misconduct. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, and further, shall constitute its finding that the Third Party Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of the claims released by the Third Party Release; (ii) in the best interests of the Debtors and all Holders of claims; (iii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim released by the Third Party Release against any of the Released Parties. For the avoidance of doubt, the Third Party Release shall not apply to any claim of the Owners Representative for indemnification or contribution from the Seller Noteholders that may arise in the future if an action is brought against him in his capacity as Owners Representative.

F.    ~~F.~~    *Seller Noteholder Release*

Notwithstanding anything contained in this Plan to the contrary, on the Effective Date and effective as of the Effective Date, the Seller Noteholders who have voted to accept this Plan and who have not opted out of the Seller Noteholder Release shall be deemed to provide a full ~~discharge and~~ release to the Released

Parties and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, and all direct claims, arising from or related in any way to the Debtors, including those in any way related to the Debtors' Chapter 11 Cases or this Plan (the "Seller Noteholder Release"); provided, however, that the foregoing provisions shall have no effect on the liability of any entity that results from any act or omission that is determined in a final non-appealable order to be solely due to their own respective gross negligence or willful misconduct. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Seller Noteholder Release, and further, shall constitute its finding that the Seller Noteholder Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of the claims released by the Seller Noteholder Release; (ii) in the best interests of the Debtors and all Holders of claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of those Holders of Seller Noteholder Claims who have voted to accept this Plan and have not opted out of the Seller Noteholder Release to asserting any claim released by the Seller Noteholder Release against any of the Released Parties. For the avoidance of doubt, the Seller Noteholder Release shall not apply to any claim of the Owners Representative for indemnification or contribution from the Seller Noteholders that may arise in the future if an action is brought against him in his capacity as Owners Representative. For further avoidance of doubt, nothing herein shall constitute a waiver of any claims against the Owners Representative in his capacity as such.


G.      *Exculpation*

Notwithstanding anything contained in this Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any entity for any and all claims and Causes of Action arising on or after the Petition Date through and including the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating this Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the transactions occurring in the Debtors' Chapter 11 Cases; provided, however, that the foregoing provisions shall have no effect on the liability of any entity that results from any act or omission that is determined in a final non-appealable order to be ~~solely~~ due to their own respective gross negligence or willful misconduct.


H.      ~~H.~~      *Injunction*

Except as otherwise provided herein or in the Confirmation Order, all Entities who have held, hold, or may hold claims, interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms hereof; (2) have been released pursuant to Article VIII.A, B, E or F hereof; (4) are subject to exculpation pursuant to Article VIII.G hereof; or (4) are otherwise released, stayed or terminated pursuant to the terms of this Plan (1, 2, 3 and 4 collectively as the "Released Claims"), are permanently enjoined and precluded, from and after the Effective Date, from: (a) on account of or with respect to any of the Released Claims, commencing or continuing in any manner any action or other proceeding of any kind, ~~including on account of any claims, interests, Causes of Actions, or liabilities that have been compromised or settled~~ against the Debtors, the Post-Effective Date Debtors, the Plan Administrator or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) , or against property to be distributed under the Plan; (b) on account of or ~~in connection with or~~ with respect to any ~~released, settled, compromised, or exculpated claims, equity interests, Causes of Action, or liabilities; (b)~~of the Released Claims, enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, the Post-Effective Date Debtors, or any Entity so released or exculpated (or the property or estate of the Debtors or any Entity so released or exculpated) , or against the property to be distributed under the Plan; (c) on account of or ~~in connection with or~~ with respect to any ~~such released, settled, compromised, or exculpated~~

claims, equity interests, Causes of Action, or liabilities; (c)of the Released Claims, creating, perfecting, or enforcing any lien, claim, or encumbrance of any kind against the Debtors, the Post-Effective Date Debtors, or any entityEntity so released or exculpated (or the property or estate of the Debtors or any entityEntity so released or exculpated) on account of or in connection with or with respect to any such released, settled, compromised, or exculpated claims, equity interests, Causes of Action, or liabilities; (d) asserting any right ofto setoff or subrogation of any kindto subrogate any of the Released Claims against any obligation due fromto the Debtors or any Entity so released or exculpated (or the property or estate of the Debtors or any Entity so released or exculpated) on account of or in connection with or with respect to any such released, settled, compromised, or exculpated claims, equity interests, Causes of Action, or liabilities unless such entity has timely asserted such setoff right prior to confirmation in a document filed with the Bankruptcy Court explicitly preserving such setoff or subrogation, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff or subrogation pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Post-Effective Date Debtors, or any Entity so released or exculpated (or the property or estate of the Debtors or any Entity so released or exculpated) on account of or in connection with or with respect to any such released, settled, compromised, or exculpated claims, equity interests, Causes of Action, or liabilities released, settled, or compromised pursuant to thisof the Released Claims, or against the property to be distributed under the Plan; provided that nothing contained in this Plan shall preclude an Entity from obtaining benefits directly and expressly provided to such Entity pursuant to the terms of this Plan; provided, further, that nothing contained in this Plan shall be construed to prevent any Entity from defending against claims objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law.

I.    I.    *Waiver of Statutory Limitations on Releases*

Each Releasing Party in each of the releases contained in this Plan (including under Article VIII of this Plan) expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party. The releases contained in Article VIII of this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen. For the avoidance of doubt, this paragraph shall not apply to any claim of the Owners Representative for indemnification or contribution from the Seller Noteholders that may arise in the future if an action is brought against him in his capacity as Owners Representative. For further avoidance of doubt, nothing herein shall constitute a waiver of any claims against the Owners Representative in his capacity as such.

J.    J.    *Setoffs*

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtors, and on and after the Effective Date, the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest on account of any Proof of Claim or proof of Interest or other pleading Filed with respect thereto prior to the Confirmation Hearing and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any distribution is made on account of such Allowed Claim or Interest), any claims, rights, and Causes of Action of any nature that the Debtors' Estates may hold against the Holder of such Allowed Claim or Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Debtors or the Plan Administrator, as applicable, of

33

any such claims, rights, and Causes of Action that the Debtors' Estates may possess against such Holder, provided further that the Debtors or the Plan Administrator, as applicable, give the Holder of such allowed Claim notice of the proposed setoff and the Holder does not object to the proposed setoff within thirty (30) days; provided further that if the Holder of such Allowed Claim objects to the proposed setoff within thirty (30) days, such setoff may not be effectuated without prior approval of the Bankruptcy Court.  In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any claim, right, or Cause of Action of the Debtors' Estates unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtors' or the Plan Administrator's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

## Article IX.

## SUBSTANTIAL CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Consummation of the Plan*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.    the Confirmation Order shall have been entered and be in full force and effect;

2.    the Court shall have entered the Liberty Paydown Order, and the payment to LPL sought thereby must have been made;

3.    all of the Seller Noteholders must have (a) voted to accept the Plan, and (b) not opted out of the Seller Noteholder Release, as provided in the Plan Support Agreement;

4.    the Plan Administrator shall have been appointed in accordance with the terms of the Plan;

5.    all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

6.    the Professional Fee Escrow shall have been established and funded;

7.    the reduction of LPL's Secured Claim shall not exceed $100,000.00 on account of all allowed Priority Tax Claims and Other Priority Claims;

8.    the Plan Administrator Escrow in the full amount of the Plan Administrator Escrow Amount shall have been established and funded; and

9.    the Post-Effective Date Debtor Distribution shall have occurred.

B.    *Waiver of Conditions*

Except as set forth in the following sentence, the conditions to Confirmation of the Plan and Consummation of the Plan set forth in this Article IX may be waived by the Debtors with Liberty's consent, which consent shall not be unreasonably withheld, without leave or order of the Bankruptcy Court.  Any waiver of subsection (7) above may only be affected with the consent of each of Liberty's, the Committee, the Owners Representative and the Debtors, which consent shall not be unreasonably withheld, without leave or order of the Bankruptcy Court.

C.      *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.

## Article X.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to the limitations contained in the Plan and subject to Section 1127 of Bankruptcy Code and Bankruptcy Rule 3019,  the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to the Plan Support Agreement, certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth herein, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X hereof.

B.      ~~B.~~      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof, up through the date of Confirmation, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019, subject to the requirements of the Plan Support Agreement.

C.      ~~C.~~      *Revocation or Withdrawal of the Plan*

Subject to the Plan Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur with respect to any Debtor, then: (1) the Plan with respect to such Debtor shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan with respect to such Debtor (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan with respect to such Debtor, and any document or agreement executed pursuant to the Plan with respect to such Debtor, shall be deemed null and void; and (3) nothing contained in the Plan with respect to such Debtor shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

## Article XI.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.       allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.       decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.       resolve any matters related to:  (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Post-Effective Date Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases set forth on the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.       ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.       adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.       adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.       enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.       enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.       resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.       issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.       resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.       resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.E.5(a) hereof;

13.       enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

21.     enforce all orders previously entered by the Bankruptcy Court;

22.     hear any other matter not inconsistent with the Bankruptcy Code;

23.     enter an order concluding or closing the Chapter 11 Cases; and

24.     enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof.

## Article XII.

## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Debtors' Estates, the Post-Effective Date Debtor and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other

parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Dissolution of Committee*

On the Effective Date, the Committee shall dissolve and members thereof shall be compromised, settled, and released from all rights and duties from or related to the Chapter 11 Cases, except the Committee will remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.  The Debtors shall have no obligation to pay any fees or expenses incurred after the Effective Date by the Committee Members.

D.  ~~D.~~      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, or the Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the following entities and shall be served via first class mail, overnight delivery, or messenger on.

(a)      if to the Debtors, to:

EI Wind Down, Inc.
3428 Turtle Cove Court
Marietta, GA 30067
Attention: Ms. Juliet Reising

with copies to:

Klehr Harrison Harvey Branzburg LLP
919 Market St., Ste. 1000
Wilmington, DE 19801-3062
Attention:   Domenic E. Pacitti
                    Raymond H. Lemisch
                    Margaret M. Manning
Email addresses:  DPacitti@klehr.com
                              RLemisch@klehr.com
                              MManning@klehr.com

(b)      if to Liberty, to:

Liberty Partners Lenders, LLC
750 Third Ave., 9th Floor
New York, NY 10019
Attention: Mike Fram
Email Address: mfram@libertypartners.com

38

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention: Ryan B. Bennett
    Justin R. Bernbrock
Email Addresses: rbennett@kirkland.com
      justin.bernbrock@kirkland.com

(c)  if to the Committee, to:

Cooley LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7798
Attention: Cathy Hershcopf
    Jeffrey L. Cohen
    Richelle Kalnit
Email Addresses: chershcopf@cooley.com
      jcohen@cooley.com
      rkalnit@cooley.com

with copies to:

Morris James LLP
500 Delaware Ave., Ste. 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Attention: Brett Fallon
    Jeffrey R. Waxman
Email Addresses: BFallon@morrisjames.com
      JWaxman@morrisjames.com

(d)  if to the Owners Representative, to:

Cross & Simon, LLC
1105 Market Street, Suite 901
Wilmington, Delaware 19801
Attention: Joseph Grey
Email Address: jgrey@crosslaw.com

with copies to:

Bone McAllester Norton PLLC
Nashville City Center
511 Union Street, Suite 1600
Nashville, TN 37219
Attention: Charles Robert Bone
Email Address: crb@bonelaw.com

G.  *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and

39

extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect to the maximum extent permitted by law.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement*

Except as otherwise indicated, the Plan and the Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan; provided, that, notwithstanding anything herein to the contrary, the Plan Support Agreement remains in full force and effect.

*I.*    *I.*    *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

*J.*    *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

*[Signature Page Follows]*

40

Respectfully submitted, as of the date first set forth above,

**EI WIND DOWN, INC.**
**(on behalf of itself and its Debtor affiliates)**

By:     _/s/ Juliet Reising_

Name:     Juliet Reising

Its:     Chief Financial Officer

Document comparison by Workshare Compare on Monday, December 08, 2014
10:09:28 AM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://PHL1DMS5/PHIL1/3913997/4 |
| Description | #3913997v4<PHIL1> - Edge - Plan of Liquidation REVISED 10-8-14_(33642404_9) |
| Document 2 ID | interwovenSite://PHL1DMS5/PHIL1/3913997/7 |
| Description | #3913997v7<PHIL1> - Edge - Plan of Liquidation REVISED 10-8-14_(33642404_9) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 130 |
| Deletions | 142 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 278 |