IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EI WIND DOWN, INC., *et al.*,[1] | ) Case No. 14-10066 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Related DI No. 473 |
| | ) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
CONFIRMING THE DEBTORS' MODIFIED AMENDED JOINT PLAN OF
LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The *Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated October 27, 2014 [Docket No. 422] and then the *Debtors' Modified Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated December 5, 2014 [Docket No. 473] (the "***Plan***"),[2] having been filed with the United States Bankruptcy Court for the District of Delaware (the "***Court***") by the above-referenced debtors and debtors in possession (collectively, the "***Debtors***"); and the Court having entered an order dated October 30, 2014 (the "***Disclosure Statement Order***") [Docket No. 432], after due notice and a hearing pursuant to sections 105, 502, 1125 and 1128 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 3017, 3020, 9013, 9014, and 9021 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2002-1, 3017-1, 3020-1, 9013-1 and 9021-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States District

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number are EI Wind Down, Inc. f/k/a Edgenet, Inc. [4977] and EHC Holding Wind Down Corp. f/k/a Edgenet Holding Corp. [4146].

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Court for the District of Delaware (the "*Local Rules*"), (i) approving the Disclosure Statement, (ii) fixing the voting record, (iii) approving the notice and objection procedures in respect of confirmation of the Plan, (iv) approving solicitation packages and procedures for distribution thereof, (v) approving the forms of ballots and establishment of procedures for voting on the Plan, (vi) approving the forms of notices to non-voting classes under the Plan, (vii) approving the timing of and the publication of notice of the confirmation of the Plan; (viii) fixing the voting deadline to accept or reject the Plan, and (ix) approving procedures for vote tabulations in connection therewith; and the Disclosure Statement having been transmitted to all Holders of Claims in Classes 2 and 3 (collectively, the "*Voting Classes*") as provided for by the Disclosure Statement Order; and the Confirmation Hearing having been held before the Court on December 9, 2014, after due notice to Holders of Claims and Interests and all other parties in interest in accordance with the Disclosure Statement, the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules and the Local Rules; and upon all of the proceedings had before the Court, and after full consideration of (i) the *Declaration of Julie Meegan on Behalf of Phase Eleven Consultants LLC Regarding Tabulation of Ballots Accepting and Rejecting the Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* dated December 5, 2014 [Docket No. 478] (the "*Vote Certification*"), and the testimony contained therein, (ii) the *Declaration of Juliet Reising in Support of Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* dated December 5, 2014 [Docket No. 479] (the "*Reising Certification*"), and the testimony contained therein, (iii) the Debtors' memorandum of law filed in support of Confirmation of the Plan, dated ____, 2014 [Docket No. __], and (iv) all other evidence proffered or adduced at the Confirmation Hearing, as well as oral

arguments of counsel made in connection therewith; and after due deliberation and sufficient cause appearing therefor;

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.      Exclusive Jurisdiction; Venue; Core Proceeding**

1.      The Court has jurisdiction over the Debtors' chapter 11 cases in accordance with 28 U.S.C. §§ 157 and 1334.  Confirmation is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court has jurisdiction to enter a final order with respect thereto.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.      Eligibility for Relief**

2.      The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code.

**C.      Commencement and Joint Administration of these Chapter 11 Cases**

3.      On the Petition Date, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.  By prior order of the Court, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 27].  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

PHIL1 4018121v.4

**D.      Judicial Notice**

4.      The Court takes judicial notice of the main case docket of these chapter 11 cases maintained by the Clerk of the Court [Case No. 14-10066 (BLS)], including all pleadings and other documents filed and orders entered thereon.  The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these chapter 11 cases.

**E.      Claims Bar Date**

5.      On April 14, 2014, the Court entered an order (the "***Bar Date Order***") [Docket No. 203] which, among other things: (a) established bar dates for filing Proof of Claim including claims under 11 USC § 503(b)(9); (b) approved form and manner for filing Proofs of Claim and; and (c) approved notice of the General Bar Date.  The Bar Date Order established, as applicable, (i) 4:00 p.m. prevailing Eastern Time on May 27, 2014 as the Pre-Petition Claim Bar Date, (ii) 4:00 p.m. prevailing Eastern Time on July 18, 2014 as the Governmental Bar Date, and (iii) the later of (a) the date set forth in an order authorizing the Debtors to reject contracts or leases pursuant to section 365 of the Bankruptcy Code (including any order confirming a plan of reorganization in the Debtors' chapter 11 cases), (b) the General Bar Date, or (c) 35 days from the later of the date the rejection order is entered or notice of rejection is provided as the bar date for claims arising from the Debtors' rejection of an unexpired lease or executory contract.

**F.      Burden of Proof**

6.      The Debtors, as proponents of the Plan in accordance with section 1121(a) of the Bankruptcy Code, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

4

**G.    Transmittal and Mailing of Materials; Notice**

7.    As evidenced by the *Affidavit of Service of Solicitation Materials of PhaseEleven Consultants* filed on November 25, 2014 [Docket No. 462], due, adequate and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, together with all deadlines for objecting to and voting to accept or reject the Plan, has been provided to:  (a) the Office of the United States Trustee for the District of Delaware (the *"U.S. Trustee"*); (b) counsel to the statutory committee of noteholders appointed in these chapter 11 cases (the *"Noteholders' Committee"*); (c) counsel Liberty Partners Lenders, L.L.C.; (d)  the Internal Revenue Service; (e) all parties entitled/required to receive notice pursuant to the Disclosure Statement Order; and (f) any persons who have filed a request for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 and the Local Rules, in substantial compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017 and 3020(b).   Adequate and sufficient notice of the Confirmation Hearing and other dates and hearings described in the Disclosure Statement Order was provided in compliance with the Bankruptcy Rules and Disclosure Statement Order, and no other or further notice is or shall be required.

8.    The Debtors published notice of the Confirmation Hearing (the *"Confirmation Hearing Notice"*) in *USA Today* in substantial compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(l), as evidenced by the *Affidavit of Service* of Melissa Obermayer of Phase Eleven Consultants LLC filed on December 4, 2014 [Docket No. 464].

**H.    Solicitation**

9.    Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all applicable provisions of the

Bankruptcy Code and all other applicable rules, laws and regulations.    Specifically, the solicitation materials approved by the Court in the Disclosure Statement Order (including, the Disclosure Statement, the Plan, ballots ("**Ballots**"), and the Disclosure Statement Order) (the "**Solicitation Packages**") were transmitted to and served as required in the Disclosure Statement Order, on all Holders of Claims in the Voting Classes, as well as to other parties in interest in the Debtors' chapter 11 cases, in compliance with section 1125 of the Bankruptcy Code, the Disclosure Statement Order, the Bankruptcy Rules and the Local Rules.    Such transmittal and service of the Solicitation Packages were adequate and sufficient and no further notice is or shall be required.    In addition, Holders of Claims or Interests in the Non-Voting Classes were provided with a notice of non-voting status in lieu of a Solicitation Package, the form of which was approved by the Court as part of the Disclosure Statement Order.    All procedures used to distribute the Solicitation Packages to Holders of Claims and Interests were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

**I.      Vote Certification**

10.      Before the Confirmation Hearing, the Debtors filed the Vote Certification.    All procedures used to tabulate the Ballots, Note Ballots and Master Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

11.      As evidenced by the Vote Certification, Classes 2 and 3 voted to accept the Plan.

**J.      Bankruptcy Rule 3016**

12.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

**K.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

13.      The Plan complies with all applicable provisions of section 1129(a) of the Bankruptcy Code, as follows:

**i.      Section 1129(a)(1) — Compliance with the Applicable Provisions of the Bankruptcy Code**

**a.      Section 1122 and 1123(a)(1) — Proper Classification**

14.      The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into 6 Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims and Priority Tax Claims, which are addressed in Article II of the Plan and are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

15.      As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  As a result, the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code have been satisfied.

PHIL1 4018121v.4

### b.      Section 1123(a)(2) — Specification of Not Impaired Classes

16.      Article III of the Plan specifies that Claims in Class 1 are Unimpaired under the Plan. Additionally, Article II of the Plan specifies that Administrative Claims and Priority Tax Claims are not Impaired, although these Claims are not classified under the Plan. As a result, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### c.      Section 1123(a)(3) — Specification of Treatment of Impaired Classes

17.      Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 2-6. As a result, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### d.      Section 1123(a)(4) — No Discrimination

18.      Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. As a result, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

### e.      Section 1123(a)(5) — Adequate Means for Plan Implementation

19.      Article IV of the Plan, as well as various other provisions of the Plan, provide adequate and proper means for implementation of the Plan. The Plan is predicated upon appointment of a Plan Administrator who shall be vested with the full legal power, capacity and authority and who shall be directed to administer, collect and liquidate the Debtors' remaining Assets, if any, and to implement the Plan. As a result, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

PHIL1 4018121v.4

**f.      Section 1123(a)(6) — Voting Power of Equity Securities**

20.      The Plan does not contemplate the issuance of non-voting equity securities.  As a result, the requirements of section 1123(a)(6) of the Bankruptcy Code have been satisfied.

**g.      Section 1123(a)(7) — Selection of Officers and Directors**

21.      As the Plan is a liquidating Plan, there will be no officers or directors of the Debtors after Plan confirmation.  Rather, the Plan Administrator, Juliet Reising, will be tasked with administering, collecting and liquidating the Debtors' remaining Assets, if any, and implementing the Plan.  As a result, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.  The Debtors have indicated that Ms. Reising's compensation will be hourly at $175 per hour worked, in compliance with section 1129(a)(5)(B).

22.      Furthermore, Article IV of the Plan allows for the Plan Administrator to affect the dissolution of the Debtors upon the occurrence of certain conditions after the Effective Date.

**h.      Section 1123(b) — Discretionary Contents of the Plan**

23.      The Plan contains various provisions that may be construed as discretionary but are not required for Confirmation under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code.  As a result, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

> *(1)      Section 1123(b)(1)-(2) — Claims and Interests; Executory Contracts and Unexpired Leases*

24.      Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article V of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests and provides for the rejection of the Executory Contracts and Unexpired Leases of the Debtors

PHIL1 4018121v.4

not previously assumed or rejected pursuant to section 365 of the Bankruptcy Code, or not assumed under the Plan.

>    (2)    *Section 1123(b)(3) — Settlement, Releases, Exculpation and Injunction Provisions*

25. **Releases.**

*Third Party Release*

Notwithstanding anything contained in the Plan to the contrary, on the Effective Date and effective as of the Effective Date, the Releasing Parties shall be deemed to provide a full release to the Released Parties and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, and all direct claims, arising from or related in any way to the Debtor, including those in any way related to the Debtors' Chapter 11 Cases or the Plan(the "Third Party Release"); provided, however, that the foregoing provisions shall have no effect on the liability of any entity that results from any act or omission that is determined in a final non-appealable order to be solely due to their own respective gross negligence or willful misconduct. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, and further, shall constitute its finding that the Third Party Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of the claims released by the Third Party Release; (ii) in the best interests of the Debtors and all Holders of claims; (iii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any claim released by the Third Party Release against any of the Released Parties. For the avoidance of doubt, the Third Party Release shall not apply to any claim of the Owners Representative for indemnification or contribution from the Seller

10

Noteholders that may arise in the future if an action is brought against him in his capacity as Owners Representative (the "*Third Party Release*").

### Seller Noteholder Release

Notwithstanding anything contained in the Plan to the contrary, on the Effective Date and effective as of the Effective Date, the Seller Noteholders who have voted to accept the Plan and who have not opted out of the Seller Noteholder Release shall be deemed to provide a full release to the Released Parties and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, and all direct claims, arising from or related in any way to the Debtors, including those in any way related to the Debtors' Chapter 11 Cases or the Plan(the "Seller Noteholder Release"); provided, however, that the foregoing provisions shall have no effect on the liability of any entity that results from any act or omission that is determined in a final non-appealable order to be solely due to their own respective gross negligence or willful misconduct. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Seller Noteholder Release, and further, shall constitute its finding that the Seller Noteholder Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of the claims released by the Seller Noteholder Release; (ii) in the best interests of the Debtors and all Holders of claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of those Holders of Seller Noteholder Claims who have voted to accept the Plan and have not opted out of the Seller Noteholder Release to asserting any claim released by the Seller Noteholder Release against any of the Released Parties. For the avoidance of doubt, the Seller Noteholder Release shall not apply to any claim of the Owners

Representative for indemnification or contribution from the Seller Noteholders that may arise in the future if an action is brought against him in his capacity as Owners Representative. For further avoidance of doubt, nothing herein shall constitute a waiver of any claims against the Owners Representative in his capacity as such. (the "*Seller Noteholder Release*").

### *Debtor Release*

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, the Debtors on behalf of themselves and the Debtors' bankruptcy estates, for the good and valuable consideration provided by each of the Entities to be released by the Article VIII.D Debtor Release in the Plan, including, without limitation the release and elimination of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise, hereby provides a full release to Liberty, its officers and directors, its predecessors, successors, affiliates and assigns, the Committee and the Committee members in their respective capacities as such and each of the foregoing Entities' respective professionals (and each such party so released shall be deemed released by the Debtors) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that the Debtors would have been legally entitled to assert or that any Holder of a Claim against or equity interest in the Debtors or other entity would have been legally entitled to assert for or on behalf of the Debtors or the Debtors' bankruptcy estates and further including

12

those in any way related to the Debtors' Chapter 11 Cases or this Plan; provided, however, that the foregoing provisions shall have no effect on the liability of any entity that results from any act or omission that is determined in a final non-appealable order to be due to their own respective gross negligence or willful misconduct (the "**Debtor Release**").

26.    **Exculpation.**    Article VIII.G. of the Plan exculpates parties critical to the formulation of the Plan for any acts or omissions in connection with the Plan (the "**Exculpation**").  The exculpated parties consist of the (i) the Debtors and their officers and directors who served during the course of the Chapter 11 Cases, (ii) the Noteholders' Committee and the members thereof in their capacity as such, (iii) the Owners Representative, and (iv) Liberty and each of the foregoing Entities' respective attorneys, financial advisors, accountants, consultants, investment bankers and other professionals, in each case solely in their capacity as such (the "**Exculpated Parties**").[3] The scope of the Exculpation is targeted and has no effect on liability that is determined to have constituted gross negligence or willful misconduct.

27.    **Injunction.**    The injunction provision in Article VIII.H. of the Plan (the "**Injunction**") is necessary to preserve and enforce the Exculpation and is narrowly tailored to achieve that purpose.  Thus, the Court should approve the Injunction.

28.    Thus, each of the Releases, the Exculpation and the Injunction set forth in the Plan:  (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (b) is necessary to implement the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their Estates and the Holders of

---

[3]    *See* Plan, Article VIII.G.

Claims and Interests; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in these Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. Each of the parties receiving the benefit of a Release received such benefit in exchange for fair, sufficient, and adequate consideration provided by such party. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support each Release as well as the Exculpation and the Injunction provisions contained in Article VIII of the Plan. The failure to implement the Release, the Exculpation and the Injunction provisions of the Plan would seriously impair the Debtors' ability to confirm the Plan.

### i.    **Section 1123(d) — Cure of Defaults**

29.      Article V.B. of the Plan provides that monetary amounts by which each executory contract and unexpired lease to be assumed which may be in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by Cure and that, "in the event of a dispute regarding (a) the nature or the amount of any Cure, (b) the ability of any assignee to provide 'adequate assurance of future performance' (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption and assignment." Article V.A. of the Plan provides for the rejection, as of the Effective Date, of all executory contracts and unexpired leases, not previously assumed and assigned or rejected, or assumed and assigned under the Plan, that remain as of the Effective Date. To the extent previously rejected, then rejection shall be effective on such earlier date as the Debtors may have unequivocally terminated such lease or contract.

14

**ii.**    **Section 1129(a)(2) — Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code**

30.    The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.  As a result, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

31.    The Debtors and their officers, directors, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, affiliates, fiduciaries and representatives (collectively, the *"Debtors' Representatives"*) as of or after the Petition Date did not solicit the acceptance or rejection of the Plan by any Holders of Claims or Interests after the Petition Date and before the approval and transmission of the Disclosure Statement.  Votes to accept or reject the Plan were only solicited after the Petition Date by the Debtors and certain of the Debtors' agents after disclosure to Holders of Claims and Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code.

32.    The Debtors' Representatives as of or after the Petition Date have solicited acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations and have participated in good faith and in compliance with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Release, the Exculpation and the Injunction provisions set forth in the Plan.

### a.    Section 1129(a)(3) — Proposal of Plan in Good Faith

33.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself and the process leading to its formulation.  The good faith of each of the Entities who negotiated the Plan (the Debtors, the Noteholders' Committee and its members, Liberty, the Owners Representative and their respective professionals) is evident from the facts and records of these Chapter 11 Cases, the Disclosure Statement and the hearing thereon and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan is the product of arm's-length negotiations between the Debtors, the Noteholders' Committee, the Owners Representative and Liberty through their respective professionals.  The Plan itself, and the process leading to its formulation, provide independent evidence of the good faith of such Entities who negotiated the Plan, serve the public interest and assure fair treatment of Holders of Claims and Interests.

### b.    Section 1129(a)(4) — Court Approval of Certain Payments as Reasonable

34.    The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.  As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

PHIL1 4018121v.4

    c.    **Section 1129(a)(5) — Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

35.    As the Plan is a liquidating Plan, there will be no officers or directors of the Debtors after Plan confirmation. Rather, the Plan Administrator, Juliet Reising, will be tasked with administering, collecting and liquidating the Debtors' remaining Assets, if any, and implementing the Plan. As a result, the requirements of section 1129(a)(5) of the Bankruptcy Code have been satisfied.

    d.    **Section 1129(a)(6) — Approval of Rate Changes**

36.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require any such governmental regulatory approval. As a result, the requirements of section 1129(a)(6) of the Bankruptcy Code have been satisfied.

    e.    **Section 1129(a)(7) — Best Interests of Holders of Claims and Interests**

37.    The liquidation analysis attached to the Disclosure Statement (the "***Liquidation Analysis***") and the other evidence related thereto that was proffered or adduced at or before the Confirmation Hearing: (a) are reasonable, persuasive and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Allowed Claim in such Class has voted to accept the Plan or will receive under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. As a result, the requirements under section 1129(a)(7) of the Bankruptcy Code have been satisfied.

17

  f.  **Section 1129(a)(8) — Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

  38.  Class 1 is a Class of Unimpaired Interests and is conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

  39.  Classes 2 and 3 are classes of Impaired Claims that have voted to accept the Plan.

  40.  Classes 4, 5 and 6 are classes of Impaired Claims and are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code because Holders of Claims in these Classes are not entitled to receive or retain any property under the Plan. While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to Classes 4, 5 and 6, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

  g.  **Section 1129(a)(9) — Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

  41.  Allowed Administrative Claims and Allowed Priority Tax Claims are not Impaired pursuant to Article II of the Plan. As a result, the requirements of section 1129(a)(9) of the Bankruptcy Code with respect to such Classes have been satisfied.

  h.  **Section 1129(a)(10) — Acceptance by At Least One Impaired Class**

  42.  As set forth in the Vote Certification, Classes 2 and 3 are a Classes of Impaired Claims and have voted to accept the Plan. Class 3 does not contain any insiders. As such, there is at least one Class of Claims that is Impaired and has accepted the Plan, determined without including any acceptance of the Plan by any insider. As a result, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

PHIL1 4018121v.4

**i.    Section 1129(a)(11) — Feasibility of the Plan**

43.    The evidence proffered or adduced at, or before, the Confirmation Hearing in connection with the feasibility of the Plan is reasonable, persuasive and credible and has not been controverted by other evidence.  Given that the Plan proposes the liquidation of the Debtors, Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**j.    Section 1129(a)(12) — Payment of Bankruptcy Fees**

44.    Article II.C of the Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code shall be paid for each quarter (including any fraction thereof) until these chapter 11 cases are converted, dismissed or closed, whichever occurs first.  As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

**k.    Section 1129(a)(13) — Retiree Benefits**

45.    Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.  The Debtors do not have any obligations on account of retiree benefits (as such term is used in section 1114 of the Bankruptcy Code) and, therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these chapter 11 cases.  As a result, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

**l.    Sections 1129(a)(14), (15), and (16) — Domestic Support Obligations; Unsecured Claims Against Individual Debtors; Transfers by Nonprofit Organizations**

46.    None of the Debtors have domestic support obligations, are individuals or are nonprofit organizations.  Therefore, sections 1129(a)(14), (15), and (16) of the Bankruptcy Code do not apply to these chapter 11 cases.

19

**m.**   **Section 1129(b) — No Unfair Discrimination; Fair and Equitable**

47.   Despite the Debtors' inability to satisfy section 1129(a)(8) of the Bankruptcy Code, based upon the evidence proffered, adduced and presented by the Debtors at the Confirmation Hearing, or otherwise filed or on the record in these Chapter 11 Cases, including the Disclosure Statement and the exhibits thereto, the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 4, 5 and 6, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.   Significantly, no holder of a Claim or Interest junior to the Claims and Interests in Classes 4, 5 and 6, will receive or retain anything under the Plan on account of such Claim or Interest.   Further, the Claims and Interests in Classes 4, 5 and 6 are all substantially similar to other Claims and Interests in such classes and no other class of Claims or Interests substantially similar receives better treatment under the Plan.   Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by Classes 4, 5 and 6.

**n.**   **Section 1129(c) — Only One Plan**

48.   Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.   As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**o.**   **Section 1129(d) — Principal Purpose of the Plan Is Not Avoidance of Taxes**

49.   No Governmental Unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.   As a result, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

20

**L.    Satisfaction of Confirmation Requirements**

50.    Based upon the foregoing, all other filed pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**M.    Good Faith**

51.    Based on the record before the Court in these chapter 11 cases:  (a) the Debtors; (b) Liberty; (c) the Noteholders' Committee; (d) the Owners Representative; and (e) all of the current members, officers, directors, employees, partners, attorneys, financial advisors, and other professionals and representatives of each of the foregoing Entities (in each case in his, her or its capacity as such) as of or after the Petition Date have acted in good faith within the meaning of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and in compliance with all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and Local Rules, in the solicitation of the acceptance of the Plan, will continue to act in good faith to the extent they proceed to:  (i) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby; and (ii) take the actions authorized and directed by this Confirmation Order, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the Exculpation provisions set forth in Article VIII.G. of the Plan.

**N.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

52.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.A. of the Plan, has been satisfied or waived in accordance with the provisions of the Plan or is reasonably likely to be satisfied or waived.

PHIL1 4018121v.4

## O.    Implementation of Necessary Documents and Agreements

53.    All documents and agreements necessary to implement the Plan and all other relevant and necessary documents and agreements, are in the best interests of the Debtors, the Post Effective Date Debtors and Holders of Claims and Interests, have been negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements.  The Debtors have exercised reasonable business judgment in determining to enter into all such documents and agreements and have provided sufficient and adequate notice of such documents and agreements.   The terms and conditions of such documents and agreements are fair and reasonable and are approved.   The Debtors are authorized, without any further notice to or action, order, or approval of the Court, to finalize and execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

## P.    Executory Contracts and Unexpired Leases

54.    The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases as set forth in Article V of the Plan, this Confirmation Order or otherwise.  Each assumption or rejection of an Executory Contract or Unexpired Lease in accordance with Article V of the Plan, this Confirmation Order or otherwise shall be legal, valid and binding upon (a) the applicable Debtor and upon the Post Effective Date Debtors if such Executory Contract or Unexpired Lease is assumed and (b) all non-Debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption or rejection had been authorized and effectuated pursuant to a separate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code before Confirmation.

55.    Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall, upon the payment of an Cure Amount, be deemed disallowed and expunged, without further notice to or action, order or approval of the Court.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

56.    **Confirmation of the Plan.** All requirements for Confirmation of the Plan have been satisfied. All votes cast in favor of the Debtors' Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code are deemed to be votes in favor of the Plan in accordance with Section 1127 of the Bankruptcy Code as the Plan complies with sections 1122 and 1123 of the Bankruptcy Code and no further solicitation of the Plan is required as the Plan does not materially or adversely impacts any claimant's treatment. The Plan, and the provisions thereof are confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code, as may be modified by this Confirmation Order. Without any further notice to or action, order or approval of the Court, the Debtors, the Post Effective Date Debtors and the Plan Administrator, as applicable, and their successors are authorized and empowered to make all modifications that are consistent with the Plan to all documents contemplated by or related to the Plan. As set forth in the Plan, once finalized and executed, all documents contemplated by the Plan shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

57.    **Objections.** All objections, responses to, statements, comments and all reservations of rights pertaining to Confirmation that have not been withdrawn, waived or

settled, before or on the record at, the Confirmation Hearing are hereby overruled on the merits or addressed separately herein.

58. **Findings of Fact and Conclusions of Law.** The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

59. The terms of the Plan, and exhibits thereto are incorporated by reference into, and are an integral part of, this Confirmation Order. The terms of the Plan, all exhibits thereto and all other relevant and necessary documents, shall be effective and binding as of the Effective Date.

60. **Plan Classifications Controlling.** The classification of Claims and Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes and (c) shall not be binding on the Debtors.

61. **Operation as of the Effective Date.** Subject to Article XII of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post Effective Date Debtors, the Plan Administrator and

24

any and all Holders (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. This Confirmation Order shall not be stayed and the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry.

62.    **Administrative Claims.**  Subject to the provisions of sections 327, 330(a), and 331 of the Bankruptcy Code, except to the extent that a Holder of an Allowed Administrative Claim and, as applicable, the Debtors or the Plan Administrator agree to less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, the Debtors or the Plan Administrator shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash through a dollar-for-dollar reduction of LPL's Secured Claim, as applicable: (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (iii) at such later time as may be agreed upon by such Holder and the Debtors or the Plan Administrator, as applicable; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court.  For the avoidance of doubt, Administrative Claims include all Professional Fee Claims, except that the Professional Fees of the Noteholders' Committee and fees of the Owner Representative's Professionals and the professionals for Timothy Choate, Fred Marxer and Davis Carr shall be paid from the Liberty Contribution. Furthermore, notwithstanding anything in the Plan to the contrary, the Plan's treatment of

25

Administrative Claims shall not affect payment of the Professional Fee Claims in accordance with paragraphs 12(c) and 20 of the Final Cash Collateral Order.

63.    **Administrative Claim Bar Date.**  Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order) or as provided by this Article II of the Plan, unless previously filed, requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be filed and served on the Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  The Administrative Claims Bar Date shall be the first Business Day which is 30 days after the Effective Date of the Plan.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Plan Administrator, or the Post-Effective Date Debtor Assets, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date, absent an order of the Bankruptcy Court to the contrary.  Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date or by such earlier deadline as may be established for a particular application.  Except with respect to Allowed Seller Noteholder Professional Fee Claims, the Owners Representative Reimbursement Claim and the expense reimbursement claim for Timothy Choate, Fred Marxer and Davis Carr on account of their professionals, under no circumstances shall Holders of Administrative Claims receive payment from the Liberty Contribution.

64.     **Professional Claims Escrow Account.** If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow. The Debtors shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate. For the avoidance of doubt, the Professional Fee Claims Estimate shall not be deemed to limit the amount of fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court. If a Professional does not provide a Professional Fee Claims Estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. Except as provided in the Plan, the Professional Fee Escrow shall be funded no later than the Effective Date and be maintained in trust by the Plan Administrator for the Professionals and shall not be considered property of the Debtors' Estates. When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Escrow, if any, shall be transferred to LPL in partial satisfaction of LPL's Secured Claim. To the extent that funds held in the Professional Fee Escrow are unable to satisfy the amount of Allowed Professional Fee Claims owing to the Professionals after application of funds held in the Professional Fee Escrow, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which Allowed Administrative Claim shall be satisfied in accordance with the Plan. Notwithstanding anything in the Plan to the contrary, Article II.A.2 of the Plan shall not apply to Seller Noteholder Professionals or the Owners Representative Professionals.

65.     **The Plan Administrator.** Juliet Reising, is designated and approved as the Plan Administrator and shall be vested with full legal power, capacity and authority, and shall be

27

directed to administer, collect and liquidate the Debtors' remaining Assets, if any, and to implement the Plan.

66.    **Rejection Claims and Rejection Bar Date.**  All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases not previously rejected, pursuant to the Plan or this Confirmation Order, if any, must be Filed no later than 30 days after the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that was not previously rejected by order of the Court, not Filed within such time will be automatically disallowed, be forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order or approval of the Court.**  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims (against the applicable Debtor) and shall be treated in accordance with the Plan, as applicable.

67.    **Release by the Debtors**  As provided for in Article VIII.D of the Plan, as of the Effective Date, the Debtors' Release is approved and authorized in all respects.

68.    **Seller Noteholder Release.**  As provided for in Article VIII.F of the Plan, as of the Effective Date, the Seller Noteholder Release is approved and authorized in all respects.

69.    **Third Party Release.**  As provided for in Article VIII. E of the Plan, as of the Effective Date, the Third Party Release is approved and authorized in all respects.

70.    **Exculpation.**  As provided for in Article VIII.G of the Plan, as of the Effective Date, the Exculpation is approved and authorized in all respects.

28

71.     **Injunction.**   **From and after the Effective Date, and as contemplated in Article VIII.H. of the Plan, the Injunction shall be in full force and effect.**

72.     **Term of Injunction or Stays.**   Pursuant to Article XII.G. of the Plan, unless otherwise provided, all injunctions or stays in effect in these chapter 11 cases pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise shall remain in full force and effect until the Effective Date.   All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

73.     **Severability of Plan Provisions.**   This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:   (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

74.     **Substantial Consummation.**   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

75.     **Conflicts with the Plan.**   Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any order (other than this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

76.     **Conflicts Between Confirmation Order and Plan.**   The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however,* that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that

29

cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

77.    **Effectiveness of All Actions and Reservation of Rights.** Except as expressly set forth in the Plan, the Plan shall have no force or effect before the entry by the Court of this Order, and this Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan or the Disclosure Statement shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders before the Effective Date.

78.    **Late Filed Ballots.** The late filed ballots of Fred Marxer and Chun Hsu shall be deemed to be valid and binding in all respects, counting as votes in favor of Confirmation of the Plan.

79.    **Dissolution**. The Secretary of State of each applicable jurisdiction and other applicable government offices shall accept this Order as conclusive evidence of the authority of EI Wind Down, Inc., Inc. and EHC Holding Wind Down Corporation to dissolve under applicable State law and for the Plan Administrator to execute and file such documents, certificates and other instruments as are necessary to effect such dissolution.

80.    **Notice of Entry of Confirmation Order and Occurrence of the Effective Date.** Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Post Effective Date Debtors shall file and serve notice of entry of this Confirmation Order and occurrence of the Effective Date in substantially the form annexed hereto as **Exhibit 1** (the "*Notice of Confirmation and Effective Date*") on all Holders of Claims and Interests, the U.S. Trustee, counsel to the

30

Noteholders Committee, counsel to the Owners Representative and other parties in interest by first-class mail, postage prepaid, within three Business Days after the Effective Date.  Such notice is adequate under the particular circumstances and no other or further notice is necessary. The form of Notice of Confirmation and Effective Date substantially in the form annexed hereto as **Exhibit 1** is approved.

81.    **Final Order.**  This Confirmation Order is a final order.

82.    **Effectiveness of Order.**  In accordance with Bankruptcy Rules 3020(e), 6004(h) and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), this Confirmation Order shall not be stayed and shall be effective immediately upon its entry.  This Confirmation Order is and shall be deemed to be a separate order with respect to each Debtor for all purposes.

83.    **Retention of Jurisdiction.**  Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, and subject to applicable law, on and after the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, jurisdiction over those matters set forth in Article XI of the Plan.

Dated:  12/9 , 2014
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

31